1  BRIAN C. ANDERSON (State Bar No. 126539)
   O'MELVENY & MYERS LLP
2  555 13th Street, N.W.
   Washington, DC  20004
3  Telephone: (202) 383-5300
   Facsimile: (202) 383-5414
4
5  TROY M. YOSHINO (State Bar No. 197850)
   O'MELVENY & MYERS LLP
6  Embarcadero Center West
   275 Battery Street, 26th Floor
   San Francisco, CA  94111-3344
7  Telephone: (415) 984-8700
   Facsimile: (415) 984-8701
8
   Attorneys for Defendant
9  FORD MOTOR COMPANY

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                         San Francisco Division

13

14

   SUSAN CHAMBERLAN, BRIAN              Case No. C 03-02628 MEJ
15 CHAMPINE, and HENRY FOK, on behalf
   of themselves and all others similarly
16 situated, and on behalf of the general   FORD MOTOR COMPANY'S
   public,                                  MEMORANDUM OF POINTS AND
17                                          AUTHORITIES IN SUPPORT OF
                Plaintiffs,                 MOTION TO DISMISS
18
          v.                                Date:        July 17, 2003
19                                          Time:        10:00 a.m.
   FORD MOTOR COMPANY, and DOES 1          Courtroom:    B
20 through 100, inclusive,
                                            Hon. Maria-Elena James
21              Defendants.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

INTRODUCTION .........................................................................................................1

BACKGROUND AND SUMMARY OF THE COMPLAINT.............................................3

ARGUMENT ...............................................................................................................5

I.    A MOTION TO DISMISS MUST BE GRANTED WHERE, AS HERE,
      THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO
      STATE A CLAIM .............................................................................................5

II.   PLAINTIFFS CANNOT USE THE CLRA OR THE UCL TO
      RETROACTIVELY CONVERT THEIR VEHICLES' WARRANTIES
      INTO LIFETIME GUARANTEES ......................................................................5

III.  PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE
      PLAINTIFFS CANNOT ESTABLISH ANY DUTY OF DISCLOSURE. ..............9

IV.   PLAINTIFFS CANNOT STATE A CLRA CLAIM BECAUSE THEY DO
      NOT RELY UPON ANY AFFIRMATIVE MISREPRESENTATIONS BY
      FORD OR ALLEGE THAT THEY ENTERED INTO ANY
      "TRANSACTION" WITH FORD. .....................................................................11

      A.    Ford Cannot Be Held Liable for Concealment Under the Provisions
            of the CLRA Upon Which Plaintiffs Rely.............................................11

      B.    Plaintiffs' CLRA Claims Must Also Be Dismissed Because Plaintiffs
            Do Not—and Cannot—Allege That Ford Took Actions Prohibited by
            the CLRA in the Context of a "Transaction." .....................................13

V.    BECAUSE PLAINTIFFS ARE NOT ENTITLED TO RESTITUTION OR
      DAMAGES UNDER THE UCL, THAT CLAIM SHOULD BE
      DISMISSED. ..................................................................................................15

      A.    Plaintiffs Are Not Entitled to Restitution Because—As Used Car
            Purchasers—They Did Not Pay Any Money to Ford ...........................15

      B.    Damages Are Not Available Under the UCL.........................................16

CONCLUSION............................................................................................................17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abraham v. Volkswagen of Am.*,
  795 F.2d 238 (2d Cir. 1986) ..................................................................2, 8

*Balistreri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1990) ....................................................................5

*Bank of the West v. Superior Court*,
  2 Cal. 4th 1254 (1992) ............................................................................17

*Bescos v. Bank of Am.*,
  105 Cal. App. 4th 378 (2003) ..................................................................13

*Boyd v. Keyboard Network Magazine*,
  2000 WL 274204 (N.D. Cal. Mar. 1, 2000) ............................................14

*Campbell v. Zolin*,
  33 Cal. App. 4th 489 (1995) ....................................................................12

*Canal Elec. Co. v. Westinghouse Elec. Co.*,
  973 F.2d 988 (1st Cir. 1992) ....................................................................9

*Conley v. Gibson*,
  355 U.S. 41 (1957) ....................................................................................5

*Cortez v. Purolator Air Filtration Prods.*,
  23 Cal. 4th 163 (2000) ............................................................................16

*Daher v. G.D. Searle & Co.*,
  695 F. Supp. 436 (D. Minn. 1988) ..........................................................10

*Dow Chem. Co. v. Mahlum*,
  970 P.2d 98 (Nev. 1998) ..........................................................................11

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
  66 F.3d 604 (3d Cir. 1995) ..........................................................7, 8, 10

*East River S.S. Corp. v. TransAmerica DeLaval*,
  476 U.S. 858 (1986) ..................................................................................7

*Eichman v. Fotomat Corp.*,
  880 F.2d 149 (9th Cir. 1989) ................................................................2, 9

*General Tire, Inc. v. Kepple*,
  970 S.W.2d 520 (Tex. 1998) ....................................................................11

*Goodman v. Kennedy*,
  18 Cal. 3d 335 (1976) ..............................................................................11

*Greentree Software, Inc. v. Delrina Tech., Inc.*,
  1996 WL 183041 (N.D. Cal. Apr. 11, 1996) ............................................7

**TABLE OF AUTHORITIES**
**(continued)**

3
*Hunter v. Up-Right, Inc.*,
   6 Cal. 4th 1174 (1993)..................................................................................7

4

5
*In re General Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*,
   966 F. Supp. 1525 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. General*
   *Motors Corp.*, 172 F.3d 623 (8th Cir. 1999)......................................10, 11, 16

6

7
*In re Minnesota Breast Implant Litig.*,
   36 F. Supp. 2d 863 (D. Minn. 1998).............................................................11

8
*Karpowicz v. General Motors Corp.*,
   1998 WL 142417, at *4 (N.D. Ill. Mar. 26, 1998) ........................................9

9

10
*Lennane v. Franchise Tax Bd.*,
   9 Cal. 4th 263 (1994)...................................................................................12

11
*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997)........................................................................11

12

13
*Mason v. Chrysler Corp.*,
   653 So. 2d 951 (Ala. 1995)..........................................................................11

14
*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988)..........................................................................5

15

16
*Painter v. General Motors Corp.*,
   974 P.2d 924 (Wyo. 1999) .............................................................................6

17
*People v. Benson*,
   18 Cal. 4th 24 (1998)...................................................................................12

18

19
*People v. Loeun*,
   17 Cal. 4th 1 (1997)......................................................................................12

20
*People v. Turner*,
   15 Cal. App. 4th 1690 (1993).......................................................................12

21

22
*Pillsbury, Madison & Sutro v. Lerner*,
   31 F.3d 924 (9th Cir. 1994)............................................................................5

23
*Poppenheimer v. Bluff City Motor Homes*,
   658 S.W.2d 106 (Tenn. Ct. App. 1983) ..........................................................6

24

25
*PPG Indus., Inc. v. Sunstrand Corp.*,
   681 F. Supp. 287 (W.D. Pa. 1988)..................................................................7

26
*Seely v. White Motor Co.*,
   63 Cal. 2d 9 (1965)...............................................................................2, 7, 8

27

28
*South Bay Chevrolet v. General Motors Acceptance Corp.*,
   72 Cal. App. 4th 861 (1999).......................................................................2, 9

**TABLE OF AUTHORITIES**
(continued)

Page

*Standard Platforms, Ltd. v. Document Imaging Sys. Corp.*,
1995 WL 691868 (N.D. Cal., Nov. 15, 1995)......................................................................7

*Taylor v. American Honda*,
555 F. Supp. 59 (M.D. Fla. 1982)......................................................................11

*Vess v. Ciba-Geigy*,
317 F.3d 1097 (9th Cir. 2003)..........................................5, 10, 13, 14

*Walsh v. Ford Motor Co.*,
588 F. Supp. 1513 (D.D.C. 1984)......................................................................2, 9

*Wyler Summit Partnership v. Turner Broad. Sys., Inc.*,
135 F.3d 658 (9th Cir. 1998)......................................................................5

**STATUTES**

12(b)(6)......................................................................5, 7, 8, 13

1770......................................................................12, 13, 14

Assembly Bill 292, Regular Session (Cal. Jan. 21, 1970)......................................................................15

Cal. Bus. & Prof. Code §§ 17200 *et seq.*......................................................................1

Cal. Civ. Code § 1750 *et seq.*......................................................................1

Cal. Civ. Code §§ 1770(a)(5) and (7)......................................................................12

Cal. Civ. Code §§ 1797.8 *et seq.*......................................................................12

Cal. Civ. Code 1761(e)......................................................................14

Fed. R. Civ. P. 9(b)......................................................................passim

LARY LAWRENCE, 4B ANDERSON ON THE UNIFORM COMMERCIAL CODE § 2-721:33 (2001)......................................................................11

WEBSTER'S THIRD NEW INT'L DICTIONARY 1926 (1986)......................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs vaguely claim that the intake manifolds on their used vehicles failed "prematurely," but the specific allegations of their Complaint directly contradict this notion. Plaintiffs expressly state that they experienced no problems with the part until their vehicles had been driven 60,000 miles, 70,000 miles, and—in the case of plaintiff Brian Champine—88,000 miles. Recognizing that Ford's warranty-based obligations to pay for repairs expired long before their intake manifolds wore out, plaintiffs do not assert any breach of warranty claim in this action. Indeed, plaintiffs realize, as they must, that the warranty tells them that their intake manifolds could potentially malfunction (even due to a defect) and that they would be required to pay for repairs if the part malfunctioned after the warranty expired, regardless of the reason for the malfunction.

Thus, instead of seeking to enforce the express or implied warranties that Ford actually provided, plaintiffs (who could have purchased extended warranties to provide the coverage they now demand) attempt to *rewrite* their warranties to obligate Ford to pay for intake manifold repairs—free of charge, for the lifetime of their vehicles. But plaintiffs do not (and cannot) contend that Ford ever promised them that the intake manifolds on their vehicles would never wear out. So instead, plaintiffs claim that Ford's obligations under the warranty should be extended because Ford failed to disclose that plaintiffs' intake manifolds could fail sooner and more often than plaintiffs now say they expected. The statutes plaintiffs invoke to request this windfall relief include California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL").

Stripped to its core, plaintiffs' Complaint asks this Court to declare that it is "unfair" and "unlawful" to require plaintiffs to pay for *any* intake manifold repair, including repairs that occurred at 88,000 miles—far beyond the lawful, durational limits of Ford's warranties. In other words, plaintiffs ask this Court to declare that Ford is required to pay for every intake manifold repair not covered by plaintiffs' existing vehicle warranties.

The law clearly bars plaintiffs' attempts to retroactively and unilaterally

"renegotiate" the expectations that Ford agreed to meet under the warranty. A consumer "holding a warranty with an express limitation as to the time or mileage [of the warranty coverage] bears the risk of repairs that become necessary beyond that period." *Abraham v. Volkswagen of Am.*, 795 F.2d 238, 249-50 (2d Cir. 1986); *see, e.g., Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965). Allegations that a manufacturer concealed its knowledge that a part had an inordinate propensity to fail do ***not*** change this principle: "A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage." *Abraham*, 795 F.2d at 250. Under plaintiffs' misconceived view of the world, "Ford would, in effect, be obliged to insure that a vehicle it manufactures is defect free for its entire life." *Walsh v. Ford Motor Co.*, 588 F. Supp. 1513, 1536 (D.D.C. 1984). This is not how the law works; plaintiffs cannot use allegations of fraudulent concealment under the UCL and the CLRA to limitlessly expand Ford's warranty-based obligations to pay for repair costs. *See Eichman v. Fotomat Corp.*, 880 F.2d 149, 168-69 (9th Cir. 1989) (rejecting plaintiff's attempt to use UCL to expand the scope of defendant's contractual duties); *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887-88 (1999).

Even assuming the law were otherwise and allowed fraudulent concealment claims to convert a limited warranty into a lifetime guarantee, these plaintiffs would not be entitled to such relief because they do not—and cannot—plead facts establishing the essential elements of a fraudulent concealment that is actionable under the CLRA or the UCL. To make such claims, plaintiffs recognize that they must establish that Ford had a duty to disclose the information it allegedly concealed. Despite this recognition, the Complaint contains no allegations (much less any allegations sufficient under Fed. R. Civ. P. 9(b)) establishing that Ford had a duty to disclose the anticipated performance level of intake manifolds, or any of the thousands of other component parts in its vehicles. Plaintiffs also fail to plead facts demonstrating when the alleged duty of disclosure arose, what the "expected" failure rate and life of their intake manifolds were, and how they came to justifiably rely, to their detriment, on such expectations of disclosure.

Plaintiffs' CLRA claim must also be dismissed because pure nondisclosure of a fact is not actionable under the CLRA. The statutory provisions that plaintiffs rely upon prohibit only

2

affirmative misrepresentations. The CLRA also requires that the acts it prohibits occur in a "transaction" between the plaintiff and the defendant. But plaintiffs cannot meet this requirement either. Each of the plaintiffs brought their vehicles used from unknown persons or entities—not from Ford.

Finally, because plaintiffs are not legally entitled to any of the relief they seek under the UCL, that claim should also be dismissed as a matter of law. Plaintiffs cannot state a claim for restitution against Ford because, as used car purchasers, they did not pay any money to Ford. And although plaintiffs' UCL claim alleges that they suffered "actual damages," such damages cannot be recovered under the UCL.

In short, there are multiple reasons why plaintiffs' Complaint fails to state any claim as a matter of law. Each of these reasons constitutes an independently sufficient basis for an order dismissing plaintiffs' Complaint without leave to amend.

**BACKGROUND AND SUMMARY OF THE COMPLAINT**[1]

Plaintiffs Susan Chamberlan, Brian Champine, and Henry Fok (collectively, "plaintiffs") each own a different type and model-year Ford vehicle—Ms. Chamberlan owns a 1997 Mercury Grand Marquis, Mr. Champine owns a 1996 Ford Thunderbird, and Mr. Fok owns a 1998 Mustang GT. Each of these vehicles allegedly contains a 4.6-liter, V-8 engine containing an intake manifold made with a "composite" material. Compl. ¶¶ 12-14.[2] Plaintiffs each allege that they purchased their cars—not new from Ford—but as used vehicles from third parties. *Id.*

Nevertheless, plaintiffs bring individual claims against Ford for the costs of repairing their cracked intake manifolds. At the time the intake manifolds wore out, Ms. Chamberlan's vehicle was at least five years old and had 60,000 miles; Mr. Fok's vehicle was at

---

[1]     Ford does not admit the truth of any of the material allegations in the Complaint, but it discusses plaintiffs' allegations in this memorandum to assist the Court in analyzing Ford's Motion to Dismiss under the appropriate standards.

[2]     An intake manifold is a device mounted on the top of an engine that routes air to each cylinder of the engine, where the air is mixed with fuel and then ignited to produce the combustion necessary to drive the engine. Some intake manifolds, including those at issue here, also include "crossover" tubes through which a mixture of antifreeze and water flows from one side of the engine to the other to provide cooling.

least five years old and had 70,000 miles; and Mr. Champine's vehicle was at least six years old and had 88,000 miles. *Id.* Beyond asserting their individual claims, plaintiffs also seek the Court's permission to represent a proposed class of both current and former owners of certain Ford vehicles with 4.6-liter, V-8 engines. Further, they purport to assert a "private attorney general" claim on behalf of the general public under the UCL. *Id.* ¶¶ 1, 20.[3] The Complaint alleges two causes of action: the UCL claim and a CLRA claim. *Id.* ¶¶ 27-34.

The core allegation underlying plaintiffs' claims is that Ford knew that "intake manifold failure [on the 4.6-liter, V-8 engines in plaintiff's cars] was occurring at a much higher rate than was to be expected from a properly functioning manifold, and was occurring much more quickly than the expected life of the part." *Id.* ¶ 5. Plaintiffs do not allege what the "expected" failure rate and life of their intake manifolds is. Nor do they explain why an alleged departure from this unexplained "expectation" gives rise to any legal liability beyond Ford's normal obligations under its repair-and-replace warranty.

Instead, plaintiffs make only the conclusory claim that the intake manifolds are "defective" and fail "prematurely," and that Ford "concealed from and/or failed to disclose to Plaintiffs and the Class" information that would have allowed them to determine that their intake manifolds did not meet the alleged undefined "expectations." *Id.* ¶¶ 5, 7, 23(a)-(c). Plaintiffs do not rely on any affirmative misrepresentations by Ford in setting forth their CLRA and UCL clams. *Id.* ¶¶ 29, 34. Thus, plaintiffs recognize that an important—indeed, in plaintiffs' view "predominat[ing]"—question is whether Ford "had a duty to Plaintiffs and the Class to disclose" certain information. *Id.* ¶ 23(d).

Plaintiffs seek relief that would compel Ford to pay the costs of repairing (*i.e.*, warrant) their intake manifolds forever. *See, e.g.*, *id.* ¶ 7 (contending that Ford should be held liable because it "failed to offer the vast majority of ordinary consumer purchasers . . . any extension of their regular warranty"); *id.* ¶¶ 20, 22, 35, Prayer for Relief ¶¶ 2, 3. But despite their

---

[3] There are a number of significant reasons why any class or representative action is improper in this case. Recognizing that only the plaintiffs' claims are before the Court at this time, however, Ford's motion addresses those claims only.

4

assertion that Ford should be liable for failing to provide a free, lifetime extension of the warranty, plaintiffs do not assert any breach of warranty claim. Indeed, plaintiffs recognize that no such claim exists because their vehicles were long out of warranty by the time their intake manifolds wore out. Compl. ¶¶ 12-14.

Plaintiffs' claim that product manufacturers commit fraud if they do not provide lifetime warranties on their products is contrary to law and common sense. This case should be dismissed.

## ARGUMENT

### I.  A MOTION TO DISMISS MUST BE GRANTED WHERE, AS HERE, THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A CLAIM.

Under Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed where "it appears beyond doubt that the plaintiff can prove no set of facts . . . which would entitle [plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). That is, dismissal is mandated where there is either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). While the Court must accept well-pleaded facts as true, "conclusory allegations without more are insufficient." *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924 (9th Cir. 1994); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Likewise, the court need not assume the truth of legal conclusions that are in the form of factual allegations. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 665 (9th Cir. 1998). Moreover, claims which "sound in fraud," such as plaintiffs' CLRA and UCL claims, must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See, e.g.*, *Vess v. Ciba-Geigy*, 317 F.3d 1097, 1103-05 (9th Cir. 2003). "[I]f particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim." *Id.* at 1105.

### II.  PLAINTIFFS CANNOT USE THE CLRA OR THE UCL TO RETROACTIVELY CONVERT THEIR VEHICLES' WARRANTIES INTO LIFETIME GUARANTEES.

Plaintiffs do not dispute what is commonly known—car parts sometimes fail to perform as expected. Thus, motor vehicle warranties "presage[] the likelihood that the goods will

5

fail to perform and specif[y] a particular remedy in that eventuality." *Muss v. Mercedes-Benz of N. Am.*, 734 S.W.2d 155, 158 (Tex. Ct. App. 1987); *Poppenheimer v. Bluff City Motor Homes*, 658 S.W.2d 106, 108, 111 (Tenn. Ct. App. 1983); *Painter v. General Motors Corp.*, 974 P.2d 924, 926 (Wyo. 1999). Stated another way, such warranties unequivocally inform buyers that repairs to their vehicles may be needed, either within or outside the warranty period. And while they state that the manufacturer will repair or replace worn-out or broken component parts for a specifically defined period of time, those warranties make perfectly clear that the buyer is responsible for repairs after the warranty period expires, regardless of whether those repairs are necessitated by normal wear-and-tear or a defect.

Plaintiffs acknowledge in their Complaint that the warranty period expired long ago. Compl. ¶ 7 (seeking "extension of the[] regular warranty"); *id.* ¶¶ 12-14 (alleging intake manifold failures between 60,000 and 88,000 miles).[4] Plaintiffs do not contend that Ford breached any of its obligations under the warranty and do not dispute that, under the terms of the warranty, the plaintiffs are now required to pay to repair their own intake manifolds. *Id.* In short, there is no dispute that Ford fully performed its obligations under the warranty. Nor is there any dispute that plaintiffs, if they had been willing to incur the additional expense, could have secured an extended warranty for a longer period to cover "premature" post-warranty failures of their intake manifolds or other components.

But while there is no dispute that Ford upheld its end of the bargain, there is a dispute as to whether plaintiffs should be required to uphold theirs. Plaintiffs invoke the CLRA and UCL to contend that the warranty should be retroactively rewritten into a free, lifetime guarantee that nothing will ever go wrong in a Ford vehicle. Specifically, plaintiffs contend that Ford should pay to repair their vehicles forever because Ford allegedly knew that intake manifolds on ***other***

---

[4]     The important point here—that plaintiffs' intake manifolds wore out after the warranty coverage expired—is undisputed. But the Court may also consider the specifics of the warranty if it requires more background because the warranty is referred to in the Complaint: plaintiffs' intake manifolds were each covered by a warranty which stated that Ford would only repair or replace the intake manifold for the first 3 years or 36,000 miles of use if the manifold was "defective in factory-supplied materials or workmanship." *See* Ford's Request for Judicial Notice ( RJN), Ex. 3 at p. 5 (Mr. Champine's Warranty); *id.*, Ex. 4 at p. 6 (Ms. Chamberlan's Warranty); *id.*, Ex. 5 at p. 6 (Mr. Fok's Warranty).

6

1    vehicles were failing sooner and more often than expected.  *See, e.g.*, Compl. ¶ 5.

2            But such claims cannot be brought under the CLRA or the UCL.  Because the

3    expectations that Ford agreed to meet are expressly stated in the warranty, it is the "rules of

4    ***warranty*** . . . [that] determine the quality of the product the manufacturer promises and thereby

5    determine the quality he must deliver."  *Seely v. White Motor Co.*, 63 Cal. 2d 9, 16 (1965)

6    (emphasis added); *East River S.S. Corp. v. TransAmerica DeLaval*, 476 U.S. 858, 872(1986). A

7    manufacturer "cannot be held for the level of performance of his products in the consumer's

8    business unless he agrees that the product was designed to meet the consumer's demands." *Seely*,

9    63 Cal. 2d at 18.  Thus, because plaintiffs' "expectations" about the rate at which their intake

10   manifolds would wear out are not based in the warranty, no actionable claim arises: "parties'

11   expectations [about how long a certain product will last], standing alone, are irrelevant without any

12   contractual hook on which to pin them." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d

13   604, 614 n.9 (3d Cir. 1995).

14           Based on these well-established rules, this Court has consistently granted 12(b)(6)

15   motions dismissing claims of the type plaintiffs assert.  *See, e.g.*, *Standard Platforms, Ltd. v.*

16   *Document Imaging Sys. Corp.*, 1995 WL 691868 (N.D. Cal., Nov. 15, 1995); *Greentree Software,*

17   *Inc. v. Delrina Tech., Inc.*, 1996 WL 183041 (N.D. Cal. Apr. 11, 1996). In *Standard Platforms*, for

18   example, this Court granted a Rule 12(b)(6) motion on facts nearly identical to those alleged in the

19   present action.  In that case, the plaintiff made fraud-based claims asserting that the defendants

20   "knew of specific defects in [the products] that made them unsuitable for [the] usage" contemplated

21   by the plaintiffs, but failed to disclose that knowledge. 1995 WL 691868, at *1.  This Court found

22   that "the fraud claim [was] an impermissible attempt to 'tortify' contract law" and therefore failed

23   to state a viable cause of action.  *Id.* at *3 (citing *Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174, 1184

24   (1993), and *PPG Indus., Inc. v. Sunstrand Corp.*, 681 F. Supp. 287, 288-91 (W.D. Pa. 1988)

25   (applying California law)).

26           *Greentree Software* also addresses a situation where the plaintiff asserted claims

27   sounding in fraud, alleging that certain aspects of product quality were concealed.  In *Greentree*

28   *Software*, this Court found that: "although [plaintiff's] misrepresentation claim is purportedly

7

grounded in tort, it is based solely upon alleged false statements made during the performance of a commercial sales contract." 1996 WL 183041, at *3. Concluding that California courts had repeatedly refused to allow allegations sounding in fraud to "upset the parties' agreed upon bargain," this Court granted the defendant's Rule 12(b)(6) motion.

The California Supreme Court has concluded that a consumer is "fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will." *Seely*, 63 Cal. 2d at 18; *Duquesne Light*, 66 F.3d at 614 n.9. In other words, a consumer's expectations about the quality of a product impose a legal obligation upon the manufacturer only if the manufacturer agrees to meet those expectations. The only expectations that Ford agreed to meet in relation to the repair of plaintiffs' intake manifolds are set forth in the warranty. Thus, the legal effect of the warranty's terms is well established: a consumer "holding a warranty with an express limitation as to the time or mileage [of the warranty coverage] bears the risk of repairs that become necessary beyond that period." *Abraham v. Volkswagen of Am.*, 795 F.2d 238, 249-50 (2d Cir. 1986); *Duquesne Light*, 66 F.3d at 616.

Plaintiffs attempt to plead around this rule of law by alleging that Ford had knowledge that their intake manifolds had a higher-than-expected propensity to fail "prematurely." Compl. ¶ 5. But the *same* argument has been made before and repeatedly rejected on the grounds that it would lead to an absurd result:

> Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to 'know' that many parts will fail after the warranty period has expired. *A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage.*

*Abraham*, 795 F.2d at 250 (emphasis added).

Thus, numerous courts have held that the limitations in the written warranty must be enforced—*i.e.*, that the manufacturer's obligations to pay for repair costs cannot be extended forever simply because an alleged defect is concealed or latent:

> [T]o hold that all latent defects are covered under the written warranty, whether they become apparent to the customer before or after the expiration of the written

8

warranty, would place an undue burden on the manufacturer. ***Ford would, in effect, be obliged to insure that a vehicle it manufactures is defect free for its entire life.***

*Walsh v. Ford Motor Co.*, 588 F. Supp. 1513, 1536 (D.D.C. 1984) (emphasis added); *see Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (1st Cir. 1992) ("time-limited warranties do not protect buyers against hidden defects") (citing large number of cases reaching same conclusion); *Karpowicz v. General Motors Corp.*, 1998 WL 142417 at *4 (N.D. Ill., Mar. 26, 1998) ("Case law uniformly holds that time-limited warranties do not protect buyers against defects that existed before but are not discovered until after the expiration of the warranty period.").

In this action, plaintiffs seek relief that would extend their warranty—for free—into a lifetime guarantee, thereby requiring Ford to pay to replace their intake manifolds forever. *See* Compl. ¶¶ 7, 35. Courts have rejected similar attempts to expand the scope of a defendant's contractual obligations, reasoning that statutes like the UCL cannot be used to write new terms into a pre-existing contract. *See Eichman v. Fotomat Corp.*, 880 F.2d 149, 168-69 (9th Cir. 1989) (rejecting UCL claim based on alleged failure to perform certain acts because the parties' contract did not obligate the defendant to perform those acts). The UCL "does not give the courts a general license to review the fairness of contracts . . . ." *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887-88 (1999) (refusing to find contract "unfair" when plaintiff knew and understood the terms of the contract) (ellipses in original; internal quotation omitted).

There is nothing "unfair" or "fraudulent" about enforcing the terms of Ford's written warranties. This is particularly true because plaintiffs do not dispute that they (or the original purchasers of plaintiffs' vehicles) derived the benefits of Ford's performance of all of its obligations under the warranty. The unfairness would arise only if the Court granted the relief that plaintiffs seek and "obliged [Ford] to insure that a vehicle it manufactures is defect-free for its entire life." *Walsh*, 588 F. Supp. at 1536. The motion to dismiss should be granted without leave to amend.

## III. PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS CANNOT ESTABLISH ANY DUTY OF DISCLOSURE.

Plaintiffs recognize that an important—indeed, in plaintiffs' view

9

"predominat[ing]"—question is whether Ford "had a duty to Plaintiffs and the Class to disclose" that "premature" failure of the intake manifolds was occurring more often than expected.  Compl. ¶ 23(d); *id.* ¶¶ 5, 7.  Despite recognizing the importance of this question, plaintiffs do not make ***any*** allegation as to: (1) how any duty of disclosure arises between Ford and the plaintiffs— persons who are all used vehicle purchasers who never entered into a transaction with Ford; (2) when failure is deemed so "premature" that Ford has an obligation to disclose it; (3) when failure occurs so often that Ford has an obligation to disclose it; or (4) the point in time at which Ford's obligation to disclose arose.

Moreover, although plaintiffs claim that Ford was required to disclose that the intake manifolds were failing to meet "expectations," *id.* ¶ 5, plaintiffs do not state what those expectations were.  Nor do they identify the source of the expectations, or how they came to justifiably rely on such allegedly false expectations when they purchased their vehicles.  Without pleading facts addressing these issues, plaintiffs cannot state a claim under the UCL or CLRA. "[P]arties' expectations [about how long a certain product will last], standing alone, are irrelevant without any contractual hook on which to pin them." *Duquesne Light*, 66 F.3d at 614 n.9.

For the same reasons, plaintiffs' Complaint is insufficient as a matter of law under Fed. R. Civ. P. 9(b).  Under that Rule, a complaint alleging fraudulent concealment "must contain, at the very least, sufficient facts to surmise that a legal or equitable duty to disclose exists." *Daher v. G.D. Searle & Co.*, 695 F. Supp. 436, 440 (D. Minn. 1988); *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-05 (9th Cir. 2003) (applying Rule 9(b) to all fraud-based allegations, including those made under CLRA).  Additionally a "plaintiff bringing a claim for fraudulent omission must allege what the omissions were, the person responsible for failing to disclose the information, the context of the omission, and the manner in which it misled plaintiff and what defendant obtained through the fraud." *In re General Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997), *aff'd sub nom., Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir. 1999).  Obviously, plaintiffs' Complaint falls woefully short of this standard.[5]

---

[5] This is also true of plaintiffs' nonsensical allegation that it was unfair, unlawful, and/or fraudulent for Ford not extend its obligations under plaintiffs' warranties because it made a similar offer to "fleet purchasers." Compl. ¶ 6.  Plaintiffs fail to allege any facts establishing that

The reason that plaintiffs do not come close to making the necessary allegations is clear—it is well-established that plaintiffs cannot allege that Ford owed them a duty of disclosure:

> In the absence of a confidential relationship or the making of direct inquiries, there is ***no duty*** on the part of the manufacturer or the seller to make disclosures to the buyer. As a result, neither the manufacturer nor the seller of an automobile had a duty to disclose to the buyer that certain kinds of problems were experienced with that particular line of cars. . . . [Additionally, a] seller is not liable for 'fraudulent concealment' on the theory that the seller failed to make a disclosure to the general public of a particular hazard.

4B Lary Lawrence, *Anderson on the Uniform Commercial Code* § 2-721:33 (2001) (emphasis added); s*ee, e.g.*, *GM Anti-Lock Brake*, 966 F. Supp. at 1535; *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954-55 (Ala. 1995); *Taylor v. American Honda*, 555 F. Supp. 59, 64-65 (M.D. Fla. 1982); *see also Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 110-11 (Nev. 1998), *disapproved on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001) (non-automobile manufacturer); *In re Minnesota Breast Implant Litig.*, 36 F. Supp. 2d 863, 881 (D. Minn. 1998) (same); *General Tire, Inc. v. Kepple*, 970 S.W.2d 520, 527-28 (Tex. 1998) (preventing disclosure of a tire manufacturer's warranty data to the public).

This rule has particular force with respect to plaintiffs because they are all used car purchasers who never entered i nto any transactions with Ford. Compl. ¶¶ 12-14. "As a matter of common sense, . . . a relationship [giving rise to a duty of disclosure] can only come into being as a result of some sort of transaction between the parties." *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997); *Goodman v. Kennedy*, 18 Cal. 3d 335, 347 (1976) (same). Because there is no duty of disclosure here, Ford's motion to dismiss should be granted without leave to amend.

## IV.    PLAINTIFFS CANNOT STATE A CLRA CLAIM BECAUSE THEY DO NOT RELY UPON ANY AFFIRMATIVE MISREPRESENTATIONS BY FORD OR ALLEGE THAT THEY ENTERED INTO ANY "TRANSACTION" WITH FORD.

### A.    Ford Cannot Be Held Liable for Concealment Under the Provisions of the CLRA Upon Which Plaintiffs Rely.

Plaintiffs' CLRA claims are based solely on allegations of concealment.

Ford had a duty to expand its contractual obligations to plaintiffs without any consideration for doing so. The fact that Ford offered this service to a distinct—and differently situated—class of customers cannot constitute an unfair, unlawful, or fraudulent practice.

11

Specifically, plaintiffs contend that Ford violated "Civil Code sections 1770(a)(5) and (7) when [it] failed to disclose that the Subject Automobiles contain defective intake manifolds." Compl. ¶ 29. Such allegations of concealment are not actionable under sections 1770(a)(5) and (a)(7) because those provisions apply only to affirmative misrepresentations. Specifically, the provisions prohibit only the following conduct:

> [1770(a)(5)] ***Representing*** that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

> [1770(a)(7)] ***Representing*** that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

Cal. Civ. Code §§ 1770(a)(5) & (a)(7) (emphases added). The word "represent" means to "present esp. by description. . . . [T]o set forth or place before someone (as by statement, account, or discourse)." *Webster's Third New Int'l Dictionary* 1926 (1986).

"If there is no ambiguity in the language of [a] statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.'" *People v. Loeun*, 17 Cal. 4th 1, 9 (1997) (quoting *Lennane v. Franchise Tax Bd.*, 9 Cal. 4th 263, 268 (1994)); *People v. Benson*, 18 Cal. 4th 24, 30 (1998). By using the word "representing," the Legislature clearly meant to limit the reach of sections 1770(a)(5) and (a)(7) to affirmative misrepresentations. Therefore, pure allegations of concealment do not fall within the ambit of these provisions.

The plain meaning of the word "representing" is further verified by the fact that a different provision of the CLRA expressly prohibits acts of concealment. Under section 1770(a)(21), the failure to disclose certain characteristics of "grey market goods" is a violation of the CLRA. Cal. Civ. Code § 1770(a)(21) (incorporating express prohibitions of Cal. Civ. Code §§ 1797.8 *et seq.*).[6] When the Legislature uses particularized language in one provision and does not do so in another related one, that omission is deemed intentional. *See, e.g.*, *Campbell v. Zolin*, 33 Cal. App. 4th 489, 497 (1995); *People v. Turner*, 15 Cal. App. 4th 1690, 1698 (1993), *abrogated on other grounds by People v. Flores*, 96 Cal. App. 4th 1081 (2002). Thus, the structure of the

---

[6]  Grey market goods (*i.e.*, consumer goods that are imported into the United States in a manner that voids a warranty that would otherwise be valid in the United States) are not involved in this case.

12

CLRA makes clear that the Legislature intended to make concealment actionable only in the case of grey market goods.

The recent decision in *Bescos v. Bank of America*, 105 Cal. App. 4th 378 (2003), also confirms that acts of concealment are not actionable under the provisions of the CLRA at issue in this case. *Bescos* involved a plaintiff who asserted two claims against an automobile dealer. Mirroring plaintiffs' allegations in this case, the plaintiff in *Bescos* predicated his claims on allegations that the defendant failed to disclose certain information allegedly required by law. *Id.* at 382-83; *cf., e.g.*, Compl. ¶ 29. Despite assuming that the defendant was legally required to make disclosures and recognizing that the CLRA was to be "liberally construed," the *Bescos* court still found that the relevant provisions of the CLRA could not be stretched to cover acts of concealment:

> the alleged failures of the [defendant] dealer to comply with the disclosure requirements under state and federal law . . . do not fall within the deceptive practices set forth under section 1770 [of the CLRA].

*Id.* at 395.

The Ninth Circuit has also recently affirmed that allegations of concealment fail to state a claim under the CLRA. *See Vess v. Ciba-Geigy Corp.*, 2001 WL 290333 at *14, *16 (S.D. Cal., Mar. 9, 2001) (granting Rule 12(b)(6) motion against CLRA claim asserting that defendant "failed to disclose Novartis' contributions" because "Plaintiff has cited no . . . statement [by defendant] that it does not accept Novartis' contributions, or even any statement listing some donors, while omitting Novartis"), *aff'd in relevant part*, 317 F.3d 1097 (9th Cir. 2003). Because concealment is not actionable under sections 1770(a)(5) or (a)(7) of the CLRA, Ford's motion to dismiss should be granted.

### B. Plaintiffs' CLRA Claims Must Also Be Dismissed Because Plaintiffs Do Not—and Cannot—Allege That Ford Took Actions Prohibited by the CLRA in the Context of a "Transaction."

Plaintiffs do not allege that they purchased their vehicles from Ford. Indeed, each plaintiff directly alleges ***otherwise***, stating that he or she purchased a used vehicle. *See* Compl. ¶ 12 (alleging that Mr. Champine purchased a used, four-year-old vehicle); *id.* ¶ 13 (Ms. Chamberlan alleging that she purchased a used vehicle); *id.* ¶ 14 (Mr. Fok).

13

On these facts, plaintiffs have failed to state a valid claim under the CLRA. The express language of the CLRA requires that unlawful acts which allegedly violate the Act must take place in the context of a "transaction" between the plaintiff and the defendant:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person *in a transaction* intended to result or which results in the sale or lease of goods or services to any consumer are unlawful . . . .

Cal. Civ. Code § 1770(a) (emphasis added). Section 1761(e) defines "transaction" as:

> *an agreement* between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement.

(emphasis added).

Plaintiffs' CLRA claims are fatally flawed because they cannot allege that Ford took actions prohibited by the CLRA in the context of "an agreement" between plaintiff and Ford that was "intended to result or which result[ed] in the sale or lease of goods . . . ." The Ninth Circuit has recently affirmed what this Court and other district courts have held: CLRA claims should be dismissed with prejudice where the plaintiff "alleges no misrepresentations [made] in connection with" the identified "transaction." *Vess*, 2001 WL 290333, at *16, *aff'd in relevant part*, 317 F.3d 1097 (9th Cir. 2003); *Boyd v. Keyboard Network Magazine*, 2000 WL 274204 at *3 (N.D. Cal., Mar. 1 2000) (granting motion to dismiss CLRA claims where allegedly unlawful conduct, if any, did not "occur in the context of a transaction in which consumer goods or services were leased or sold"), *aff'd*, 246 F.3d 672 (9th Cir. 2000).[7]

The legislative history of the CLRA also verifies that a defendant's allegedly unlawful action must be taken in the context of a "transaction" with the plaintiff. As originally introduced to the Legislature, the language of section 1770 read: "The following unfair methods of

---

[7] For this reason, the warranty is not a "transaction" that can provide a basis for plaintiffs' CLRA claims. Even assuming that the warranty is a "transaction" between Ford and plaintiffs (the Complaint is silent on whether the vehicles' warranties had expired by the time plaintiffs bought their used vehicles), plaintiffs do not allege any wrongdoing by Ford in providing the warranty or fulfilling its obligations under the warranty. Instead, plaintiffs claim is that Ford should provide *more* warranty coverage of the type that Ford dutifully provided for the duration of the regular warranty. *See* Compl. ¶ 7.

competition and unfair or deceptive practices undertaken by any person ***in the conduct of any trade or commerce*** are unlawful . . . ." Assembly Bill 292, Regular Session (Cal. Jan. 21, 1970) (attached as RJN, Ex. 1) (emphasis added).  But the Legislature rejected this broad language, and a new version of section 1770 was proposed that limited the cause of action under the CLRA to deceptive practices "undertaken by any person ***in the sale or lease of goods to any consumer***."  Amended Assembly Bill 292, Regular Session (Cal. May 22, 1970) (RJN, Exh. 2) (emphasis added).  This linguistic change plainly contemplated that there be some sort of interaction—a sale or lease of goods—between the plaintiff and the defendant.  Any doubt is eliminated by the final language of the measure, which limits the CLRA's ambit to unlawful acts or practices of the seller "in a transaction" with the buyer.

There is no CLRA "transaction" alleged here; each plaintiff alleges that he or she purchased a used vehicle.  The CLRA claim should therefore be dismissed without leave to amend.

## V.    BECAUSE PLAINTIFFS ARE NOT ENTITLED TO RESTITUTION OR DAMAGES UNDER THE UCL, THAT CLAIM SHOULD BE DISMISSED.

Plaintiffs seek restitution and damages under their UCL claim.  Compl. ¶¶ 35-36.  Dismissal of the UCL claim is required because neither remedy is available to plaintiffs.

### A.    Plaintiffs Are Not Entitled to Restitution Because—As Used Car Purchasers—They Did Not Pay Any Money to Ford.

In a recent landmark decision, the California Supreme Court held that monetary relief under the UCL is limited to recovery of monies that can "clearly be traced" to funds in the defendant's possession that were wrongfully acquired from "actual direct victims" who paid money to the defendant.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150, 1152 (2003).  A court cannot "order [a defendant] to surrender its profits to [the plaintiff simply] because [the plaintiff] allegedly has been wronged by [the defendant's] unfair conduct."  *Id.* at 1146. These limitations arise because the Supreme Court "has never approved of nonrestitutionary disgorgement of profits as a remedy under the UCL."  *Id.* at 1148 (emphasis added).

Each plaintiff in this case expressly pleads that he or she is a used car purchaser.  Compl. ¶¶ 12-14.  As such, plaintiffs did not pay any money to Ford and, therefore, cannot be

15

"actual direct victims" entitled to restitution under *Korea Supply. See also In re General Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997) (claim based on fraudulent concealment must clearly allege "what defendant obtained through the fraud" in order to meet requirements of Fed. R. Civ. P. 9(b)), *aff'd sub nom. Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir. 1999)

In *Korea Supply*, the plaintiff Korea Supply Company ("KSC") was a broker who represented a military equipment manufacturer in a bid process conducted by the Korean government to find a supplier for a radar system. 29 Cal. 4th at 1141. In relevant part, KSC alleged that the manufacturer it represented would have obtained the radar contract—and KSC itself would have obtained a 15 percent commission on the contract price—but for defendants' alleged UCL violations. *Id.* at 1141-42. KSC sought recovery under the UCL of the profit that defendant Lockheed Martin earned by obtaining the radar contract through its allegedly wrongful conduct. *Id.* at 1142-43.

The California Supreme Court held that the profit sought from the defendant was "not restitutionary" and therefore was not recoverable under the UCL for a number of different but independently sufficient reasons. One reason was that plaintiff had "not given any money to Lockheed Martin; instead, it was from the Republic of Korea that Lockheed Martin received its profits." *Id.* at 1149. Thus, "[a]ny award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took ***directly*** from plaintiff." *Id.* (emphasis added).

In this case, plaintiffs' claims against Ford are similarly deficient. Plaintiffs' claims are "not restitutionary" in nature because plaintiffs do not allege that they have "given any money" to Ford. Instead, plaintiffs purchased their cars from someone other than Ford. Compl. ¶¶ 12-14. Plaintiffs' claims under the UCL for restitution should therefore be dismissed.

**B.      Damages Are Not Available Under the UCL.**

Plaintiffs also ask for damages under the UCL. *See, e.g.*, Compl. ¶ 35 ("Plaintiff and the Class have suffered actual damages."). The California Supreme Court has repeatedly held that damages are not available under the UCL. *See, e.g.*, *Korea Supply*, 29 Cal. 4th at 1448; *Cortez v. Purolator Air Filtration Prods.*, 23 Cal. 4th 163, 173 (2000); *Bank of the West v. Superior Court*, 2

16

Cal. 4th 1254, 1272 (1992). As such, this claim should also be dismissed.

## CONCLUSION

Plaintiffs' Complaint contains a number of fatal and uncorrectable flaws. It is a Complaint that impermissibly attempts to rewrite the terms of Ford's warranty. And although it recognizes that the plaintiffs must establish a duty of disclosure to state any claim against Ford, the Complaint contains no allegations (and certainly no allegations sufficient under Fed. R. Civ. P. 9(b)) establishing such a duty.

Moreover, plaintiffs' CLRA claim must be dismissed because concealment is not actionable under the CLRA. The statutory provisions that plaintiffs rely upon prohibit only affirmative misrepresentations. The CLRA also requires that the acts it prohibits take place in a "transaction." Plaintiffs cannot meet this requirement either—each of the plaintiffs is a used car purchaser who has had no dealings with Ford. Finally, because plaintiffs cannot obtain any of the relief they seek under the UCL, that claim is deficient as a matter of law.

In short, there are multiple reasons why plaintiffs' Complaint fails to state any claim upon which relief can be granted. Each of these reasons provides an independently sufficient basis to dismiss plaintiffs' Complaint without leave to amend.

Dated: June 12, 2003                O'MELVENY & MYERS LLP


By:   /s/ Troy M. Yoshino
         Troy M. Yoshino
Attorneys for Defendant
FORD MOTOR COMPANY

SF1:513277.1

17