**United States District Court**
For the Northern District of California

1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT

6        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7
8
9
SUSAN CHAMBERLAN, BRIAN CHAMPINE,              No. C 03-2628 CW
10  and HENRY FOK, on behalf of
themselves and all others similarly         ORDER GRANTING
11  situated, and on behalf of the             IN PART
general public,                            DEFENDANT's
12                                             MOTION TO
          Plaintiffs,                      DISMISS AND
13                                             DENYING IT IN
     v.                                     PART
14
15  FORD MOTOR COMPANY, and DOES 1
through 100, inclusive,
16
          Defendants.
17  _____/

18
19       Plaintiffs Susan Chamberlan, Brian Champine, and Henry Fok

20  (Plaintiffs) are suing Defendant Ford Motor Company (Defendant)

21  for violations of the California Consumers Legal Remedies Act

22  (CLRA), Cal. Civ. Code § 1750 et seq., and the Unfair

23  Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 et seq.

24  Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules

25  of Civil Procedure to dismiss Plaintiffs' complaint for failure

26  to state a claim and files a request for judicial notice.

27  Plaintiffs oppose the motion and the request for judicial

28  notice.  The matter was heard on August 1, 2003.  Having

considered oral argument on the motion and all of the papers filed by the parties, the Court GRANTS Defendant's motion to dismiss in part and DENIES it in part and GRANTS Defendant's request for judicial notice.  The Court also GRANTS Plaintiffs leave to amend their complaint.

BACKGROUND

Plaintiffs bring this action on behalf of themselves and all similarly situated persons residing in California who purchased certain automobiles (Subject Automobiles)[1] manufactured by Defendant.  In relevant part, the complaint alleges that beginning in 1996, Defendant manufactured, sold, and distributed Subject Automobiles containing defective intake manifolds. Compl. at ¶ 2.  Plaintiffs allege that no later than January 1, 1997, and possibly earlier, Defendant became aware that a large number of intake manifolds in the Subject Automobiles were cracking prematurely, exposing drivers and their passengers to serious risk of injury.  Id. at ¶ 4.  Plaintiffs allege that Defendant's testing and records showed that the intake manifolds failed at a "much higher rate than was to be expected from a properly functioning manifold, and was occurring much more quickly than the expected life of the part."  Id. at ¶ 5.

Starting in January, 1998, Defendant began to offer several extended warranty protection, or "recall," programs for free replacement or repair of the defective intake manifolds for some

---

[1] Subject Automobiles include Mercury Grand Marquis (1996-2001), Ford Mustang (1996-2001), Ford Explorer (2002), Ford Crown Victoria (1996-2001), Lincoln Town Car (1996-2001), Mercury Cougar (1996-1997), and Ford Thunderbird (1996-1997).

United States District Court
For the Northern District of California

of the Subject Automobiles.  Id. at ¶ 6.  Plaintiffs allege, however, that Defendant extended this offer almost exclusively to fleet purchasers of Subject Automobiles such as taxi cab companies, limousine companies, and police forces.  Id. Plaintiffs allege that by failing to send the recall letter or offer the recall program to the vast majority of consumer purchasers of Subject Automobiles, Defendant "concealed from and/or failed to disclose to Plaintiffs and the Class the defective nature of the intake manifolds contained in the Subject Automobiles."  Id. at ¶ 7.  As a result of these defective intake manifolds, the Subject Automobiles purchased by Plaintiffs and the Class "did not perform in accordance with the reasonable expectations of Plaintiffs and the Class—namely, that the automobiles were suitable for normal use as a passenger vehicle."  Id. at ¶ 8.

The complaint alleges that Plaintiff Brian Champine bought a 1996 Ford Thunderbird on September 13, 2000 and the intake manifold cracked on March 28, 2002 at about 88,000 miles.  Id. at ¶ 12.  Plaintiff Susan Chamberlan bought a used 1997 Mercury Grand Marquis.  In June, 2002, the intake manifold in her car cracked at about 60,000 miles.  Id. at ¶ 13.  Plaintiff Henry Fok bought a used 1998 Mustang GT convertible, and in March, 2003, the car's intake manifold cracked at 70,000 miles.  Id. at ¶ 14.  Plaintiffs allege that Defendant, "through its own efforts and through its network of authorized dealerships acting as its agents . . . warranted, advertised, distributed, and sold its automobiles throughout the state of California."  Id. at ¶

United States District Court

For the Northern District of California

3

16.

Plaintiffs' CLRA claim alleges that Defendant engaged in "unfair competition or unfair or deceptive practices in violation of Civil Code sections 1770(a)(5) and (7) when they failed to disclose that the Subject Automobiles contain defective intake manifolds." <u>Id.</u> at ¶ 29.

Plaintiffs' UCL claim alleges that Defendant engaged in "unfair competition or unlawful, unfair or fraudulent business practices in violation of the Unfair Business Practices Act when they omitted to disclose that the Subject Automobiles have defective intake manifolds." <u>Id.</u> at ¶ 34. Plaintiffs request damages, restitution, and attorneys' fees.

LEGAL STANDARD

A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle it to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Fidelity Financial Corp. v. Federal Home Loan Bank</u>, 792 F.2d 1432, 1435 (9th Cir. 1986), <u>cert. denied</u>, 497 U.S. 1064 (1987). Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990).

All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986). However, "conclusory allegations without more are insufficient

4

to defeat a motion to dismiss." <u>McGlinchy v. Shell Chemical Co.</u>, 845 F.2d 802, 810 (9th Cir. 1988); <u>Smilecare Dental Group v. Delta Dental Plan</u>, 88 F.3d 780, 785 n.6 (9th Cir.), <u>cert. denied</u>, 519 U.S. 1028 (1996).

DISCUSSION

I.   The CLRA and the UCL

The CLRA makes illegal "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  Among the proscribed activities are

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

Cal. Civ. Code § 1770 (a)(5), (7).  The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  Cal. Civ. Code § 1760.

The UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act

5

prohibited by Chapter 1[2] (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."  Cal. Bus. & Prof. Code    § 17200.

The UCL provides for monetary relief in the form of restitution:  "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction.  The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."  Cal. Bus. & Prof. Code § 17203.

II.  Defendant's Request for Judicial Notice

Defendant requests that the Court take judicial notice of Assembly Bill No. 292, which documents some of the legislative history of the CLRA, and of the warranties for Plaintiffs' vehicles.

Although generally a court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the

---

[2]  Chapter 1 prohibits false advertising for a variety of businesses.

6

United States District Court

For the Northern District of California

pleading, may be considered." Branch v. Tunnell, 14 F.3d 449,
454 (9th Cir. 1994). A court may also consider documents which
are not expressly incorporated into the complaint, but "upon
which the plaintiff's complaint necessarily relies." Parrino v.
FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Federal Rule of
Evidence 201(b) permits courts to take judicial notice of
adjudicative facts when they are capable of accurate and ready
determination by sources whose accuracy cannot reasonably be
questioned.

Defendant has submitted Assembly Bill No. 292 as it was
introduced to the California Legislature on January 21, 1970 and
as amended on May 22, 1970. The Assembly Bill is a public
record whose accuracy cannot be reasonably questioned.
Defendant has also submitted copies of the warranties for
Plaintiffs' vehicles. Because Defendant's motion must be denied
in relevant part even if the Court considers the warranties, the
Court will judicially notice them for purposes of this motion.

III.    Defendant's Motion to Dismiss

A.    Warranty

Defendant contends that Plaintiffs fail to state a claim
under the CLRA or the UCL because Plaintiffs cannot use these
statutes retroactively to convert their vehicles' warranties
into lifetime guarantees. Plaintiffs respond that their claims

are not warranty claims and that the CLRA and the UCL provide relief to consumers, regardless of the warranty involved, if the defendant engages in unfair, unlawful or fraudulent business activities.

Defendant relies on several cases to argue that because the intake manifolds failed after the warranty had expired, Plaintiffs cannot bring claims under the CLRA or the UCL. <u>See e.g.</u>, <u>Seely v. White Motor Co.</u>, 63 Cal. 2d. 9, 16 (1965) (manufacturer's failure to comply with its obligation under warranty entitled purchaser to recover damages resulting from such breach of warranty); <u>Standard Platforms. Ltd. v. Document Imaging Sys. Corp.</u>, 1995 WL 691868 at *1 (N.D. Cal.) (granting Rule 12(b)(6) motion to dismiss fraud claim that defendants knew but failed to disclose specific defects in the products because plaintiff impermissibly attempted to "tortify" contract law); <u>Greentree Software, Inc. v. Delrina Tech., Inc.</u>, 1996 WL 183041 at *3 (N.D. Cal.) (granting Rule 12(b)(6) motion to dismiss claim for negligent misrepresentation of product quality where claim, sounding in tort, was based on false statement made during the performance of a commercial sales contract); <u>Abraham v. Volkswagen of Am.</u>, 795 F.2d 238, 249-50 (2d. Cir. 1986) (warranty does not cover defects manifested after warranty's expiration).

United States District Court

For the Northern District of California

8

None of the cases relied on by Defendant holds that a defect manifested after the expiration of a warranty precludes a plaintiff from bringing claims under the CLRA or the UCL.  The effect of warranty expiration is not included in the plain language of the relevant sections of the CLRA and the UCL.  To state a claim under these statutes, a plaintiff must only allege that the defendant engaged in unfair business practices.  For these reasons, Plaintiffs' complaint cannot be dismissed on this ground.

B.   Duty of Disclosure

Defendant argues that Plaintiffs' complaint must be dismissed because Plaintiffs have not alleged and cannot establish that Defendant had a duty to disclose information about the allegedly defective intake manifolds.

The plain language of the relevant sections of the CLRA and the UCL does not require a plaintiff to allege that the defendant has a duty of disclosure.  Although Defendant argues that a manufacturer or a seller has no duty to make disclosures to the buyer, it has cited no case law to show that such a duty must be alleged in order to state a claim under the CLRA or the UCL.

Defendant also contends that Plaintiffs' complaint is

insufficient as a matter of law under Rule 9(b).  Defendant

relies on <u>Vess v. Ciba-Geigy Corp.</u>, which held that, although

fraud is not a necessary element of a CLRA claim, if a plaintiff

chooses to allege in the complaint that a defendant has engaged

in fraudulent conduct, the pleading of that claim must satisfy

the particularity requirement of Rule 9(b) of the Federal Rules

of Civil Procedure.  317 F.3d 1097, 1103-04 (9th Cir. 2003).

Defendant claims that Plaintiffs have plead fraud but have not

specified when failure of the intake manifolds is so premature

and so frequent that Defendant has an obligation to disclose it

or what Plaintiffs' "expectations" were regarding the durability

of the manifolds.

In the complaint, Plaintiffs allege that no later than

January, 1997, Defendant became aware that the defective intake

manifolds were failing at a "much higher rate" than the

"expected life of the part," and that beginning in January,

1998, Defendant concealed the defects when it sold the

automobiles while advertising that they were of sufficient

quality for normal use and when it offered an extended warranty

program to fleet purchasers of Subject Automobiles but not to

the vast majority of consumers.  Compl. at ¶¶ 4-7.  Plaintiffs

also allege that because of the defective intake manifolds,

their Subject Automobiles did not perform in accordance with

10

United States District Court

For the Northern District of California

their reasonable expectation that the cars would be "suitable for normal use as a passenger vehicle." <u>Id.</u> at ¶ 8.  Thus, Plaintiffs have alleged when Defendant became aware of the defect, what the defect was, when it concealed the defect, and what the Plaintiffs' expectations were regarding their vehicles. Therefore, to the extent that Plaintiffs' claims sound in fraud, they have alleged facts with sufficient particularity to satisfy Rule 9(b).

For these reasons, Plaintiffs' complaint cannot be dismissed on the ground that it did not allege a duty of disclosure or that it did not allege fraud with particularity.

C.   Concealment

Defendant argues that Plaintiffs fail to state a CLRA claim because they do not allege any affirmative misrepresentations by Defendant.

Citing <u>Outboard Marine Corp. v. Superior Court</u>, 52 Cal. App. 3d 30, 36. (1975), Plaintiffs argue that concealment of design defects is prohibited by the CLRA.  In <u>Outboard Marine</u>, the plaintiff brought a class action alleging that the defendant, a manufacturer, fraudulently concealed a design defect in its vehicles.  <u>Id.</u> at 34.  The plaintiff also brought a second cause of action, alleging that the defendant made fraudulent misrepresentations about certain specifications of

11

the vehicle in violation of the CLRA.  Id.  The defendant moved

to dismiss the first cause of action on the ground that it was

covered by the CLRA.  Id.[3]  The trial court denied the motion.

The court of appeal held that the motion to dismiss should have

been granted because the CLRA provided the exclusive remedy for

conduct encompassed by the act and the first cause of action was

based on the same conduct as that alleged in the second cause of

action.  The court concluded that because "an active concealment

has the same force and effect as a representation," the CLRA

includes a proscription against "a concealment of the

characteristics, use, benefit, or quality of the goods contrary

to that represented." Id. at 37.

Defendant seeks to distinguish Outboard Marine by noting

that the plaintiff, unlike Plaintiffs in this case, alleged that

the defendant made positive misrepresentations in addition to

concealing facts.  Defendant argues that Plaintiffs have not

alleged that Defendant made any misrepresentations about the

durability of its intake manifolds.  Defendant also argues that

by using the word "representing" in § 1770(a)(5) and (7), the

legislature meant affirmative misrepresentations and not

concealment.  Defendant further supports this interpretation by

---

[3] At the time this case was decided, the CLRA provided the
exclusive remedy for conduct encompassed by the act.  Section
1752 now provides that the CLRA is not an exclusive remedy.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

noting that § 1770(a)(21)[4] provides that the failure to disclose certain characteristics of "grey market goods" is a violation of the CLRA.  Defendant argues that because the legislature included concealment in one provision of the CLRA and did not do so in another related one, the legislature intended to make concealment actionable only in the case of "grey market goods."

Defendant's arguments are unpersuasive.  First, although Defendant is correct that the plaintiff in <u>Outboard Marine</u>, unlike Plaintiffs in this case, alleged that the defendant made positive misrepresentations, this distinction does not affect the court's determination that concealment of product defects is equivalent to misrepresentation for the purpose of analyzing claims brought under CLRA.

Second, Defendant's attempt to infer legislative intent from Chapter 4 of Title 1.7 (Consumer Warranties) is

---

[4] Section 1770(a)(21) prohibits the "[s]elling or leasing goods in violation of Chapter 4 (commencing with Section 1797.8) of Title 1.7."

Section 1797.81 provides that "[e]very retail seller who offers grey market goods for sale shall post a conspicuous sign at the product's point of display and affix to the product or its package a conspicuous ticket, label, or tag disclosing" certain characteristics about the product (e.g., the item is not covered by manufacturer's express written warranty).

"Grey market goods" means "consumer goods bearing a trademark and normally accompanied by an express written warranty valid in the United States of America which are imported into the United States through channels other than the manufacturer's authorized United States distributor and which are not accompanied by the manufacturer's express written warranty valid in the United States."  Cal. Civ. Code § 1797.8(a).

United States District Court

For the Northern District of California

unpersuasive.  Title 1.7 is not part of the CLRA, and it does not contain the word "conceal" or "concealment."  The CLRA merely incorporates Chapter 4 of Title 1.7 to prohibit certain acts and practices in the sale of grey market goods.  The relationship between the CLRA and Chapter 4 is too attenuated to infer the legislative intent of the terms in the CLRA from language in Chapter 4.

Nothing in the CLRA indicates that concealment is not the legal equivalent of misrepresentation.  Rather, the statute specifically provides that it shall be "liberally construed" to promote its underlying purposes, which include protection of consumers against unfair and deceptive business practices.  Cal. Civ. Code § 1760.  Liberally construed, the CLRA's proscription against unfair and deceptive business practices encompasses Defendant's alleged concealment of product defects.

Even if concealment were not actionable under the CLRA, Plaintiffs' complaint has alleged sufficient facts to show that Defendant represented that its vehicles would be of a particular quality that they are not.  In the complaint, Plaintiffs allege that Defendant "warranted, advertised, distributed, and sold" its automobiles.  In this way, Defendant represented that its cars would be of sufficient quality for normal use, and Plaintiffs bought the cars with the expectation that the cars

14

would be suitable for normal use.  Plaintiffs allege that the intake manifolds in the Subject Automobiles "did not perform in accordance with the reasonable expectations of Plaintiffs and the Class--namely, that the automobiles were suitable for normal use as a passenger vehicle."  Compl. at ¶ 8.  Therefore, Defendant allegedly represented that its vehicles would be of a quality suitable for normal use even though they were not.

Cases cited by Defendant to support the proposition that concealment is not actionable under CLRA are inapt.  In <u>Vess v. Ciba-Geigy Corp.</u>, a plaintiff sued the maker of Ritalin and two non-profit organizations for conspiring to increase sales of the drug in violation of the CLRA.  2001 WL 290333 at *2 (S.D. Cal., Mar. 9, 2001), <u>aff'd in relevant part</u>, 317 F.3d 1097 (9th Cir. 2003).  The court found that the non-profit organizations did not market or sell the product, there was no transaction between them and the plaintiff, and there was no allegation that the plaintiff saw or relied on the organizations' advertisements or that they made misrepresentations.  <u>Id.</u> at 12, 16.  For these reasons, the court granted the non-profit organizations' Rule 12(b)(6) motion to dismiss the CLRA claim.  The court did not hold that concealment is not actionable under the CLRA.

In <u>Bescoes v. Bank of America</u>, a plaintiff who leased a vehicle brought an action against the automobile dealer and the

United States District Court

For the Northern District of California

bank that financed the lease.  105 Cal. App. 4th 378, 382 (2003).  The plaintiff claimed that the bank was liable under the CLRA for failing to include a certain notice in its lease agreement as required by federal law.  Id. at 385.  The court rejected the plaintiff's CLRA claim because the federal law did not apply to his case and the bank therefore did not engage in a deceptive practice by not including the notice.  Id. at 395. The court did not hold that concealment is not actionable under the CLRA.

Therefore, the CLRA claim cannot be dismissed on this basis.

D.   Transaction

Defendant contends that because Plaintiffs bought used vehicles and did not buy them from Defendant, they fail to state a CLRA claim in that they have not alleged that they entered into a transaction with Defendant.

As stated above, the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  The CLRA defines "transaction" to mean "an agreement between a consumer and any other person, whether or not the agreement is a contract

16

enforceable by action, and includes the making of, and the performance pursuant to, that agreement."  Cal. Civ. Code § 1761(e).

Defendant argues that the California Legislature intended the CLRA to apply only to a defendant's alleged unlawful action in the context of a transaction between the plaintiff and the defendant.  As originally introduced in the legislature, the language of § 1770 proscribed "unfair methods of competition and unfair or deceptive practices undertaken by any person in the conduct of any trade or commerce . . . ."  Assembly Bill 292, Regular Session (Cal. Jan. 21, 1970) (emphasis added).  An amended version of the bill replaced "conduct of any trade or commerce" with "sale or lease of goods to any consumer." Amended Assembly Bill 292, Regular Session (Cal. May 22, 1970). Defendant argues that this change demonstrates that the legislature intended to restrict the CLRA's ambit to unlawful practices of a seller in a transaction with a buyer.

However, before the bill was passed, the legislature also inserted another phrase: "a transaction intended to result or which results in."  Thus, the legislature expanded the range of illegal acts and practices to include those "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

Nothing in the language of the CLRA states that only a defendant who directly engaged in a completed transaction with a plaintiff may be liable to that plaintiff.  Viewed in light of the provision to construe the statute liberally, the broad language of the statute suggests that the legislature intended the CLRA to cover a wide range of business activities.

In support of its argument, Defendant relies on Vess, 2001 WL 290333 at *2, and Boyd v. Keyboard Network Magazine, 2000 WL 274204 at *3 (N.D. Cal.), aff'd, 246 F.3d 672 (9th Cir. 2000). In Vess, the CLRA claim against the non-profit organizations was dismissed partly because they were not engaged in any business transactions with the plaintiff.  In Boyd, the plaintiff, who was wronged by a company that made a false advertisement, sued the publisher of that advertisement.  2000 WL 274204 at *3.  The court dismissed the CLRA claim for failing to allege a transaction because the publisher never intended to sell goods or services to the plaintiff.  Id.

The present case is distinguishable from Vess and Boyd. Neither the non-profit organizations in Vess nor the publisher in Boyd manufactured goods for sale, provided services, or intended to sell goods or provide services to any consumers.  In contrast, here Defendant is a manufacturer of automobiles which it intends to and does sell to consumers.  Plaintiffs' complaint

18

alleges that they bought a 1996, a 1997, and a 1998 model of the Subject Automobiles, that Defendant knew of the defective intake manifolds "no later than January 1, 1997, and possibly earlier," and that Defendant, "through its own efforts and through its network of authorized dealerships acting as its agents," "warranted, advertised, distributed, and sold its automobiles throughout the state of California."  Compl. at ¶¶ 4, 12, 13, 14, 16.  Therefore, Defendant allegedly knew of and concealed the defects in its Subject Automobiles at the time it engaged in transactions that were "intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  Among the sales of goods to consumers, that resulted from the transactions in which Defendant engaged, were the subsequent resales of Subject Automobiles to Plaintiffs.

For these reasons, Defendant's alleged concealment of product defects from Plaintiffs constitutes a transaction actionable under the CLRA and the complaint cannot be dismissed on this ground.

E.   Restitution

Defendant argues that because Plaintiffs are not entitled to restitution or damages under the UCL, that claim should be dismissed.  Plaintiffs contend that they properly requested

restitution under the UCL.

In <u>Kraus v. Trinity Mgmt. Servs.</u>, the court found that the California Legislature has not expressly authorized monetary relief other than restitution in UCL actions.  23 Cal. 4th 116, 138 (2000).  The court defined an order for restitution as one "compelling a UCL defendant to return money obtained through unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." <u>Id.</u> at 126-127.  The court concluded that although disgorgement into a fluid recovery fund[5] is not an available remedy under the UCL for representative actions, the legislature has "authorized disgorgement into a fluid recovery fund in class actions."  <u>Id.</u> at 138.

In <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134 (2003), the Republic of Korea solicited bids from several manufacturers of military equipment.  The plaintiff represented

_____

[5]  "Fluid recovery" refers to "the application of the equitable doctrine of cy près in the context of a modern class action.  The implementation of fluid recovery involves three steps.  First, the defendant's total damage liability is paid over to a class fund.  Second, individual class members are afforded an opportunity to collect their individual shares by proving their particular damages, usually according to a lowered standard of proof.  Third, any residue remaining after individual claims have been paid is distributed by one of several practical procedures that have been developed by the courts."  <u>Kraus</u>, 23 Cal. 4th at 127 (citations and quotation marks omitted).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

a company that lost the bid.  Id. at 1140.  The plaintiff, who would have received a commission had the company it represented won the bid, sued the defendant under the UCL because it allegedly won the bid by bribing Korean officials.  Id.  One issue before the court was "whether disgorgement of profits allegedly obtained by means of an unfair business practice is an authorized remedy under the UCL where these profits are neither money taken from a plaintiff nor funds in which the plaintiff has an ownership interest."  Id.  The court concluded that the plaintiff was not seeking return of money or property that was once in its possession but was seeking return of the profit the defendant received from the Republic of Korea, and that "disgorgement of such profits is not an authorized remedy in an individual action under the UCL."  Id. at 1140, 1149.  However, direct victims of unfair competition may obtain restitution. Id. at 1152.

Relying on Kraus, Plaintiffs argue that Korea Supply limited only direct victims in representative actions to a restitution remedy.  Plaintiffs suggest that in class actions, disgorgement into a fluid recovery fund is an available remedy under the UCL, even for indirect victims.  Plaintiffs are incorrect.  The Kraus court noted that disgorgement into a fluid recovery fund is an available remedy for class actions, but the

21

court also concluded that restitution is the only monetary remedy available under the UCL.  23 Cal. 4th at 138.  Thus, although a court may order disgorgement into a fluid recovery fund under the UCL for a class action, a plaintiff may recover money from this fund only to the extent that the recovery is restitutionary.

In the present case, Plaintiffs, as used car purchasers, have not alleged that they paid any money to Defendant. Plaintiffs are not direct victims who seek the return of money that was taken from them by Defendant.  Therefore, the remedy that Plaintiffs seek is not restitutionary and their claim for restitution under the UCL is dismissed.

In their prayer for relief, Plaintiffs request any other relief that may be appropriate.  Under the UCL, Plaintiffs may seek injunctive relief.  Therefore, Plaintiffs are given leave to amend to make a UCL claim for injunctive relief if they wish to do so.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Docket #7) is GRANTED IN PART.  Plaintiffs' UCL claim is dismissed with leave to amend in accordance with this order. Defendant's motion to dismiss Plaintiffs' CLRA claim is DENIED. Plaintiffs may file their amended complaint within ten days from

United States District Court
For the Northern District of California

22

the date of this order.  Defendant shall respond to Plaintiffs'

complaint within twenty days thereafter.  If Defendant files a

motion to dismiss Plaintiffs' amended complaint, Defendant shall

notice it for October 3, 2003 at 10 a.m.  In that event, the

Case Management Conference scheduled for October 3, 2003 will

also be held at

10 a.m.

        IT IS SO ORDERED.


Dated: _8/6/03_                        /s/ CLAUDIA WILKEN_____
                                       CLAUDIA WILKEN
                                       United States District Judge