LEVY, RAM & OLSON LLP
MICHAEL F. RAM (SBN 104805)
HEATHER M. MILLS (SBN 215293)
639 Front Street, Fourth Floor
San Francisco, California 94111-1913
Telephone:    (415) 433-4949
Facsimile:    (415) 433-7311

Attorneys for Plaintiffs, Class Members and the General Public

[*Additional counsel on signature page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Susan Chamberlan, Brian Champine and Henry Fok, on behalf of themselves and all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>Ford Motor Company, and DOES 1 through 20, inclusive,<br><br>Defendants. | No. C 03 2628 CW<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:    March 26, 2004<br>Time:    10:00 a.m.<br>Judge:    The Honorable Claudia Wilken<br>Location:    Courtroom Two, 4th Floor<br>    1301 Clay Street<br>    Oakland, CA 94612<br><br>Trial Date:    January 18, 2005 |

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

1

## TABLE OF CONTENTS

2

Page

3    I.     INTRODUCTION ......................................................... 1

4    II.    PROPOSED CLASS DEFINITION ......................................... 2

5    III.   FORD'S FAILURE TO DISCLOSE THE PLASTIC WATER CROSSOVERS'
            CRACKING PROBLEM MAKES THIS CASE APPROPRIATE FOR CLASS
6           TREATMENT ........................................................... 2

7           A.    Ford Knew Throughout the Class Period That The Plastic Water
                  Crossovers Had Cracking Problems ................................. 5

8           B.    Poor Design of the Plastic Water Crossover Is a Substantial
9                 Factor That Causes the Crossover to Crack .......................... 9

10          C.    Plaintiffs Need Only Prove That Ford's Omission was Material ............ 15

11          D.    Ford's Omission is Material ...................................... 17

12   IV.    MS. CHAMBERLAN AND MR. FOK ADEQUATELY REPRESENT
            THE CLASS AND THEIR CLAIMS ARE TYPICAL .......................... 18

13   V.     THE STATUTE OF LIMITATIONS IS AN ISSUE TO BE RESOLVED ON
14          A CLASS-WIDE BASIS ................................................. 20

15   VI.    DAMAGES CAN BE ESTABLISHED ON A CLASS-WIDE BASIS .............. 21

16   VII.   CONCLUSION ......................................................... 23

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

Page i

1

**TABLE OF AUTHORITIES**

Page

2

Cases:

3

4

Abbent v. Eastman Kodak Co.
1992 WL 1472751 (D.N.J. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5

Amato v. General Motors Corporation
11 Ohio App. 3d 124 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

6

7

April Enterprises, Inc. v. KTTV
147 Cal. App. 3d 805 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

8

Bell v. Farmers Insurance Exchange
2004 Cal. App. LEXIS 156 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

9

10

Blackie v. Barrack
524 F.2d 891 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

11

B.W.I. Custom Kitchen v. Owens-Illinois, Inc.
191 Cal. App. 3d 1341 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

12

13

Caro v. Procter & Gamble Co.
18 Cal. App. 4th 644 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

14

In re CBC Companies, Inc.
181 F.R.D. 380 (N.D. Ill. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

15

16

Clothesrigger Inc. v. GTE Corp.
191 Cal. App. 3d 605 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

17

Committee on Children's Television, Inc. v. General Foods Corp.
35 Cal. 3d 197 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18

19

Engalla v. Permanente Medical Group Inc.
15 Cal. 4th 951 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

20

In re Ford Motor Company Vehicle Paint Litig.
182 F.R.D. 214 (E.D. La. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21

22

In re Ford Motor Co. Bronco II Prod. Liab. Litig.
77 F.R.D. 360 (E.D. La. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

23

General Telephone Co. of Southwest v. Falcon
457 U.S.147 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

24

Georgine v. Amchem Prods.
83 F.3d 610 (3rd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

25

26

Glue-Fold, Inv. V. Slautterback Corp.
82 Cal. App. 4th 1018 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

27

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

Page ii

Hanlon v. Chrysler Corp.
150 F.3d 1011 (9th Cir. 1998) .............................................. 4

Heiner v. Kmart
84 Cal. App. 4th 335 (2000) ............................................... 11

JH Cohn & Co. v. American Appraisal Assoc., Inc.
628 F.2d 994 (7th Cir.) ................................................... 5

Khan v. Shiley
217 Cal. App. 3d 848 (1990) .............................................. 4

Mass Mutual Life Ins. Co. v. Sup. Ct.
97 Cal. App. 4th 1282 (2002) ................................. 4, 10, 15, 16, 21

In re Prudential Ins. Co. Am. Sales Practices Litig.
148 F.3d 283 (3d Cir. 1998) ................................................ 19

Raudebaugh v. Action Pest Control Inc.
59 Ore. App. 166 (1982) .................................................. 10

Samuel-Bassett v. Kia Motors America, Inc.
212 F.R.D. 271 (E.D. Pa. 2002) ..................................... 6, 14, 18

Soule v. Gen. Motors Corp.
8 Cal.4th 548 (1994) ..................................................... 10

Vasquez v. Superior Court
4 Cal. 3d 800 (1971) ..................................................... 17

Wang v. Massey Chevrolet
97 Cal. App. 4th 856 (2002) ............................................... 9

Winston Realty Co. v. G.H.G. Inc.
314 N.C. 90 (1985) ...................................................... 10

Ziemack v. Centel Corp.
163 F.R.D. 530 (N.D. Ill. 1995) ............................................ 6

Statutes:

Cal. Civ. Code section 1760 ............................................... 1, 9

Cal. Civ. Code section 1770(a)(5) .......................................... 1, 3

Cal. Civ. Code section 1770(a)(7) .......................................... 1, 3

Cal. Civ. Code section 1780(a) ............................................ 9, 15

Fed. R. Civ. Proc. 23 ............................................. 2, 6, 22, 23

Other:
Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS (4th Ed. 2002) . 19, 21, 22, 23

# I. INTRODUCTION.

Plaintiffs seek to litigate on a class-wide basis a single claim under the California Consumers Legal Remedies Act ("CLRA") against a single defendant, on behalf of a class of California consumers. Certification of the class will promote a stated purpose of the CLRA - to provide an efficient and economical procedure to protect consumers against material omissions about consumer products. Cal. Civ. Code §§ 1760, 1770(a)(5), (7). Absent certification, plaintiffs and class members will be stuck with a hefty bill to repair a problem that Ford knew about and failed to disclose.

Ford suggests that this case is too complicated for class certification because cracking problems with its plastic intake manifold water crossovers are worse in some cars. Ford relies on cases concerning negligence, warranty, personal injury, and common law fraud that have elements that the CLRA does not have. But the common legal issue that predominates in this case is not complicated: whether Ford's failure to disclose to the class the plastic water crossovers' cracking problem violates the CLRA. Nor are the factual issues that predominate complicated. In fact, Ford does not dispute the following facts:

- Before the class period, Ford's 4.6L engines had aluminum manifolds with aluminum water crossovers; there were no cracking problems.
- Ford switched to plastic because it is cheaper and lighter.
- The plastic water crossovers had cracking problems throughout the class period.
- The use of plastic for the water crossover is a substantial factor in the cause of the cracking.
- Ford did not disclose the cracking problem with plastic crossovers to ordinary California consumers in the proposed class.
- Ford gave extended warranties to all fleet purchasers of cars with plastic crossovers.
- Ford adopted a rule in 2000 prohibiting any future plastic crossovers.
- Ford began using aluminum for the water crossover after the class period;

1    there have been no problems with the aluminum crossover.

2    Plaintiffs have met the requirements of Fed. R. Civ. Proc. 23 and respectfully request this

3    Court to certify plaintiffs' claim for class treatment. Plaintiffs submit a proposed trial plan as

4    Exhibit A to this brief.

5    **II.    PROPOSED CLASS DEFINITION.**

6    Through discovery, plaintiffs learned that Ford apparently offered extended warranties to

7    non-fleet purchasers of 1996-1997 Cougars, Thunderbirds, and Mustangs, as well as to fleet

8    purchasers of all of the cars with plastic crossovers. The class definition should exclude anyone

9    to whom Ford provided an extended warranty for their intake manifold. The revised proposed

10   class definition is:

11
12   All consumers residing in California who currently own, or paid to repair or replace the
     plastic intake manifold in any of the following cars: 1996-2001 model year Mercury
     Grand Marquis, 1998-2001 model year Ford Mustangs, 2002 model year Ford Explorers,
13   1996-2001 model year Ford Crown Victorias, or 1996-2001 model year Lincoln Town
     Cars.

14
     "Consumer" means an individual who bought her car for personal, family, or household
15   purposes.

16   Excluded from the Class are (1) anyone to whom Ford has provided an extended
     warranty for her intake manifold; (2) the judge to whom this case is assigned and
17   any member of the judge's immediate family; (3) anyone who suffered personal
     injury related to Ford's plastic water crossover.

18   Ford argues that certification is inappropriate because individual inquiries are necessary

19   to determine whether class members are "consumers." This argument would preclude

20   certification of *any* class under the CLRA - even thought the Act protects only "consumers" and

21   has its own procedure for class certification.

22   **III.    FORD'S FAILURE TO DISCLOSE THE PLASTIC WATER CROSSOVERS'
             CRACKING PROBLEM MAKES THIS CASE APPROPRIATE FOR CLASS
23           TREATMENT.**

24   Despite Ford's continued attempts to force plaintiffs' allegations into a Procrustean bed

25   of warranty or product liability, plaintiffs do not seek relief under these theories. Contrary to

26   Ford's assertions, plaintiffs need not convince a jury at trial that Ford's plastic intake manifolds

27

28
─────────────────────────────────────────────────
REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

1 are inherently defective. Instead, they need only prove that Ford failed to disclose adverse

2 material information about the plastic intake manifolds in a manner that qualifies as a deceptive

3 practice under California Civil Code sections 1770(a)(5) and (a)(7).

4 Ford knew that plastic water crossovers crack - and never disclosed this to class members

5 because "most failures occur outside the warranty period" and Ford was "struggling to justify the

6 need to offer extended warranty." In a May 16, 2000 email, Gary Liimatta stated:

7 [F]rom the Product Engineering side we have been forced to conclude that the

8 only way we can robustly address this issue, given the constraints inheriant [sic] to

9 the cooling system is to move towards an all-aluminum crossover, for all

10 applications. Unfortunately, this is a major tooling change and so we will not be

11 able to roll this change in until April 01. In the meantime it is our disire [sic] to

12 convince the recall committee to cover all applications of the composite x-over.

13 The challange [sic] facing my team is that although *we expect long term*

14 *reliability issues with the retail applications, most failures occur outside the*

15 *warranty period so we are struggling to justify the need to offer extended*

16 *waranty* [sic] . . ."

17 (Mills Reply Dec., Ex. A, emphasis added.) Ford's failure to disclose the failure mode common

18 to all of the plastic water crossovers makes this case appropriate for class certification under the

19 CLRA.

20 Plaintiffs' allegations properly focus on Ford's conduct, not the conduct of plaintiffs or

21 class members. Unlike warranty or product liability claims, "in which the safety and efficacy of

22 the product is assailed, [a] fraud claim impugns the defendants' conduct," and thus obviates the

23 need for a court to focus on many of the purportedly individualized issues that defendants claim

24 defeat class certification in product defect matters. Khan v. Shiley, 217 Cal. App. 3d 848, 857,

25 266 Cal. Rptr. 106 (1990). "For purposes of establishing fraud, it matters not that the valve

26 implanted in Khan's heart is still functioning, arguably as intended." Id. at 858.

27

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

Page 3

1    Ford relies on the legal standards in cases concerning negligence, warranty, and personal

2    injury - theories that have elements that the CLRA does not have and which may not be

3    appropriate for class certification. For example, Georgine v. Amchem Prods., 83 F.3d 610, 630

4    (3rd Cir. 1996) was a nationwide personal injury case which involved complicated questions of

5    the law in the 51 jurisdictions and the different effects of different asbestos exposures on

6    different people's bodies.

7        More appropriate and persuasive cases include Hanlon and Mass Mutual. In Hanlon v.

8    Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998) the Ninth Circuit recognized the important

9    distinction between the class disapproved in Amchem and classes like those proposed here where

10   each class member has the same alleged problem with her car. In Hanlon, the Ninth Circuit

11   affirmed certification of a nationwide class of consumers who purchased vans that all had similar

12   defective rear-gate latch designs. The Ninth Circuit held that "each potential plaintiff has the

13   same problem: an allegedly defective rear latch gate which requires repair or commensurate

14   compensation. The differences in severity of personal injury present in Amchem are avoided

15   here by excluding personal injury and wrongful death claims." Id. at 1021.

16       Mass Mutual Life Ins. Co. v. Sup. Ct., 97 Cal. App. 4th 1282, 119 Cal. Rptr. 2d 190,

17   (2002) is most like our case, as it is a *common omission* case brought under the CLRA.  A

18   California appellate court affirmed certification of a class of thousands of insurance policy

19   holders who alleged that a life insurer withheld from them its own internal views about the

20   amount of future dividends it planned to pay under "vanishing premium" life insurance policies.

21   In holding that class certification was appropriate, the court stated, "Mass Mutual's failure to

22   disclose its own conclusion presents an issue common to all class members." Id. at 1294, fn.5.

23

24

25

26

27

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

**A.      Ford Knew Throughout the Class Period That The Plastic Water Crossovers Had Cracking Problems.**

Ford does not dispute that it has known since November 1995 that plastic water crossovers prematurely degrade over time from exposure to hot coolant - which can eventually result in cracking. (Ford Opp. at 9, Reidel Dec, Ex.1, Ex. 4 in support of Ford Opp.) Ford's team of experts, including departmental engineers from Central Laboratories, Engine Programs, Research Engineering and Analytical Engineering, as well as experts from their intake supplier, Montplast, and material supplier, Dupont, conducted extensive "design validation and production validation testing" to improve the plastic water crossovers - without success. (Ford Opp. at 9:12-13, Reidel Dec. ¶ 6 in support of Ford Opp.) On February 2, 2000, Craig Riedel reported in meeting notes that "all five current production base water crossovers have failed on the bench test." (Mills Reply Dec., Ex. B.) When reporting 1996 and 1997 T-Bird/Cougar actual failure rates of 55% and 33% respectively, Thomas Zahm referred to the plastic intake manifold in the subject line as a "Piece of Crap." (Mills Reply Dec., Ex. C [5/24/00 email from Thomas Zahm].) Craig Reidel, the component engineer who submitted a declaration in support of Ford's opposition brief, also referred to the plastic intake manifold as a "Piece of Crap" in the subject line of his 5/25/00 email to Thomas Zahm. Id.

Ford's team of experts was not able to resolve the cracking problem until it changed the crossover material from plastic to aluminum. Ford's 2000 intake manifold Design Guide "prohibit[s] composite coolant crossover designs." (See Mills Decl., submitted with Plaintiffs Motion for Class Certification, Ex. R.) In June 2001, Ford began producing a manifold with an aluminum crossover. (Reidel Dec. ¶ 27 in support of Ford's Opp.)

For common issues to predominate, it is not necessary that Ford's knowledge regarding the 3mm, 4mm, or 5mm plastic water crossover be exactly the same throughout the class period.[1]

---

[1]      Ford cites JH Cohn & Co. v. American Appraisal Assoc., Inc., 628 F.2d 994, 998 (7th Cir. 1980) for the proposition that where defendant's knowledge changes over time, this weighs against certification. But "at least four judges in this District have rejected Cohn's application because the Seventh Circuit did not base its decision on the commonality element per se, but on whether the denial of class certification was an extreme abuse of discretion warranting

In <u>Samuel-Bassett v. Kia Motors America, Inc.</u>, 212 F.R.D. 271 (E.D. Pa. 2002), <u>vacated and remanded for jurisdictional fact-finding</u>, 2004 U.S. App. LEXIS 1739 (3rd Cir. 2004), the court certified a state-wide class of Kia car owners claiming violation of Pennsylvania's consumer protection statute, the Magnuson-Moss Warranty Improvement Act, and violation of express and implied warranties for allegedly failing to disclose a known, uniform problem with the braking system of Kia Sephia's that Kia unsuccessfully attempted to remedy.[2]  The decision was vacated and remanded for fact-finding on the jurisdictional amount; but that does not diminish the court's reasoning in finding that plaintiffs met the requirements of Rule 23.  Common issues of liability predominated because,

> Kia was aware that there were ongoing problems with the Sephia's braking system by virtue of the parts sales history of the Sephia's brake pads and rotors, the Technical Service Bulletins which it issued, its ongoing efforts to redesign and improve its brake pads and rotors and to manufacture them for installation on all model year vehicles, its brake coupon program, and the relatively high buy-back rate which the company had for the vehicle.

<u>Id.</u> at 282.  Kia's knowledge of the problem most certainly varied from year to year throughout the 1995-2001 class period as Kia attempted to correct the problem, but the court's inquiry was directed at the overall evidence concerning Kia's knowledge of the problem throughout the class period, rather than Kia's knowledge at the specific moment each individual class member purchased his or her car.  Similarly, this Court's inquiry should be directed at the overall undisputed evidence that Ford knew about the cracking problem throughout the class period.

In <u>In re Ford Motor Company Vehicle Paint Litig.</u>, 182 F.R.D. 214, 215 (E.D. La. 1998), plaintiffs sought certification of a nationwide common law fraudulent concealment claim - not a statutory consumer protection claim at issue here with less rigorous pleading and proof standards.

---

a writ of mandamus."  <u>Ziemack v. Centel Corp.</u>, 163 F.R.D. 530, 534-535 (N.D. Ill. 1995).  Furthermore, the securities and common law fraud claims in <u>Cohn</u> required different proof than a California consumer protection claim.  Finally, here Ford's omission was essentially the same throughout the class period: plastic crossovers crack.

[2]    The court did not certify plaintiffs' claim under Pennsylvania's consumer protection statute because, unlike the CLRA, the Pennsylvania statute follows the economic loss doctrine.  <u>Id.</u> at 283.

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

1 In finding that common issues did not predominate, the court focused on problems of nation-
2 wide variances in state law and individualized reliance issues that are not at issue here. Id. at
3 220-222.[3]

4        Ford's specific knowledge at different moments in the class period is irrelevant because
5 Ford knew throughout the class period that the plastic water crossovers, regardless of whether
6 they were 3mm, 4mm, or 5mm, all *failed in the same way*. This is because "the degradation
7 process occurs under normal and reasonably foreseeable operating conditions." (Kasbekar Reply
8 Dec. ¶ 8.) Ford reported internally (in a February 13, 2001 email from Rich Hirtzel) that, for cars
9 with plastic intake manifolds, "eventually all the vehicles will need the repair." (Mills Reply
10 Dec., Ex. D.) In an email dated June 29, 2000 from Gary Liimatta, Ford admits that "due to the
11 fact that our best evidence indicates that the failure is due to the accumulated effects of time,
12 temperature and pressure in service; there is no reason to believe that the demand for service
13 parts will increase linearly or flatten out . . . In all probability the light duty applications will
14 continue to fail at ever increasing rates." (Mills Reply Dec., Ex. E.) Plaintiffs' expert, Dr.
15 Kasbekar concludes that "It is evident . . . that Ford did not adequately account for the material
16 behavior and resulting degradation when these parts were initially designed. The failure rate of
17 the subject manifolds with plastic crossovers will increase with vehicle age and use as the plastic
18 material further degrades." (Kasbekar Reply Dec. ¶ 7.)

19        Dr. Marais' statistical analysis created to support Ford's argument that the rates of
20 manifold failures vary across models and model years is based solely on Ford's warranty data.
21 (Opp. at 14:2-9.) Warranty data is irrelevant. This case is concerned solely with post-warranty

22

23        [3]    Abbent and Bronco II are also inapposite. Abbent is an unpublished personal
injury case in which a nationwide class sought certification of claims for negligence, strict
24 liability and breach of express and implied warranties. Abbent v. Eastman Kodak Co., No. 90
CV 3436, 1992 WL 1472751 (D.N.J. 1992). The court denied certification because individual
25 issues concerning causation, the "state of the art" defense over a 50-year period, reliance and
application of the laws of 50 states predominated. Id. at *6. In Bronco II, the court denied class
26 certification because of plaintiff's presumed inability to prove the existence of a common defect
where plaintiffs claimed violation of the Magnuson-Moss Warranty Act, breach of express and
27 implied warranties and common law fraud. In re Ford Motor Co. Bronco II Prod. Liab. Litig., 77
F.R.D. 360, 373 (E.D. La. 1997).

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

failure, which is when almost all of the failures occur. Dr. Marais' statistical analysis of warranty claims is beside the point. Because plastic crossovers degrade over time from exposure to heat, failure rates after the warranty period are obviously higher. In a May 16, 2000 Ford document titled "4.6 L 2V Intake Manifold Failure Analysis dated May 14, 1996, Ford predicted plastic manifold failure rates of 30% at 90,000 miles, 60% at 120,000 miles and 81% at 150,000. (Mills Reply Dec., Ex. F.)

Plaintiffs requested that Ford provide information regarding failure rates of the aluminum water crossovers used before and after the plastic water crossover. Ford didn't produce this information until last week (after plaintiffs filed a motion to compel.) The recently produced documents show that the asserted variations in the failure rates of class members' manifolds with plastic crossovers are immaterial compared to the difference in failure rates between the plastic manifolds at issue and manifolds with aluminum crossovers. For example, "replacement parts were required for only 0.11% of the total vehicle population with 4.6L engines and all-aluminum manifolds, a portion of which most probably includes replacements for manifolds damaged in a collision." (Kasbekar Reply Dec. ¶ 2.) In contrast, "replacement parts appear to have been required for over 19% of the total vehicle population for vehicles that were equipped with plastic intake manifolds." (Kasbekar Reply Dec. ¶ 4.) In 1998 alone, Ford sold over 90,000 more replacement parts for plastic intake manifolds than it did for all-aluminum manifolds during the entire period the all-aluminum manifolds were produced. (Mills Reply Dec., Ex. G [12/3/99 email from David Thomas] shows 91,743 replacement parts sold over the counter in 1998 while Ford sold 1,716 total replacement parts for all-aluminum manifolds between 1992 and 1995 (Kasbekar Reply Dec. ¶ 2.) Furthermore, the documents Ford produced last week "indicate that the projected failure rate at 100,000 miles for retail vehicles with the 5mm wall thickness composite plastic manifolds is approximately 3 to 8 times greater than the replacement part sales percentage for the all-aluminum manifold." (Kasbekar Reply Dec. ¶ 6.)

"In my experience, aluminum manifolds generally last the life of the vehicle and do not fracture unless the vehicle is involved in an accident or the manifold has a manufacturing

defect." (Kasbekar Dec. ¶ 3.) Ford's experience is similar. Wolfgang Beatham, the Ford engineer who began the plastic intake manifold design change, testified that there were no problems with the aluminum manifold.

> Q. Was the water crossover portion of the original aluminum manifold working well when you came on in 1994?
>
> A. Yes. There were no issues with it.

(Mills Reply Dec., Ex. H [Beatham Depo. 11:8-12.].)

### B. Poor Design of the Plastic Water Crossover Is a Substantial Factor That Causes the Crossover to Crack.

Ford argues that the alleged poor maintenance of certain cars or unusual driving practices preclude class treatment. Ford appears to argue that poor maintenance or unusual driving can potentially cause the plastic water crossover to crack, and that these potential causes must be ruled out on an individual basis for plaintiffs to meet their burden of proof. Ford's argument rests on a fundamental misunderstanding of the causation requirements of the CLRA - and its inappropriate attempt to treat plaintiffs' claim as a product liability claim.

The CLRA protects "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice" unlawful under the act. Civ. Code § 1780(a). While plaintiffs must suffer damage "as a result of" Ford's unlawful act, the CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Civ. Code § 1760; Wang v. Massey Chevrolet, 97 Cal. App. 4th 856, 869, 118 Cal. Rptr. 2d 770 (2002). Thus, California courts have interpreted the causation requirement loosely. Under the CLRA, "[c]ausation as to each class