member is commonly proved more likely than not by materiality" of the misrepresentation or omission. Mass. Mut. Life Ins. Co. v. Sup. Ct., 97 Cal. App. 4th 1282, 1292, 119 Cal. Rptr. 2d 190 (2002) quoting Blackie v. Barrack, 524 F.2d 891, 907, fn. 22. (9th Cir. 1975).

Even under the standard of causation for a products liability claim (which is stricter than the liberal causation standard of the CLRA), the alleged product defect need only be a "substantial factor" in causing the plaintiff's damage. Soule v. Gen. Motors Corp., 8 Cal.4th 548, 572, 34 Cal. Rptr. 2d 607 (1994). Thus, even under the tougher causation requirements of a product liability case, which this is not, if Ford's poor design of the plastic water crossover is a substantial factor in causing it to crack, Ford is liable.

Ford tries to convert our statutory cause of action for unfair and deceptive business practices into one in tort - so it can invoke "comparative fault" and try to make the case appear unmanageable. Yet, for statutory claims like the CLRA, comparative fault does not come into play. The only defenses are those in the statute. In Winston Realty Co. v. G.H.G. Inc., 314 N.C. 90, 331 S.E.2d 677 (1985), the court held that contributory negligence cannot be a defense to a consumer protection case. The only relevant factors are that an act or practice possess the tendency or capacity to mislead, or create the likelihood of deception - making any alleged contributory negligence "irrelevant." Id. at 680; see also Raudebaugh v. Action Pest Control Inc., 59 Ore. App. 166, 650 P.3d 1006 (1982) ("The elements of the cause of action are specified in the statute . . . [the consumer protection statute] provides that the remedies specified in the Act are in addition to all other civil remedies existing at common law. This indicates legislative intent to create a special remedy different from those that exist at common law.")

Furthermore, a knowing and deceptive practice (as is at issue here) is akin to an

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

Page 10

intentional tort. Comparative fault doctrines do not apply to intentional torts. Heiner v. Kmart, 84 Cal. App. 4th 335, 350, 100 Cal. Rptr. 2d 854 (2000) (holding that intentional torts such as battery are excluded from the comparative fault system.)

Ford, with all of its resources and experts, never once states that poor design was not a substantial factor in the failures of Mr. Fok's and Ms. Chamberlan's plastic intake manifolds. The obvious omission in Dr. Caulfield's declaration detailing all of the alleged problems with Mr. Fok's and Ms. Chamberlan's engines is any testimony that poor design is not a substantial factor in plastic water crossover failures. Dr. Caulfield does not contradict the opinion of plaintiffs' expert, Dr. Kasbekar, who states that the "primary cause of crossover failure appears to be inadequate strength due to the choice of material and design of the crossover." (Kasbekar Dec. ¶ 11 submitted with Plaintiffs' Motion for Class Certification.) Indeed, Dr. Caulfield acknowledges that "[w]hen a fracture of the manifold crossover occurs, it is the result of chemical and thermal degradation of the glass-filled nylon material, which can result in the initiation and propagation of fatigue cracks due to service stresses imposed on the crossover wall." (Caulfield Dec. ¶ 11 in support of Ford Opp.) "Service stresses" seem to include anything that can cause an engine's temperature to increase, including acceleration, idling, misfiring, dirty oil, and a dirty air filter: in other words, driving the car under foreseeable conditions that ordinary drivers face every day.

Ford hired Packer Engineering to inspect Ms. Chamberlan's car 18 months after the intake manifold cracked and to inspect Mr. Fok's car nine months after the intake manifold cracked. Dr. Caulfield, who did not perform the inspection himself, but relies upon notes and photographs, argues that the coolant temperature gauge on Ms. Chamberlan's car was

malfunctioning which "*could* result in vehicle overheating . . . [which] *could* lead to premature intake manifold crossover fracture." (Id. at ¶ 22:19-28, emphasis added.) Dr. Caulfield further states that Mr. Fok's car had an aftermarket air filter "laden with dirt and particulate debris," that the engine oil was old and low, and that the engine was misfiring which "*may* also increase the underhood and coolant temperatures." Id. at ¶ 23-25, emphasis added.

If you look at anyone's engine closely enough, you can probably find something in its maintenance history that is less than perfect. But these common car problems do not and should not cause the water crossover to crack. Plaintiffs' expert mechanic, William Brady, inspected Ms. Chamberlan's and Mr. Fok's cars himself and found that "Ms. Chamberlan's and Mr. Fok's cars were properly maintained and are in good running condition. It would be highly unlikely that improper maintenance of their vehicles would have caused the plastic water crossovers of their intake manifolds to crack." (Brady Reply Dec. ¶ 11.) Certainly, failure to change one's oil every 3000 miles is a foreseeable risk that Ford anticipated.

Dr. Caulfield states that fractures in the plastic water crossover occur as a result of thermal degradation which "can occur as a result of exceptionally high under-hood temperatures associated with extended periods of engine idling, a malfunctioning thermostat, or restricted cooling." (Caulfield Dec. ¶ 11 in support of Ford Opp.) Plaintiffs' expert, William Brady, who examined the engines personally, found that "[h]e cooling systems on both of the cars are working properly and prevent the temperatures of the engines from rising above normal ranges - even when problems arise that could cause temperatures to increase in the engine, such as a misfiring cylinder. There was no failure of the cooling system that could have caused Ms. Chamberlan's or Mr. Fok's plastic water crossover to crack." (Brady Reply Dec. ¶ 12.) Mr.

---
REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

Page 12

Brady also found that Ms. Chamberlan's temperature gauge was working properly. (Brady Reply Dec., Ex. A, "It was important to establish that the temperatures shown co-related to the reading of the gauge, particularly at higher temperatures.") In Mr. Brady's opinion, "the plastic composite that Ford used to construct the intake manifold and water crossover is not of sufficient durability, leading to the failure of the intake manifold crossovers on Ms. Chamberlan's and Mr. Fok's vehicles." (Brady Reply Dec. ¶ 14.)

Furthermore, throughout the seven-year period in which Ford was testing the cracking problem, it apparently never treated maintenance as an issue that caused the plastic crossover failures. Ford documents repeatedly state that:

- "failure is due to material degradation leading to fatigue cracks in areas of highest stress." (Mills Reply Dec., Ex. I ["1996 thru 2001 MY 4.6L SOHC Romeo Gasoline Engine Field Failures of Intake Manifold Incorporated Engine Coolant Crossover Duct."].)

- "root cause: fatigue/diminished material properties, manufacturing process (Mills Dec, submitted with Plaintiffs' Motion for Class Certification, Ex. D ["1996 MY 4.6L-2V Composite Intake Manifold Lessons Learned"].)

- "root cause: insufficient design validation, non-optimized cross section geometry due to manufacturing constraints and packaging constraints." (Mills Reply Dec., Ex. J at p. 2 [Power Point Presentation Titled "4.6L 2V Intake Manifold Composite Water Crossover Cracking"].)

Improvements to the plastic water crossover focused on increasing the wall thickness and strengthening the nylon material, not driving conditions or maintenance issues. (Ford's brief at

---

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

11-12.)

In <u>Samuel-Bassett v. Kia Motors</u>, <u>supra</u>, 212 F.R.D. 271, the court certified a state-wide class of Kia car owners claiming Kia failed to disclose a known, uniform problem with the braking system of Kia Sephia's that Kia unsuccessfully attempted to remedy. The court found that questions common to the class clearly predominated despite defendant's argument that each individual car owner's driving habits and conditions had to be evaluated. The court reasoned that:

> The braking system is manufactured in such a way that the parts are fully interchangeable from one model year to the next. While Defendant is no doubt correct that each vehicle was driven differently by different drivers in different locations and that the vehicles manifested varying symptoms . . . there is nonetheless sufficient indicia that a vast number of those Sephias manufactured and sold between 1995 and 2001 experienced some or all of the above symptoms and were subject to the wear-out of their brake pads and rotors before reaching the 5,000 mile mark regardless of who was driving them or where or how they were being driven.

<u>Id.</u> at 282. Just as the Kia Sephia's braking system was designed to be fully interchangeable from one engine to the next, the Ford intake manifold is interchangeable from one 4.6L engine to the next. And just as the Kia braking system was designed to last 5,000 miles regardless of who was driving the car, plastic intake manifolds are designed to last 150,000 miles regardless of who is driving the car. There is also undisputed evidence here (similar to the undisputed evidence of failure in <u>Kia</u>) that a vast number of plastic water crossovers cracked before 150,000 miles regardless of who was driving the car or how they drove it.

Even under the strict proof standards of a product liability case, how class members drive and maintain their cars would not affect the existence or scope of Ford's liability to the class because the poor design of the plastic water crossover remains a substantial factor in causing the

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

Page 14

crossovers to crack. Nor do Ford's assertions concerning improper maintenance and driving affect the appropriateness of class treatment of plaintiffs' claim. What Ford forgets is that this is a consumer protection case where the focus is on Ford's omission - which is a substantial factor in causing harm to the class.

### C. Plaintiffs Need Only Prove That Ford's Omission was Material.

To establish the requisite causation under the CLRA, plaintiffs and class members need only prove that Ford failed to disclose material facts regarding the characteristics, quality and standard of the car they purchased. Reliance is not an element of a California consumer protection claim. Committee on Children's Television, Inc. v. General Foods Corp., 35 Cal. 3d 197, 211, 197 Cal. Rptr. 783 (1983) "In order to establish liability for a **nondisclosure** under either the UCL or the CLRA, plaintiffs need not present individual proof that each class member relied on particular representations made by Mass Mutual or its agents." Mass Mutual, supra, 97 Cal. App. 4th at 1286, emphasis added.

Contrary to Ford's assertion, Civil Code 1780(a)[4] does not make plaintiffs' claims unsuitable for class treatment. Plaintiffs can prove causation that is common to all of the class members by proving the materiality of the omission.

> Causation as to each class member is commonly proved more likely than not by materiality. That showing will undoubtedly be conclusive as to most of the class. The fact a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all.

Mass Mutual, supra, 97 Cal. App. 4th at 1292-1293 quoting Blackie v. Barrack, 524 F.2d 891,

---

[4] Relief under the CLRA is guaranteed to "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice" unlawful under the act. Civ. Code, § 1780(a).

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

907, fn. 22. (9th Cir. 1975). The court further held that a defendant's common, material omission will raise an inference of reliance.

> [T]he record permits an inference of common reliance. Plaintiffs contend Mass Mutual failed to disclose its own concerns about the premiums it was paying and that those concerns would have been material to any reasonable person contemplating the purchase of [the vanishing premium] payment plan. If plaintiffs are successful in proving these facts, the purchases common to each class member would in turn be sufficient to give rise to the inference of common reliance on representations which were materially deficient.

Id. at 1293.

Similarly here, if plaintiffs can establish that Ford failed to disclose the identified trend that plastic water crossovers prematurely crack, and that such information would have been material to a reasonable person contemplating purchase of a Ford car, then class members' purchases are sufficient to give rise to the inference of common reliance on Ford's materially deficient representations. See Mass Mutual, supra, at 1293-1294.

Ford misstates Caro v. Procter & Gamble Co., 18 Cal. App. 4th 644, 648, 22 Cal Rptr. 2d 419 (1993) in arguing that a misrepresentation is not material unless it induced plaintiffs to purchase the product. Mass Mutual distinguished Caro as follows: "nothing we said in Caro undermines the general rule permitting common reliance where material misstatements have been made to a class of plaintiffs. Rather, our holding in Caro merely stands for the self-evident proposition that such an inference will not arise where the record will not permit it." Mass Mutual at 1294. In Caro, plaintiffs alleged that orange juice was falsely advertised as fresh, when in fact it was from concentrate. However, "from concentrate" was printed on each juice box! Unlike in Caro, Ford has presented no information that any significant part of the class knew that the plastic water crossovers had cracking problems. Certainly, Ford did not stamp "Piece of Crap

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

Page 16

Manifold" on its cars.

Other courts have certified classes alleging similar consumer protection claims, finding a common inference of reliance. In Amato v. General Motors Corporation, 11 Ohio App. 3d 124, 463 N.E. 2d 625 (1982), the court certified a class alleging General Motors misrepresented its cars because the engine was not manufactured by the Oldsmobile Division; but rather, the Chevrolet Division. Relying on Vasquez v. Superior Court, 4 Cal. 3d 800, 814, 94 Cal. Rptr. 796 (1971), the court found that "proof of reliance may be sufficiently established by inference or presumption from circumstantial evidence to warrant submission to a jury without direct testimony from each member of the class. Id. at 127-128.

D. **Ford's Omission is Material.**

Plaintiffs can establish causation because Ford's omission is material. A "misrepresentation [or omission] is judged to be material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." Engalla v. Permanente Medical Group Inc.,15 Cal. 4th 951, 977, 64 Cal. Rptr. 2d 843 (1997) quoting Rest. 2d Torts § 538(2)(a). A *reasonable person* would have wanted to know that:

- the plastic crossover had a propensity to crack after the warranty period, but before 150,000 miles - leaving no choice but to bear the burden of this relatively costly repair;

- one of the lead Ford component engineers characterized the plastic intake manifold to other Ford employees as a "Piece of Crap;"

- the previous all-aluminum design didn't crack.

Mr. Fok knew the manifold in the Ford Mustang was plastic, and still chose to purchase the car. Ford's omission, however, is not that the manifold was plastic, but that the plastic water

---
REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

crossover has an identified cracking problem. Ms. Chamberlan also testified that she would not have purchased her Grand Marquis had she known about the cracking problems.

Ford claims that because "different people buy different cars for different reasons," it's impossible to generalize across the class the effect of knowledge of the propensity of the plastic water crossover to fail. Ford's attempt to set up a subjective standard of proof would defeat all CLRA claims. The standard requires determination of the effect the suppressed fact would have upon a *reasonable person* if known. Some class members may consider particular failure rates more material than others. But, regardless of the number of failures, if there is an identified problem, then the reasonable consumer would expect to be alerted.

## IV. MS. CHAMBERLAN AND MR. FOK ADEQUATELY REPRESENT THE CLASS AND THEIR CLAIMS ARE TYPICAL.

The representative plaintiffs' interests are co-extensive with those of the class, since each representative and each class member has been injured or threatened with injury in the same manner by Ford. That some class members may not have experienced a cracked manifold yet does not make the named plaintiffs' representation of the class inadequate. In Bassett v. Kia, supra, 212 F.R.D. 271, the court rejected Kia's argument that because the class representative was in a car accident as a result of the defective brakes at issue, her interests would be pitted against those of the class who were not in an accident. The court found that, "if anything, this experience would likely make Ms. Bassett an even more zealous advocate on behalf of the class which she seeks to represent given that she now has firsthand experience and knowledge of the consequences of brake failure." Id. at 280. Similarly, the named plaintiffs' firsthand experience of a cracked manifold has made them more zealous advocates on behalf of the class.

Mr. Fok's and Ms. Chamberlan's consumer protection claims are necessarily "typical" of

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

Page 18

the consumer protection claims of the entire class. The typicality requirement is satisfied where "the representative Plaintiffs, as well as the members of the proposed class, all have claims arising from the fraudulent scheme perpetrated by [the defendant]." In re Prudential Ins. Co. Am. Sales Practices Litig., 148 F.3d 283, 311 (3d Cir. 1998). "[W]here an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries so long as all the injuries are shown to result from the practice." General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157-159 (1982). The evidence concerning Ford's omissions is the same for named plaintiffs as it is for the class as a whole. The omissions affected everyone; plaintiffs' claims are based on a common course of deceptive conduct perpetrated by Ford upon everyone in the class.

Ford has failed to establish that any unique defenses relating to the named plaintiffs defeat typicality, a concern which arises only "when the defenses against the named representatives are likely to usurp a significant portion of the litigant's time and energy, and there is a danger that the absent class members will suffer if their representative is pre-occupied with defenses unique to it." In re CBC Companies, Inc., 181 F.R.D. 380, 385 (N.D. Ill. 1998).

Ford attempts to sidestep the issue of its common injurious conduct by shifting attention away from its deceptive practices to minor differences in the circumstances of individual class members. However, "typicality refers to the nature of the claim or defense of the class representative and not the specific facts from which it arose or to the relief sought. Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." Herbert B. Newberg & Alba Conte, 1 NEWBERG ON CLASS ACTIONS, § 3:15 at 335

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

Page 19

(4th Ed. 2002).

## V. THE STATUTE OF LIMITATIONS IS AN ISSUE TO BE RESOLVED ON A CLASS-WIDE BASIS.

Ford's omissions prevented the class member from knowing they had a claim against it under the CLRA. Thus, the "discovery rule" applies; the limitations period begins to run only when "all essential elements [of a claim] are present" and "plaintiff discovers or has reason to discover the cause of action." Glue-Fold, Inc. v. Slautterback Corp., 82 Cal. App. 4th 1018, 1029, 98 Cal. Rptr. 2d 661 (2002). "This has been interpreted under the discovery rule to be when plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence. Thus, the discovery rule reflects concern for the practical needs of plaintiffs. It avoids dismissing a suit on grounds of limitation when a plaintiff is blamelessly ignorant of his cause of action." April Enterprises, Inc. v. KTTV, 147 Cal. App. 3d 805, 826-827, 195 Cal. Rptr. 421 (1983) (citations and quotations omitted, emphasis added.)

While some class members may have experienced problems with the intake manifold, they certainly will not know what happened inside Ford's plants or corporate offices or the nature and scope of Ford's omissions. Ford's knowledge that the plastic water crossovers crack under normal conditions could not have been discovered by any outsider. For this reason, the statute does not begin to run when class members noticed physical manifestation of damage – it begins to run when (if ever) class members were in a position to discover each element of their consumer protection claim – and certainly the central element, deceptive conduct.

Regardless of which party will prevail on the merits of their "discovery rule" position; the central issue is whether the offer and defense of that proof make this case so unmanageable that

"a class action [is] less fair and efficient than some other method, such as . . . individual lawsuits." 2 NEWBERG ON CLASS ACTIONS, supra, § 4.32 at 269. "Given the fact that plaintiffs' claim is based on a nondisclosure, the objective determination of when the nondisclosure should have been discovered seems readily amenable to class treatment." Mass Mutual, supra, 97 Cal. App. 4th at 1295.

Mass Mutual rejected the argument that statute of limitations determinations prevented class certification in a CLRA omissions case. Nor should such issues prevent certification here. Were Ford's nondisclosures "discoverable" or not? This is a single common issue for the entire class.

Ford will have the right to try before the court any individualized issue it may have on statute of limitations. For example, Ford will have the opportunity to show that a particular class member had access to facts about Ford's nondisclosures. It will have the burden of proof -- statute of limitations is an affirmative defense -- but its right to try to meet that burden is preserved.

## VI. DAMAGES CAN BE ESTABLISHED ON A CLASS-WIDE BASIS.

Contrary to Ford's assertions, it is entirely appropriate to establish an aggregate damages award from which individual class members can recover. "Due process does not prevent calculation of damages on a classwide basis. The [California] Supreme Court has assumed thus of such a method." Bell v. Farmers Insurance Exchange, 2004 Cal. App. LEXIS 156, 71, fn. 19, (Feb. 9, 2004). "When monetary relief is sought, and when data from each class member are required to assess individual recovery entitlement, it is still possible in most cases for the class representatives to develop and prove common guidelines or formulae that will apply to determine

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

the measure of recovery for each individual proof of claim . . . [I]t is feasible and reasonable to prove aggregate monetary relief for the class from an examination of the defendant's records, or by use of the common formula where measurement of damages multiplied by the number of transactions, units, or class members involved, or by reasonable approximation with proper adherence to recognized evidentiary standards." 2 NEWBERG ON CLASS ACTIONS, supra, § 10:1 at 476. Furthermore, "aggregate proof of the defendant's monetary liability promotes the deterrence objectives of the substantive laws underlying the class actions and promotes the economic and judicial access for small claims objectives of Rule 23." Here, permitting a standardized formula based on cost of repair/replacement as aggregate proof of damages will promote the underlying objectives of the CLRA to protect consumers against deceptive practices.

"It is well established that the necessity for an individual determination of damages does not weigh against class certification." Bell v. Farmers Insurance Exchange, supra, 2004 Cal. App. LEXIS at 59; see also Clothesrigger Inc. v. GTE Corp., 191 Cal. App. 3d 605, 617, 236 Cal. Rptr. 605 (1987) ("the necessity for class members to prove their own damage does not mean individual fact questions predominate.") In almost every class action, factual determinations of damages must be made, which necessarily entails the possibility that some class members will fail to prove damages. See B.W.I. Custom Kitchens v. Owens-Illinois Inc., 191 Cal. App. 3d 1341, 1354, 235 Cal. Rptr. 228 (1987). Ford cites no authority that a class should be certified only under circumstances promising universal recovery within the class. Simply because some class members have not had to replace their intake manifold yet, does not preclude class treatment.

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. C 03 2628 CW

1  Once plaintiffs establish Ford's liability and aggregate damages to the class, individual class members should be afforded an opportunity to collect their individual shares by proving their particular damages. "[T]he allocation of that aggregate sum [of the judgment] among class members is an internal class accounting question that does not directly concern the defendant." 2 NEWBERG ON CLASS ACTIONS, supra, § 4:26 at 233. The Court, in consultation with the parties, can devise a claims procedure for class establish their entitlement to, and amount of individual damages.

## VII. CONCLUSION.

For the reasons stated above, plaintiffs respectfully request the Court to certify an opt-out class under Rule 23(b)(3).

Dated: March 1, 2004

LEVY, RAM & OLSON LLP

By: /s/ Michael F. Ram
Michael F. Ram
Heather M. Mills

CUNNINGHAM, BOUNDS, YANCE,
    CROWDER & BROWN
Richard T. Dorman, Esq.
Edwin Lamberth
P.O. Box 66705
Mobile, Alabama 36660
Telephone:    (251) 471-6191
Facsimile:    (251) 471-6192