# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is entered into this 16th day of June 2005, by and between the Ford Motor Company ("Ford") and the Plaintiffs in (a) *Chamberlan v. Ford Motor Co.*, Case No. C 03-2628 CW in the United States District Court for the Northern District of California (the "*Chamberlan* action"), (b) *McGettigan v. Ford Motor Co.*, Case No. CV-2002-3400-JRL in the Circuit Court of Mobile County, Alabama, (c) *Rhea v. Ford Motor Co.*, CJ-05-55, in the District Court for Adair County, State of Oklahoma (collectively, "Related Actions").

WHEREAS, Ford is a corporation organized under the laws of the State of Delaware and is engaged in the business of, among other things, manufacturing motor vehicles;

WHEREAS, in the Related Actions, Plaintiffs allege that Ford knew, but concealed from purchasers of Class Vehicles (as defined below) information regarding the durability of its composite air intake manifolds.  Plaintiffs also allege that if the intake manifold fails, the vehicle may leak coolant, which may cause the vehicle to overheat;

WHEREAS, Ford denies each and every one of these allegations, denies any wrongdoing of any kind, and further believes that the requirements for a class action are not met in this litigation and that a class action should not be certified or maintained in the Related Actions (other than for purposes of settlement as provided in this Agreement);

WHEREAS, the parties have vigorously litigated their respective positions in connection with all aspects of this litigation, including, but not limited to the following:

- Litigating motions to dismiss the causes of action Plaintiffs included in the original and amended complaints filed in the *Chamberlan* action and the complaint in *McGettigan*;

- Litigating the issues raised in connection with Plaintiffs' motion for class certification in the *Chamberlan* and *McGettigan* actions, including a Rule 23(f) petition in *Chamberlan*;

- Litigating the issues raised in connection with Ford's motions to decertify the *Chamberlan* action;

- Litigating the issues raised in Ford's motion for summary judgment and/or adjudication in the *Chamberlan* action;

- Litigating the issues raised in Ford's motion for judgment on the pleadings in the *Chamberlan* action;

- Litigating the issues raised by motions *in limine* filed by both parties in advance of trial of the *Chamberlan* action; and

- Conducting 34 depositions of percipient witnesses in *Chamberlan* or *McGettigan*, as well as 9 experts whom the parties designated as witnesses for trial of the *Chamberlan* action;

WHEREAS, as a result of two years of litigation the parties are thoroughly familiar with the factual and legal issues presented by their respective claims and defenses and

recognize the uncertainties as to the ultimate outcome in the Related Actions and the likelihood that any final result would require years of further complex litigation and substantial expense;

WHEREAS, Class Counsel believe that the claims Plaintiffs have asserted have merit; however, Class Counsel also recognize that (a) it would be necessary to continue prosecuting the *Chamberlan* litigation against Ford through a trial and, even if successful there, through the appeals Ford has indicated it would take, including, but not limited to, appeals from the class-certification order and any potential adverse jury verdict in the trial (as well as any equitable decision rendered by the Court), all of which would delay substantially class members' receipt of benefits, if any were obtained; (b) it would then be necessary to litigate the class and merits issues in the Related Actions that cover the United States other than California, and (c) there are significant risks in this litigation, whose outcome is uncertain; therefore, balancing the costs, risks, and delay of continued litigation against the benefits of the settlement to the Settlement Class, Class Counsel have concluded that settlement as provided in this Agreement will be in the best interests of the Settlement Class as defined in this Agreement;

WHEREAS, Ford does not believe Plaintiffs' claims are meritorious, but it desires to avoid the uncertainty and expense of further litigation;

WHEREAS, this Agreement was entered into after extensive arm's-length discussions and negotiations between Class Counsel and counsel for Ford, including formal and informal mediation before the Hon. Coleman Fannin (ret.);

WHEREAS, counsel for Ford and Class Counsel agree that the settlement contemplated by this Agreement (the "Settlement") is a fundamentally fair, adequate, and reasonable resolution of the Related Actions;

3

WHEREAS, the Parties desire to compromise and settle all issues and claims that have been brought, or that could have been brought, against Ford in the Related Actions;

WHEREAS, the Parties desire and intend to seek court approval of the Settlement of the Related Actions as set forth in this Agreement and, upon such judicial approval, the Parties intend also to seek a Final Order and Judgment from the Court dismissing the claims of all Plaintiffs and Settlement Class Members with prejudice;

NOW, THEREFORE, it is agreed that in consideration of the premises and mutual covenants set forth in this Agreement and the entry by the Court of a Final Order and Judgment approving the terms and conditions of the Settlement as set forth in this Agreement, and providing for dismissal with prejudice of the claims asserted in the Related Actions by Plaintiffs and Settlement Class Members, the Related Actions shall be settled and compromised under the terms and conditions contained herein.

## A.   DEFINITIONS

Whenever the following capitalized terms are used in this Agreement and in the attached Exhibits (in addition to any definitions elsewhere in this Agreement), they shall have the following meanings:

1.   "Class Counsel" refers to Levy, Ram & Olson LLP and Cunningham, Bounds, Yance, Crowder & Brown LLC and the predecessors and/or successors of each of these law firms.

2.    "Class Notice" refers to the notice to the Settlement Class of the pendency of this litigation and of this Settlement, in the manner described in Paragraphs 19 and 20 of this Agreement.

3.    "Class Vehicles" means the 1996 through 2002 model-year Ford, Lincoln, and Mercury vehicles equipped with 4.6-liter, 2-valve V-8 engines having an all-composite air intake manifold as original equipment, other than vehicles which have already received an extended warranty pursuant to a Ford Owner Notification Program action:   1996-2001 Ford Crown Victorias, 1996-2001 Mercury Grand Marquis, 1996-2001 Lincoln Town Cars, 1997 Mercury Cougars and Ford Thunderbirds and Mustangs manufactured after June 24, 1997, certain 1998-2001 Ford Mustangs, and certain 2002 Ford Explorers that were equipped with the 4.6-liter, 2-valve V-8 engine.

4.    "Court" means the United States District Court for the Northern District of California.

5.    "Effective Date of Settlement" means the date on which all appellate rights with respect to the Final Order and Judgment in the *Chamberlan* action, described in Paragraph 24 below, have expired or have been exhausted in such a manner as to affirm the Final Order and Judgment and all other Related Actions have been dismissed with prejudice.

6.    "Ford Related Parties" means Ford Motor Company, its present or former officers, directors, employees, agents, attorneys, heirs, executors, administrators, successors, reorganized successors, spin-offs, assignees, subsidiaries, affiliates, parents, divisions, and predecessors, and its authorized dealers.

7.     "Ford all-composite intake manifolds" means the air intake manifolds manufactured by or on behalf of Ford that were made entirely from nylon-composite material, including the coolant crossover passage.

8.     "Parties" means Ford, Plaintiffs, and Settlement Class Members, as each of those terms is defined in this Agreement.

9.     "Plaintiffs" means and includes all named plaintiffs and class representatives in the Related Actions.

10.     "Released Claims" shall collectively mean all claims (including demands, rights, liabilities, and causes of action) relating to Ford all-composite intake manifolds of every nature and description that were or could have been asserted in any of the Related Actions by any Plaintiff or Settlement Class Member or any of their predecessors, successors, representatives, parent companies, subsidiaries, affiliates, heirs, executors, administrators, attorneys, successors, and assignees. Released Claims include all such claims against Ford and Ford Related Parties, whether known or unknown (even if concealed or hidden), matured or unmatured, liquidated or unliquidated, at law or in equity, before any local, state or federal court, tribunal, administrative agency or commission, that were available under any federal, state or local law or administrative rule or regulation, that actually or potentially arose out of, was based upon, or related to the subject matter of the Related Actions relating to Ford's all-composite intake manifolds. This includes any and all claims arising out of, based upon, or related to the Settlement or resolution of the Related Actions. Notwithstanding the language in this paragraph, "Released Claims" does *not* include any claims of personal injury or wrongful death, regardless of whether the claim is brought in an action or matter making allegations pertaining to an all-

composite intake manifold or its effects, and regardless of whether such claims arose before or after the Settlement.

11.     "Settlement Administrator" refers to Rosenthal & Company, 300 Bel Marin Keys Boulevard, Suite 200, Novato, CA 94949, who will have the following responsibilities: (a) administration of Class Notice, including both Mailed Notice and Summary Notice as provided in this Agreement; (b) administration of the Settlement website as provided in this Agreement; (c) administration of the Settlement toll-free number as provided in this Agreement; and (d) receiving and distributing Requests for Exclusion and Objections as provided in this Agreement; and (e) posting material agreed upon by the Parties on the website for which the Settlement Administrator is responsible, as provided in this Agreement.

12.     "Settlement Class" refers to the Settlement Class as defined in Paragraph 17 of this Agreement, below.

13.     "Settlement Class Members" means all persons or entities who fit the Settlement Class definition specified in Paragraph 17, below, who have not validly and timely requested exclusion from the Settlement Class, as provided in this Agreement.

**B.     TERMS OF SETTLEMENT AGREEMENT AND RELEASE**

14.     This Agreement is for settlement purposes only.  Neither this Agreement nor any action taken pursuant to it shall constitute, or be construed as, any admission of the validity of any claim or any factual allegation that was or could have been made by Plaintiffs and Settlement Class Members in the Related Actions, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of Ford.  This Agreement shall not be offered or be admissible

in evidence by or against Ford or cited or referred to in any other action or proceeding, except (a) in any action or proceeding brought by or against the Parties to enforce or otherwise implement the terms of this Agreement, or (b) in any action involving any Plaintiffs or Settlement Class Members to support a defense of issue preclusion, claim preclusion, or similar defense.

15.    Subject to court approval, it is agreed by the Parties that the *Chamberlan* action will be deemed, for the purpose of settlement only, to be certified as a class action in accordance with the Settlement Class definition in Paragraph 17 of this Agreement, that the *Chamberlan* action should be settled on that basis, and that all the other Related Actions should be dismissed by stipulation after all rights to appeal the Final Order and Judgment in the *Chamberlan* action have expired or have been exhausted in such a manner as to affirm that Final Order and Judgment.  Neither this Agreement nor any certification pursuant to this Paragraph shall constitute, in this or any other proceeding, an admission by Ford or a finding or evidence that any requirement for class certification is satisfied in the Related Actions, or any other litigation, except for the limited purposes related to this Agreement.  If this Agreement is terminated pursuant to its terms, any order certifying the Settlement Class shall be vacated, and the Related Actions shall proceed as though the Settlement Class had never been certified, without prejudice to the Parties' rights to either request or oppose class certification.  Any effective order certifying the Settlement Class will supersede all prior certification orders in any of the Related Actions.  However, if this Agreement is not approved in full and either Ford or Class Counsel elect to terminate this Agreement pursuant to its terms, any and all orders vacated or modified as a result of this Agreement shall be reinstated, and any judgment or order entered by the Court in accordance with the terms of this Agreement, whether relating to class certification or not, shall be treated as vacated *nunc pro tunc*.

8

16.     This Agreement is made with the understanding that (a) under applicable law, a class may be certified for settlement purposes only (*i.e.*, without needing to satisfy fully the standard required for certification of the matter for litigation purposes), (b) Ford contests and in no way agrees that the proposed class in this case is suitable for class treatment under the law of any jurisdiction, other than for purposes of settlement as provided in this Agreement, and (c) notwithstanding any other provisions of this Agreement, all actions and proceedings pursuant to this Agreement shall be consistent with the foregoing.

17.     The Settlement Class shall be defined as follows:

All persons residing in the United States who currently own or lease, or previously owned or leased, a 1996 through 2002 model-year Ford, Lincoln, or Mercury vehicle equipped with a 4.6-liter, 2-valve V-8 engine having an all-composite air intake manifold as original equipment, other than vehicles which have already received an extended warranty pursuant to a Ford Owner Notification Program action. Specifically, class vehicles include those 1996-2001 Mercury Grand Marquis, 1996-2001 Ford Crown Victorias, 1996-2001 Lincoln Town Cars, 1997 Mercury Cougars and Ford Thunderbirds and Mustangs manufactured after June 24, 1997, 1998-2001 Ford Mustangs, and certain 2002 Ford Explorers that were equipped with the 4.6-liter, 2-valve V-8 engine.

*Excluded from the class are the following*:

a.  Ford, its subsidiaries and affiliates, officers, and directors;

b.  the judge to whom this case is assigned and any member of the judge's immediate family;

c.  persons who have settled with and released Ford from individual claims substantially similar to those alleged in the Related Actions; and

d.  persons who have previously timely and validly requested exclusion from the class certified in the *Chamberlan* action and who do not timely and validly opt back in to the Settlement.

18.     Class Counsel and counsel for Ford shall present this Agreement to the Court as soon as is practicable after the execution of this Agreement, along with a Joint Motion for Preliminary Approval of the Agreement, Certification of the Settlement Class, Appointing Class Counsel, Setting a Hearing on Final Approval of the Agreement, and Directing Notice to the Class, in a form agreeable to both parties ("Joint Motion").   The Parties shall take all appropriate steps to obtain an order granting the Joint Motion, in the form attached as Exhibit 1 ("Notice Order").   The Joint Motion shall request that the Notice Order include a provision staying and enjoining further all putative class action litigation in other cases, including the other Related Actions, related to the composite intake manifolds that are the subject of the Related Actions.

19.     Ford (through the Settlement Administrator) shall disseminate Notice as directed in the Notice Order as follows:

a.     Summary Notice of Pendency of Class Action, Proposed Settlement and Hearing ("Summary Notice") (in substantially the form set forth in Exhibit 2) shall be published one time in Parade Magazine and one time in USA Weekend.  The Summary Notice shall be published by way of ads that are purchased by Ford at advertising rates available to Ford, with no commission or other payment concerning the ads to be made to any other party.

b.     Mailed Notice of Pendency of Class Action, Proposed Settlement and Hearing ("Mailed Notice") (in substantially the form set forth in Exhibit 3) shall be disseminated by first-class mail to Settlement Class Members who are current owners of Class Vehicles.  The mailing list for this notice shall be compiled by Ford in the same manner that it compiles mailing lists for voluntary owner notification programs conducted in the ordinary

10

course of Ford's business, provided, however, that for the current-owner Settlement Class Members residing in California, the mailing list used for the April 2005 notice in *Chamberlan* shall be used again (with the exception of the 1997 Mercury Cougars and Ford Mustangs and Thunderbirds). If any Mailed Notice is returned along with an advisory identifying a forwarding address, the Settlement Administrator shall cause the Mailed Notice to be placed in first-class mail, postage prepaid, directed to the forwarding address, if available. Ford shall have no obligation to locate potential Settlement Class Members or to mail additional copies of the Mailed Notice.

   c. Contents of the Mailed Notice shall also be made available via the Internet ("Internet Notice") on a website maintained by the Settlement Administrator. The Internet Notice shall remain posted on that website through January 1, 2009. The website created for the Settlement will remain active and accessible through January 1, 2009, and it will be updated with information to be mutually agreed by the Parties until six months after the Effective Date of Settlement.

   d. Ford will pay all costs for all forms of notice to Settlement Class Members, including the costs of the physical preparation of individual notice (including duplication and printing) and mailing expenses, costs relating to the publication of notices (including the Summary Notice and the Internet Notice), and all costs for the Settlement Administrator retained to provide services as provided in this Agreement.

   e. As set forth on Exhibits 2 and 3, the Mailed Notice and the Summary Notice will include a website location for Settlement Class Members to access, a toll-free telephone number for Settlement Class Members to call, and an address of Plaintiffs'

counsel to which Settlement Class Members may write for information concerning the Settlement and to receive Reimbursement Claim Forms. The following information will be available on the website: (1) a copy of the Mailed Notice, (2) a statement, agreed to by the parties, concerning whether the settlement has been approved and its terms implemented, (3) downloadable copies of the Reimbursement Claim Form, and (4) the address of Plaintiffs' counsel to which Settlement Class Members may write for additional information. The toll-free telephone number will provide pre-recorded information, agreed to by the parties, on the following: (1) a statement on whether the settlement has been approved and its terms implemented, (2) a reference to the web site for further information, and (3) the address of Plaintiffs' counsel to which Settlement Class Members may write for additional information. The language on the website and of the recording on the telephone number will be agreed upon by the parties. Ford's obligation to maintain, through the Settlement Administrator, the toll-free telephone number and post office box (described in Paragraph 34) will continue until the time period for reimbursements has expired. As set forth on Exhibits 2 and 3, the Mailed Notice and the Summary Notice will inform Settlement Class Members of their rights under the Settlement, including their right to exclude themselves from the Settlement.

20. The Settlement Administrator shall begin dissemination of Mailed Notice described in Paragraph 19(b) on a rolling basis as soon as reasonably possible after the Notice Order, and shall complete Mailed Notice and publication of Summary Notice as soon as reasonably possible thereafter. Deadlines provided in this Agreement that are to appear in the Mailed Notice and the Summary Notice and that are set with reference to the completion of Notice pursuant to this Agreement shall be based on the Settlement Administrator's best estimate of the date of completion of the dissemination of Mailed Notice at the time the Mailed Notice is

printed for distribution. The Internet Notice, Reimbursement Claim Form, and other information related to the Settlement as agreed by the Parties shall be made available on the website maintained by the Settlement Administrator at the time the Settlement Administrator begins to mail notice, or within such other date as the Settlement Administrator approves as reasonable, but not later than the date of completion of Mailed Notice. Class counsel and counsel to Ford will request the Court to schedule a Fairness Hearing to obtain final approval of the settlement within sixty (60) days after the completion of Notice pursuant to this Agreement.

21. Anyone who wishes to be excluded from the Settlement Class must submit a written Request for Exclusion by sending it to the Settlement Administrator at the United States Post Office Box described in Paragraph 34 by U.S. mail, first class and postage paid. Any Request for Exclusion must be postmarked on or before the deadline specified in the Summary Notice and the Mailed Notice, which shall be thirty (30) days after the completion of Notice pursuant to Paragraphs 19(a) and 19(b).

a. Anyone submitting a Request for Exclusion must (i) set forth his/her full name and current address, (ii) identify the model year and model of his/her Class Vehicle(s) and the approximate date of purchase or lease, (iii) whether the class member requesting exclusion still owns the class vehicle, and (iv) specifically state his/her desire to be excluded from the Settlement Class. Any current owner or lessee of a Class Vehicle who submits a Request for Exclusion must also provide the Vehicle Identification Number of the vehicle with that Request.

b. Anyone who falls within the Settlement Class definition and does not submit a Request for Exclusion in complete accordance with the deadlines and other

specifications set forth in both the Summary Notice and the Mailed Notice shall become a Settlement Class Member and be bound by all proceedings, orders, and judgments of this Court pertaining to the Settlement Class pursuant to this Agreement.

22.   Any Settlement Class Member who wishes to object to the proposed Settlement must send a written objection to the Settlement ("Objection") to the Settlement Administrator at the United States Post Office Box described in Paragraph 34 by U.S. mail, first class and postage paid.  Any objection to the Settlement must be postmarked on or before the deadline specified in the Summary Notice and the Mailed Notice, which shall be thirty (30) days after the completion of Notice pursuant to Paragraphs 19(a) and 19(b).  Only Settlement Class Members may object to the Settlement.

a.   In his/her Objection, an objecting Settlement Class Member must (i) set forth his/her full name, current address, and telephone number, (ii) identify the model and model year of his/her Class Vehicle(s), as well as the Vehicle Identification Number of his/her Class Vehicle(s) if a current owner or lessee, (iii) state whether he/she purchased the Class Vehicle(s) when it was new and whether he/she currently owns the Class Vehicle(s), (iv) set forth a statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position, and (v) provide copies of any other documents that the objector wishes to submit in support of his/her position.

b.   All Objections must also be served on counsel for Plaintiffs, Michael Ram and Heather Mills, Levy, Ram & Olson LLP, 639 Front Street, Fourth Floor, San Francisco, California   94111-1913; and on counsel for Ford, Michael Tubach and Randall

Edwards, O'Melveny & Myers LLP, 275 Battery Street, 26th Floor, San Francisco, California 94111-3305.

    c.  Any Settlement Class Member who does not submit an Objection in complete accordance with this Paragraph and the provisions specified in the Mailed Notice shall not be permitted to object to the Settlement.

    d.  Subject to approval of the Court, any objecting Settlement Class Member may appear at the hearing on the fairness of the proposed Settlement (the "Fairness Hearing") held by the Court, in person or by counsel to show cause why the proposed Settlement should not be approved as fair, adequate and reasonable, or object to any petitions for attorney fees and reimbursement of litigation costs and expenses.   The objecting Settlement Class Member must file with the Clerk of the Court and serve upon counsel designated in Paragraph 22(b) of this Agreement, a notice of intention to appear at the Fairness Hearing ("Notice of Intention to Appear") by the deadline specified in the Summary Notice and the Mailed Notice, which shall be thirty (30) days after the completion of Notice pursuant to this Agreement.  The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member (or his/her counsel) will present to the Court in connection with the Fairness Hearing.  Any Settlement Class Member who does not provide a Notice of Intention to Appear in complete accordance with the deadlines and other specifications set forth in the Summary Notice and Mailed Notice, and who has not filed an Objection in complete accordance with the deadlines and other specifications set forth in this Paragraph and the Mailed Notice, will be barred from speaking or otherwise presenting any views at any Fairness Hearing.

23.     The Settlement Administrator shall, upon request, provide copies to Ford and to Class Counsel of all Requests for Exclusion and all written communications relating to the Settlement that the Settlement Administrator receives from Settlement Class Members or others, including any Objections received that have not been served on the Parties.  To the extent that Class Counsel or Ford receives Exclusions or Objections that have not been transmitted to the Settlement Administrator, they shall transmit those communications to the Settlement Administrator, who shall provide the other party with a copy of those communications.

24.     Following final approval by this Court of this Agreement and the Settlement, the Parties will request entry of Final Order and Judgment which shall be substantially in the form attached as Exhibit 4.

25.     Promptly after the date on which all appellate rights with respect to the Final Order and Judgment in the *Chamberlan* action have expired or have been exhausted in such manner as to affirm the Final Order or Judgment, Plaintiffs and Settlement Class Members will dismiss with prejudice all of the other Related Actions.  The dismissal of all of the Related Actions is a condition precedent to Ford's obligation to provide the consideration specified in Paragraph 28.

26.     If (a) the preliminary approval of the Agreement and Settlement or the Final Judgment and Order is not obtained from the Court in form and in substance as contemplated by this Agreement and its associated proposed orders; (b) the final approval of the Agreement and the Settlement is reversed or modified on appeal; or (c) the Final Order and Judgment described in Paragraph 24 is reversed or modified on appeal; and either Ford or Plaintiffs so elect, this Agreement shall be null and void, having no further force and effect with

16

respect to any Party in the Related Actions.  In that event, it may not be offered in evidence or used in any litigation (including the Related Actions) for any purpose, including the existence, certification, or maintenance of any purported class.  The canceling and terminating party may make such election only by furnishing written notice of an intent not to proceed with the terms and conditions of this Agreement to the other party within fifteen (15) calendar days of the event forming the basis for the election to terminate.  In the event of such an election, this Agreement and all negotiations, proceedings, documents, and related statements shall be without prejudice to the Parties, shall not be deemed an admission by any Party of any matter, and shall not be used for any purpose.  All Parties to any of the Related Actions shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court.  If the Agreement is terminated, any and all orders entered by the Court pursuant to the provisions of this Agreement shall be vacated *nunc pro tunc*.  Provided, however, that no modification by any court of any award of attorney fees and/or expenses (as long as in compliance with Paragraph 28(c)) shall be deemed to trigger this option to terminate and cancel the Agreement.

28. In the event this Agreement is not approved by the Court, is terminated, or fails to become effective in accordance with the terms of this Agreement, all orders in existence as of the date on which this Settlement was executed shall become operative and fully effective, as if proceedings relating to this Settlement had not occurred.  In such event, the Parties reserve all rights to object to or otherwise challenge all such pre-existing orders.

28. In consideration of dismissal of the Related Actions with prejudice under the terms of this Agreement, Ford agrees as follows:

a.      Ford agrees to provide Settlement Class Members a retroactive extended vehicle warranty to cover fatigue cracks in the all-composite intake manifold on Class Vehicles, resulting in coolant leaks at the crossover coolant passage.  The retroactive extended warranty shall become effective upon the Effective Date of this Agreement.  The coverage for this extended warranty is for seven (7) years from the warranty start date (*i.e.*, the initial vehicle sale), without a mileage limitation.  Within the covered period, if Settlement Class Members experience this condition, Ford will pay for a Ford, Lincoln, or Mercury dealer to verify the condition and replace, at no cost to the vehicle owner, any such all-composite intake manifold. All other conditions and provisions in Ford's limited written vehicle warranty apply.  If the condition described above is exhibited, the Settlement Class Member must bring their Class Vehicle to a Ford, Lincoln, or Mercury dealer for inspection and repair.  Costs incurred for emergency repairs when a Ford dealer is not available, however, will be reimbursed upon application to a dealer with an original supporting receipt.  The extended warranty coverage mirrors the coverage provided to owners of 1996 and 1997 Ford Mustangs, Ford Thunderbirds, and Mercury Cougars pursuant to ONP 97M91.  It is the understanding and intention of the Parties that, except as otherwise specifically noted in this Agreement, the extended warranty provided by Ford pursuant to this paragraph will be administered and implemented in accordance with Ford's Warranty & Policy Manual in the same fashion as Ford implements and administers voluntary Owner Notification Programs conducted in the ordinary course of Ford's business. Accordingly, any disputes regarding the dealer's actions or decisions related to the extended warranty shall be handled in accordance with Ford's normal procedures for disputes related to warranty coverage, including the ultimate right of a Settlement Class Member to seek relief in a court.

b.      As part of the retroactive extended warranty program, and in accordance with provisions of Ford's Warranty & Policy Manual governing Owner Notification Programs conducted in the ordinary course of Ford's business, upon the Effective Date Ford agrees to pay for its dealers to reimburse Settlement Class Members for the actual amounts paid by them before the Effective Date to have the all-composite intake manifold replaced as a result of fatigue cracks leading to coolant leaks at the crossover coolant passage.  Settlement Class Members must give their original receipts to the dealer to obtain a reimbursement, except as provided in the next paragraph.  If the Settlement Class Member submits an original receipt, he or she does not have to own the vehicle at the time the reimbursement claim is made.  As provided in Ford's Warranty & Policy Manual, covered costs include the costs to replace the intake manifold, as well as any associated damage to the remainder of the vehicle that was attributable to a failure of the intake manifold and could not have been avoided by reasonable care of the Settlement Class Member.

If the Settlement Class Member does not have his or her original receipts, he or she may present a photocopy or duplicate receipt obtained from the business that performed the work.  In addition, if his or her vehicle is still within the 7-year warranty period, then the Settlement Class Member may bring his or her vehicle to a Ford, Lincoln, or Mercury dealer for inspection; the Settlement Class Member will be eligible for reimbursement of $735.00 if the dealer determines that the vehicle had an intake manifold replacement and the Settlement Class Member certifies that he or she actually paid for (and was not reimbursed by anyone for) an intake manifold replacement because the manifold had a fatigue crack in the coolant crossover passage that resulted in leaking coolant.  Once Ford has reimbursed a Settlement Class Member for a prior intake manifold repair as to a given vehicle, an entry will be

19

made in Ford's warranty system preventing any additional reimbursements as to that vehicle, unless the Settlement Class Member presents proof as described above showing that he or she paid to replace more than one intake manifold and would be entitled to reimbursement or replacement in the same fashion as under a voluntary Owner Notification Programs conducted in the ordinary course of Ford's business.

As in any Owner Notification Program conducted in the ordinary course of business pursuant to the provisions of Ford's Warranty & Policy Manual, Ford and its dealers reserve the right to deny claims for reimbursement determined in good faith to be fraudulent.   Any disputes regarding the dealer's actions or decisions related to the extended warranty shall be handled in accordance with Ford's normal procedures for disputes related to warranty coverage, including the ultimate right of a Settlement Class Member to seek relief in a court.  It is the understanding and intention of the parties that the rights of any class member denied reimbursement will mirror the rights of a similarly situated owner of a 1996 or 1997 Mustang, Thunderbird, or Cougar denied reimbursement under comparable circumstances pursuant to ONP 97M91.

No claims for reimbursement, except for emergency repairs under circumstances where a Ford dealer is not available, will be accepted for reimbursement of costs more than ninety (90) days after the Effective Date of Settlement.   All rights for any reimbursement of costs incurred thereafter will be governed by procedures applicable to Ford's established warranty program.  Under that program, costs incurred for emergency repairs when a Ford dealer is not available are reimbursed upon application to a dealer with an original supporting receipt.   All Settlement Class Members who fail to timely submit valid reimbursement claims within the ninety (90) day period cannot obtain reimbursement payments

20

pursuant to this Agreement but will in all other respects be subject to and bound by the provisions and releases of this Agreement and the Final Judgment and Order entered by the Court.

        c.     Ford agrees to pay to Class Counsel for their attorney fees, an amount awarded by the Court no greater than $4.5 million, which includes any award for attorney fees in connection with securing Court approval of the Agreement. Ford also agrees to pay to Class Counsel reasonable actual expenses previously incurred in connection with the litigation of the Related Actions. Ford does not agree to pay for additional expenses incurred by Class Counsel after the date this Agreement is finally approved by the Court. Class Counsel agree not to seek or accept an amount of fees in excess of $4.5 million, plus reasonable actual costs previously incurred. Ford will not object to an award of Class Counsel's attorney fees and costs consistent with this paragraph. In no event shall Ford be obligated to pay Class Counsel, Plaintiff, or Settlement Class Members, or other counsel any attorney fees or costs in an amount greater than the amounts specified in this Paragraph for activity relating to the allegations that form, or could have formed, the basis of the Related Actions. Ford shall deliver to Class Counsel payment of the award of Class Counsel's fees and costs within fifteen (15) days of the Effective Date of Settlement.

        d.     The Parties agree that Ford is in no way liable for any taxes Class Counsel, Plaintiffs, Settlement Class Members, or others may be required to pay as a result of the receipt of settlement benefits. The Parties also agree that neither Class Counsel, nor Plaintiffs,

nor Settlement Class Members are in any way liable for any taxes Ford may be required to pay as a result of the payments under or the administration of this Agreement.

29.     If in excess of five percent (5%) persons who are within the Settlement Class definition elect to be excluded from the Settlement Class and submit a valid Request for Exclusion as set forth in Paragraph 21, Ford shall have the right to withdraw from the settlement, upon written notice to Class Counsel within fifteen (15) calendar days after the Exclusion deadline set forth in Paragraph 21.

30.     Unless otherwise ordered by the Court, in the event this Agreement shall terminate, or be canceled, or shall not become effective for any reason, within five (5) business days after written notification of such event is sent by Ford to Class Counsel, Ford shall pay all administrative expenses then due and owing, or incurred and unpaid, to the Settlement Administrator; and place notice of such cancellation or termination on the Internet website created for this Settlement, in language to be agreed upon by the parties.

31.     Subject to other provisions of this Agreement, the parties to this Agreement agree to cooperate fully, to execute any and all supplementary documents reasonably necessary to effectuate the terms of this Agreement, and to take all additional actions and reasonable steps which may be necessary or appropriate to obtain judicial approval of this Agreement and to give this Agreement full force and effect.   The Parties agree that the Settlement embodied in this Agreement is fair, adequate, and reasonable as to all Parties.

32.     Upon the Effective Date of Settlement, Plaintiffs and Settlement Class Members, and each of them, forever release, discharge, and covenant not to sue Ford and the Ford Related Parties regarding any of the Released Claims, as that term is defined at Paragraph

10 of this Agreement.  This release shall be understood to include all such claims which they do not know of or suspect to exist in their favor at the time of this release and that, if known by them, might have affected their settlement and release of Ford, or might have affected their decision not to object to this Agreement.  With respect to all Released Claims, and without assuming that the Released Claims are a general release, Plaintiffs and Settlement Class Members expressly waive and relinquish to the fullest extent permitted by law, (a) the rights conferred by section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor.

and (b) any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, which is comparable to section 1542 of the California Civil Code.  Plaintiffs and/or Settlement Class Members recognize that even if they may later discover facts in addition to or different from those which they now know or believe to be true, they nonetheless agree that upon the entry of the Final Judgment and Order, Plaintiffs and Settlement Class Members fully, finally, and forever settle and release any and all of the Released Claims.  The Parties acknowledge that the foregoing waiver was bargained for and is a material element of the Agreement  The Parties also acknowledge that the foregoing waiver shall be null and void if (a) the approval of the Agreement and the Settlement is reversed or modified on appeal, or (b) the Final Order and Judgment is reversed or modified on appeal.

33.    No Settlement Class Member shall have any claim against the Plaintiffs, Class Counsel, the Settlement Administrator, or any agent designated by Class Counsel, based on the payments made or warranty service provided and made substantially in accordance with this Agreement or with further Orders of the Court or any appellate court.

34.     The Settlement Administrator shall be responsible for obtaining a United States Post Office Box for the purpose of receiving Requests for Exclusion and Objections that are submitted in accordance with the procedures set forth in Paragraph 21 and 22.   The Settlement Administrator shall also be responsible for promptly giving notice of the receipt of any such Requests for Exclusion or Objections by delivering complete copies to counsel for the Parties within five (5) calendar days after receipt of a request by Ford or by Class Counsel for such information.   Additionally, the Settlement Administrator shall be responsible for filing all timely and valid Objections with the Clerk of Court within five (5) calendar days of receipt. Should either of the Parties receive any of the foregoing materials directly from Settlement Class Members, they shall promptly transmit those materials to the Settlement Administrator for appropriate action in accordance with the provisions of this Paragraph.

35.     This Agreement and its attachments shall constitute the entire Agreement of the Parties and shall not be subject to any change, modification, amendment, or addition without the express written consent of counsel on behalf of all Parties to the Agreement.   This agreement supersedes and replaces all prior negotiations and proposed agreements, written or oral.

36.     All Exhibits are incorporated into this Agreement by reference.

37.     This Agreement shall be binding upon and inure to the benefit of the Parties and their representatives, heirs, successors, and assignees.

38.     In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if Ford and

Class Counsel, on behalf of Plaintiffs and Settlement Class Members, mutually elect to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.

39.     The undersigned Class Counsel warrant that they are fully authorized to execute this Agreement on behalf of Plaintiffs and to execute and legally bind all Plaintiffs to this Agreement.  Class Counsel further warrant that no other attorneys who have appeared on any documents filed on behalf of Plaintiffs, including but not limited to Tawwater & Slama L.L.P., as well as other attorneys that have participated in the Related Actions, including but not limited to Joe Buffington, have any claim for attorney fees separate from those fees to be awarded to Class Counsel pursuant to Paragraph 28(c).

40.     The Parties stipulate to stay all proceedings in the Related Actions until the approval of this Agreement has been finally determined, except the stay of proceedings shall not prevent the filing of any motions, affidavits, and other matters necessary to the approval of this Agreement.

41.     Ford and Plaintiffs acknowledge that they have been represented and advised by independent legal counsel throughout the negotiations leading up to this Agreement. They have voluntarily executed the Agreement with the consent and on the advice of counsel.

42.     This Agreement may be executed in counterpart by the Parties, and a facsimile signature shall be deemed an original signature for purposes of this Agreement.

43.     This Agreement shall be construed under and governed by the laws of the State of Michigan.

44.   The Parties have negotiated and fully reviewed the terms of this Agreement, and the rule that uncertainty or ambiguity is to be construed against the drafter shall not apply to the construction of this Agreement by a court of law or any other adjudicating body.

45.   Whenever, under the terms of this Agreement, a person is required to provide service or written notice to Ford or to Class Counsel, such service or notice shall be directed to the individuals and addresses specified below, unless those individuals or their successors give notice to the other Parties in writing:

As to Class Counsel:

Michael Ram, Esq.
Heather Mills, Esq.
LEVY, RAM & OLSON LLP
639 Front Street, Fourth Floor
San Francisco, California 94111-1913

As to Ford:

Michael Tubach, Esq.
Randall Edwards, Esq.
O'MELVENY & MYERS LLP
275 Battery Street, 26th Floor
San Francisco, California 94111-3305

IN WITNESS THEREOF, the Parties hereto have executed this Agreement as follows:

ON BEHALF OF PLAINTIFFS AND SETTLEMENT CLASS MEMBERS:

Date:_____     By: _____
                                        Michael Ram, Esq.
                                        Heather Mills, Esq.
                                        LEVY, RAM & OLSON LLP


Date:_____     By: _____
                                        Richard Dorman, Esq.
                                        Gregory Breedlove, Esq.
                                        CUNNINGHAM, BOUNDS, YANCE,
                                        CROWDER & BROWN LLC



ON BEHALF OF FORD MOTOR COMPANY:

Date: _June 16, 2005_              By: _____
                                        FORD MOTOR COMPANY
                                        Title: _Counsel_



SF1:590753.5

27

IN WITNESS THEREOF, the Parties hereto have executed this Agreement as follows:

ON BEHALF OF PLAINTIFFS AND SETTLEMENT CLASS MEMBERS:

Date:_____6/16/05_____     By: _Michael Ram_____
                                       Michael Ram, Esq.
                                       Heather Mills, Esq.
                                       LEVY, RAM & OLSON LLP


Date:_____     By: _____
                                   Richard Dorman, Esq.
                                   Gregory Breedlove, Esq.
                                   CUNNINGHAM, BOUNDS, YANCE,
                                   CROWDER & BROWN LLC



ON BEHALF OF FORD MOTOR COMPANY:

Date:_____     By: _____
                                   FORD MOTOR COMPANY
                                   Title:_____

SF1:590753.5

27

IN WITNESS THEREOF, the Parties hereto have executed this Agreement as follows:

<u>ON BEHALF OF PLAINTIFFS AND SETTLEMENT CLASS MEMBERS:</u>

Date:_____         By:_____

                                                      Michael Ram, Esq.
                                                      Heather Mills, Esq.
                                                      LEVY, RAM & OLSON LLP

Date: 6|16|2005         By: _Richard T. Do_____

                                                      Richard Dorman, Esq.
                                                      Gregory Breedlove, Esq.
                                                      CUNNINGHAM, BOUNDS, YANCE,
                                                      CROWDER & BROWN LLC

<u>ON BEHALF OF FORD MOTOR COMPANY:</u>

Date:_____         By:_____

                                                        FORD MOTOR COMPANY
                                                      Title:_____