LEVY, RAM & OLSON LLP
MICHAEL F. RAM (SBN 104805)
HEATHER M. MILLS (SBN 215293)
639 Front Street, Fourth Floor
San Francisco, California 94111-1913
Telephone:    (415) 433-4949
Facsimile:    (415) 433-7311

Attorneys for Plaintiffs, Class Members and the General Public

[*Additional counsel on signature page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN CHAMBERLAN, BRIAN CHAMPINE and HENRY FOK, on behalf of themselves and all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br>v.<br><br>FORD MOTOR COMPANY, and DOES 1 through 20, inclusive,<br><br>Defendants. | No.  C 03 2628 CW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE PLAINTIFF CLASS FOR FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT**<br><br>Date:         October 7, 2005<br>Time:         10:00 a.m.<br>Judge:        The Honorable Claudia Wilken<br>Location:     Courtroom Two, 4th Floor<br>                  1301 Clay Street<br>                  Oakland, CA 94612 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   The Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.   The Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.   The Notice Has Been Distributed in Accordance with the Court's
        Preliminary Approval Order and the Class Has Responded Well
        to the Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. THE CLASS ACTION SETTLEMENT APPROVAL PROCESS . . . . . . . . . . . . . . . . . . 7

IV.  THE SETTLEMENT MERITS FINAL APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.   The Proposed Settlement is Presumed to Be Fair . . . . . . . . . . . . . . . . . . 9

    B.   All of the Relevant Criteria Support Final Approval of the
        Proposed Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1.   The Benefits to the Class of the Proposed Settlement Favor
            Final Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        2.   The Risks Inherent in Continued Litigation Favor Final Approval . . . . . 11

        3.   That Substantial Discovery and Investigation Were Completed Prior
            to Settlement Favors Final Approval . . . . . . . . . . . . . . . . . . . . . . . 12

        4.   The Complexity, Expense, and Likely Duration . . . . . . . . . . . . . . . . . 14

        5.   Class Members' Reaction Favors Final Approval . . . . . . . . . . . . . . . . 15

            a.   The Vast Majority of The Class Favors the Proposed
                Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            b.   The Majority of Objectors Concern the Seven-Year
                Warranty Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            c.   Many of the Objections are Based on Erroneous Information
                Regarding Settlement Benefits . . . . . . . . . . . . . . . . . . . . 17

            d.   Non-Class Members Have No Standing to Object . . . . . . . . . 17

        6.   The Experience and Views of Counsel Favor Final Approval . . . . . . . 17

    C.   Class Counsel Seek Reasonable Fees . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Case No. C 03 2628CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE PLAINTIFF
CLASS FOR FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT

Page i

D.      Conclusion: The Proposed Settlement is Fair, Adequate, and Reasonable . . . . . 18

IV.  IT IS APPROPRIATE FOR THE COURT TO ENTER JUDGMENT HERE ON
     BEHALF OF A NATIONWIDE CLASS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

     A.      ALL OF THE CRITERIA FOR CLASS CERTIFICATION ARE
             SATISFIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

             1.      An Ascertainable Class Exists Which is So Numerous That
                     Joinder of All Members is Impracticable  . . . . . . . . . . . . . . . . . . . . . 19

             2.      Common Issues of Law and Fact Permeate the Litigation,
                     and Predominate over Any Individual Issues  . . . . . . . . . . . . . . . . . . . 20

             3.      The Claims of the Named Plaintiffs are Typical of the Claims
                     of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

             4.      The Named Plaintiffs and Their Counsel Will Fairly and Adequately
                     Protect the Interests of the Proposed Settlement Class  . . . . . . . . . . . . . 20

             5.      A Class Action is Superior to a Multiplicity of Litigation  . . . . . . . . . . 21

V.   THE COURT-ORDERED NOTICE PROGRAM IS CONSTITUTIONALLY
     SOUND AND HAS BEEN FULLY IMPLEMENTED  . . . . . . . . . . . . . . . . . . . . . . . 23

VI.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

**TABLE OF AUTHORITIES**

**Page**

2

**Cases:**

3

*AmChem Products, Inc. v. Windsor*
   521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21, 22, 23

*Boyd v. Bechtel Corp.*
   485 F. Supp. 610 (N.D. Cal. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 18

*In re Bridgestone/Firestone, Inc.*
   288 F.3d 1012 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Chamberlan v. Ford*
   402 F.3d 952 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22

*Chamberlan v. Ford*
   223 F.R.D. 524 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Class Plaintiffs v. City of Seattle*
   955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Ellis v. Naval Air Rework Facility*
   87 F.R.D. 15 (N.D. Cal 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*
   55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hanlon v. Chrysler Corporation*
   150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21, 22

*Kirkorian v. Borelli*
   695 F. Supp. 446 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Livingston v. Toyota Motor Sales USA*
   1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Malawian v. Central Hanover Bank & Trust Co.*
   339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Marshall v. Holiday Magic, Inc.*
   550 F.3d 1173 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Mayfield v. Barr*
   985 F.2d 1090 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Officers for Justice v. Civil Service Comn'n.,*
   688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 03 2628CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE PLAINTIFF
CLASS FOR FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT

Page iii

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Stoetzner v. U.S. Steel Corp.*
    897 F.2d 115 (3rd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Wash. Pub. Power Supply Syst. Sec. Litig.*
    720 F. Supp. 1379 (Dist. Ariz. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Warfarin Sodium Litig.*
    391 F.3d 516 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 23

*Young v. Katz*
    447 F.2d 431 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Statutes**:

California Business and Professions Code sections 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

California Civil Code sections 1750 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

California Consumers Legal Remedies Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 14, 21

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 9, 19, 20, 21, 22, 23

National Traffic and Motor Vehicle Safety Act, 49 U.S.C. section 30101. . . . . . . . . . . . . . . . . 3

**Other**:

Manual for Complex Litigation – 4th ("MCL 4th")
    (Fed. Judicial Center 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12, 19, 23, 24, 25

2 Herbert Newberg & Alba Conte
    NEWBERG ON CLASS ACTIONS ("NEWBERG") . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

Case No. C 03 2628CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE PLAINTIFF
CLASS FOR FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT

Page iv

1    **I.     INTRODUCTION**

2          The plaintiff class seeks final approval of its Proposed Class Action Settlement with Ford

3    Motor Company.   The class respectfully submits that the Settlement is in good faith, fair,

4    adequate, and reasonable, and int the best interests of the class as a whole.   The Proposed

5    Settlement provides substantial benefits worth over $100 million to the class in the form of:  (1)

6    cash reimbursement for the amounts class members paid to replace their plastic intake manifolds,

7    plus any additional damage attributable to the manifold failure; and (2) free replacement of

8    plastic manifolds that fail in the future, within seven years from the initial sale of the new

9    vehicle.

10          With assistance from the Hon. Coleman Fannin (ret.), Class Counsel was able to

11    negotiate a Proposed Settlement with Ford that provides essentially the same benefit that the

12    class would have received had it won the trial: the seven-year unlimited mileage warranty that

13    Ford gave its fleet/commercial customers.

14          Class member response to the Proposed Settlement has been positive.   Class member

15    response to the Proposed Settlement has been positive.   Thousands of class members have

16    already requested benefits, while only .01% of class members have objected to the Proposed

17    Settlement, and less than .05% of class members have opted out of the Proposed Settlement.   The

18    combined total of class members who objected or opted out of the Proposed Settlement is still

19    less than .06%.

20          The plaintiff class respectfully requests that the Court grant final approval of the

21    Proposed Class Action Settlement in this case by: (1) approving the Proposed Settlement

22    Agreement as fair, adequate, and reasonable; (2) confirming certification of the nationwide

23    settlement class; (3) confirming the appointment of Class Counsel; and (4) determining that

24    adequate notice was provided to the class.

25    / / /

26    / / /

27

28

1  **II.    STATEMENT OF FACTS**

2      **A.    The Litigation**

3          There have been four class actions filed concerning the composite intake manifold,

4  including this case. *Bauske v. Ford Motor Co.*, the first case concerning this matter, was filed in

5  state court in Texas in 2001.  Ford removed that case to federal court, and the federal District

6  Court entered summary judgment in Ford's favor.  The Court held that an out-of-warranty failure

7  of a single engine component did not render the vehicle "unfit" for its intended purposes under

8  the UCC, nor did it render the acts leading to the sale of a vehicle containing that vehicle

9  "deceptive" under the Texas consumer fraud statute.  The judgment in Ford's favor became final.

10         The second case, *McGettigan v. Ford Motor Co.*, Case No. CV-2002-3400-JRL, was

11  filed in the Circuit Court of Mobile County, State of Alabama, in 2002.  The plaintiffs in

12  *McGettigan* are represented by Cunningham, Bounds, Crowder, Brown, and Breedlove -- also

13  the co-lead counsel in this case.  The plaintiffs' motion for class certification and Ford's motion

14  for summary judgment were briefed and argued in August, 2004 and have been pending for over

15  13 months.

16         The third case, *Rhea v. Ford Motor Co.*, CJ-05-55, was recently filed in the District Court

17  for Adair County, State of Oklahoma earlier this year.  Class Counsel in *Chamberlan* are

18  associated with the local Oklahoma counsel who filed the *Rhea* complaint.

19         The case with which this Court is familiar, *Chamberlan v. Ford Motor Company*, was

20  filed on April 25, 2003 in the Superior Court of the State of California, County of Alameda.

21  Plaintiffs alleged that Ford knew - and failed to disclose to California consumers - that the

22  plastic intake manifolds installed in its 4.6L 2V engines beginning with the 1996 model year had

23  a significant design defect.  In technical terms, the coolant crossover portion of the plastic

24  manifold could not withstand the foreseeable extreme engine heat and pressure it was exposed to

25  and prematurely cracked, causing coolant leakage, overheating, and sometimes engine failure.

26  These failures occurred before the useful life of the part (approximately 150,000 miles) but after

27

28

the warranty had expired (at about 70,000 miles).[1]

   Plaintiffs alleged that as early as 1995, Ford became aware that its plastic manifolds were very prone to cracking.  Ford redesigned the part several times, but was unable to resolve the cracking problem.  In 1999, Ford implemented several notification programs to alert "fleet" owners to potential problems caused by plastic manifolds.  However, these programs covered only a portion of the affected vehicles – primarily police, taxis and limousines.[2]  Plaintiffs alleged that Ford continued to conceal the defective nature of the plastic manifolds from consumers.

   Plaintiffs Susan Chamberlan's and Henry Fok's complaint alleged violations of two consumer protection statutes: the California Consumers Legal Remedies Act ("CLRA"), California Civil Code sections 1750 *et seq.*, and the Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200 *et seq.*  Ford immediately removed the case to federal court based on federal diversity jurisdiction.

   In June 2003, Ford moved to dismiss the complaint for failure to state a claim.  The Court denied Ford's motion to dismiss Plaintiffs' CLRA claim and granted Ford's motion to dismiss Plaintiffs' UCL claim with leave to amend.  The Court found that those plaintiffs who bought used cars did not have a restitution claim under the UCL because they had not paid money directly to Ford dealers.  Plaintiffs filed an amended complaint limiting their UCL claim to injunctive relief.

   Ford again moved to dismiss Plaintiffs' UCL claim, arguing preemption by the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §§ 30101 *et seq.*  The Court denied Ford's second motion to dismiss, holding that the Act did not impliedly preempt the UCL by means of

---

   [1]   In California, a 70,000 mile warranty mandated for "emissions parts," including the intake manifold.  Cars in almost all other states are covered only by a 36,000 mile vehicle warranty.

   [2]   Ford provided an owner notification program and extended warranties for retail owners of certain Thunderbirds, Cougars, and Mustangs.  These owners were not included in the class.

field or conflict preemption.

After significant discovery, including review of tens of thousands of documents produced by Ford and inspection of the named Plaintiffs' cars, Plaintiffs moved for class certification of their CLRA claim.  In September 2004, this Court certified the class.

Ford moved for interlocutory review of the class certification order under Federal Rule of Procedure 23(f).  In denying Ford's petition, the Ninth Circuit established for the first time the criteria it will consider in evaluating whether to permit an interlocutory appeal under Rule 23(f).  *Chamberlan v. Ford*, 420 F.3d 952 (9th Cir. 2005).

The parties continued to engage in extensive discovery.  Between the *Chamberlan* and *McGettigan* cases, the parties conducted 34 depositions of percipient witnesses, as well as depositions of nine experts whom the parties designated as witnesses for trial in *Chamberlan*.  Ford deposed eight class members whom Plaintiffs disclosed as potential trial witnesses.  Plaintiffs also filed a motion to compel regarding actual failure rates, among other issues.  The parties met and conferred extensively and resolved the motion shortly before it was to be heard.

On March 21, 2005, the Court granted Plaintiffs' motion to implement a class notice plan, and denied Ford's motion to decertify the class.  Class Counsel paid out of pocket to provide direct mail and publication notice to the class.

On May 4, 2005, the Court denied in part and granted in part Ford's motion for summary judgment.  The Court denied all of Ford's attempts at summary adjudication of certain subsets of the class, except for one: summary adjudication was granted against the claims of class members who purchased their cars before June 6, 1996.  The Court found this to be the earliest date for which there was evidence that Ford concealed material information.  Ford's motion for judgment on the pleadings related to Plaintiffs' UCL claim was granted.

Trial was set to begin on May 16, 2005.  The parties had filed competing jury instructions, voir dire questions, and jury verdict forms, as well as numerous motions in limine.  The parties also exchanged trial exhibits and identified their trial witnesses, and participated in

confidential focus group presentations.

**B.**   **The Settlement**

Court-ordered mediation supervised by the Hon. Coleman Fannin (ret.) began on April 20, 2005.  Extensive settlement discussions persisted after the formal mediation with the continued assistance of Judge Fannin.  On the Friday before the Monday trial, the parties advised the Court that they had reached a tentative agreement regarding the key points of a proposed nationwide class action settlement.  The Court vacated the May 16 trial date to allow the parties to draft a Proposed Settlement agreement, and to allow Ford's counsel to seek the necessary approval of Ford's management.

The parties finalized the Proposed Settlement on June 16, 2005.  (The Settlement Agreement is Exhibit A to the Memorandum in Support of Joint Motion for Preliminary Approval of Class Settlement.)  On June 22, 2005, the Court granted preliminary approval to the Proposed Settlement and certification of the nationwide Settlement class.  The Court also approved the mailed notice and summary notice.

The Proposed Settlement provides that Ford will give Settlement class members a retroactive extended vehicle warranty to cover fatigue cracks in the intake manifold on class vehicles, resulting in coolant leaks at the crossover coolant passage.  The coverage for this extended warranty is for seven years from the initial vehicle sale, without any mileage limitation.  This extended warranty provides the same seven-year, unlimited mileage warranty that Ford previously extended to the limousine, taxi, and police "fleet" vehicles.

As part of the retroactive extended warranty program, the Settlement Agreement proposes that:

- Ford will pay its dealers to reimburse class members for the actual amounts paid by them to have the all-composite intake manifold replaced due to failures during the first seven years of a class vehicle's life.

- Class members may obtain cash reimbursement with the original or a copy of the

---

receipt for replacement.

- • Class members do not have to own the vehicle at the time the cash reimbursement claim is made, as long as they have a receipt for replacement.

- • The covered repair costs include replacement of the intake manifold, as well as any associated damage to the remainder of the vehicle that was attributable to a failure the manifold.

- • If a class member does not have the receipt for replacement, and if the class vehicle is still within the seven-year warranty period, then she may bring the vehicle to a Ford dealer for inspection and reimbursement of $735 upon verification that the manifold has been replaced.

- • If a class member's manifold fails within the first seven years of operation of the vehicle, Ford will pay a Ford dealer to replace the all-composite intake manifold at no cost to the vehicle owner.

**C.**   **The Notice Has Been Distributed in Accordance with the Court's Preliminary Approval Order and the Class Has Responded Well to the Settlement.**

Consistent with the Court's June 22, 2005 Preliminary Approval Order, Fed. R. Civ. P. 23(c)(2), and the principles of procedural due process, notice of the Proposed Settlement has been provided to the class via direct mail and publication.  The Settlement administrator, Rosenthal & Company, mailed the notice by first-class mail to Settlement class members who are current owners of class vehicles who were identified by R.L. Polk & Co. from vehicle registration records in the manner Ford uses for compiling the mailing lists for a voluntary owner notification program.  Declaration of Dan Rosenthal Re Notice Procedures ("Rosenthal Dec.") ¶¶ 3-5.  The notice was mailed to all known class member addresses - a total of over 1,662,966 persons.  *Id.* at ¶ 9.

In addition, the contents of the mailed notice are available to class members on the Internet, at www.FordManifoldSettlement.com.  *Id.* at ¶ 6, Ex. C.  The website will remain active

---

and accessible until January 1, 2009.  Settlement Agreement ¶ 19(c).  A toll-free number is also available to the class regarding the Proposed Settlement.  Rosenthal Dec. ¶ 7.

On August 28, 2005, a summary notice appeared in *Parade Magazine* and *USA Weekend*. *Parade* is carried in the Sunday edition of 352 daily newspapers and is the highest circulating magazine in the world with a circulation of approximately 35,600,000.  Newspapers that carry the *Parade* supplement serve major urban and suburban markets in the U.S.  Declaration of Katherine Kinsella submitted in support of Joint Motion for Preliminary Approval of Class Settlement ¶ 9.  *USA Weekend*, with a circulation of 22,700,000, is carried by the weekend editions of 606 daily newspapers in major markets and complements U.S. markets served by *Parade*.  *Id.*

The Proposed Settlement has been well received by the class, and thousands of people have requested settlement benefits.  As of September 23, 2005, there have been 19,199 calls to the toll-free number.  *Id.* ¶ 11.  Rosenthal has also received 3,440 signed declarations requesting benefits under the Proposed Settlement - and Ford customer service has probably received thousands more.  *Id.* ¶ 12.   As of September 23, 2005, 833 class members have opted out of the Proposed Settlement - less than .05%.  *Id.* ¶ 13.  Many of those  who opted out seemed to have excluded themselves because of their general desire not be included in any type of class action lawsuit.  One-hundred eighty-nine (189) class members have objected to the Proposed Settlement - which is .01% of the class.  *Id.* ¶ 14.  Thus, the combined total of class members who objected or opted out of the Proposed Settlement is still less than .06%.

## III.    THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

Courts strongly favor and encourage settlements, particularly in class actions, where the costs, delays, risks, and uncertainties inherent in complex litigation might overwhelm any recovery the class stands to obtain.  *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) ("strong judicial policy . . . favors settlement particularly where complex class action litigation is concerned"; *see also* 2 Herbert Newberg & Alba Conte, NEWBERG ON CLASS

1   ACTIONS ("NEWBERG") § 11.41 (citing cases).  The traditional procedure for handling the claims

2   at issue here - individual litigation - would devour public and private resources, indefinitely

3   prolong resolution of the conflict, and, given the nature of the damages at issue here, would be

4   economically unfeasible for most class members.  This Proposed Settlement is the only vehicle

5   for all class members to successfully resolve their claims against Ford, and to obtain substantial

6   relief in a prompt, efficient matter.

7       Approval of a class action settlement requires a three-step process, and two of the three

8   steps have already been completed here.  The first step was for the Court to grant preliminary

9   approval to the Proposed Settlement, and to certify the expanded Settlement class.  The purpose

10  of the Court's preliminary evaluation of the Proposed Settlement was to determine whether it

11  was within the "range of reasonableness," and thus whether a class-wide notice campaign, and

12  the scheduling of a formal fairness hearing, were worthwhile. 2 NEWBERG § 11.25 at 11-36, 11-

13  37.  Settlement class certification was also appropriate at the preliminary approval stage to

14  facilitate dissemination to the class of notice of the Proposed Settlement, and because Plaintiffs

15  had created a substantial record supporting the propriety of class certification.  2 NEWBERG §

16  11.25.

17      The second step in the process was the dissemination of class notice.  In accordance with

18  the Court's Preliminary Approval Order, the parties have worked with the notice provider to

19  implement the Court-approved class notice plan, employing the best practicable means to

20  disseminate to all class members notice of the essential terms of settlement, and of the date and

21  time of the final settlement approval hearing.  *See* generally Rosenthal Dec.[3]

22      The third and last step in the class action settlement approval process is the final approval

23  hearing and final approval of the Proposed Settlement, the subject of this motion.  At the final

24  approval hearing, the class members will have an opportunity to present their comments

25

26  _____

27      [3]    The parties' successful implementation of the class notice plan is discussed in
    greater detail below.

28  _____

1  regarding the Proposed Settlement, and Class Counsel will present evidence and argument

2  supporting its fairness, adequacy, and reasonableness.  *See* Manual for Complex Litigation – 4th

3  ("MCL 4th") § 21.634 at 415 (Fed. Judicial Center 2004).  Following the hearing, the Court must

4  decide whether to grant final approval to the Proposed Settlement, and whether to enter a final

5  order and judgment.

6  **IV.    THE SETTLEMENT MERITS FINAL APPROVAL**

7      When faced with a motion for final approval of a class action settlement under F.R.C.P.

8  23, a court's inquiry is whether the settlement is "fair, adequate, and reasonable."  *Staton v.*

9  *Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  A settlement is fair, adequate, and reasonable,

10  and merits final approval, when "the interests of the class as a whole are better served by the

11  settlement than by further litigation."  MCL 4th § 21.61 at 406.

12      Although the Court possesses "broad discretion" in issuing a final determination that a

13  proposed class action settlement is fair, "the court's intrusion upon what is otherwise a private

14  consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

15  necessary to reach a reasoned judgment that the agreement is not the product of fraud or

16  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

17  whole, is fair, reasonable and adequate to all concerned.  *Officers for Justice v. Civil Service*

18  *Com.*, 688 F.2d 615, 625 (9th Cir. 1982).

19      **A.   <u>The Proposed Settlement is Presumed to Be Fair</u>**

20      The Court should begin its analysis with a presumption that the Proposed Settlement

21  between class plaintiffs and Ford is fair and should be approved:

22      A presumption of fairness exists where (1) the settlement is reached through arm's length

23  bargaining ; (2) investigation and discovery are sufficient to allow counsel and the court to act

24  intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors

25  is small.  *Livingston v. Toyota Motor Sales USA*, 1995 U.S. Dist. LEXIS 21757 (N.D. Cal.

26  1995); *citing In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir.

27

28

1995) and 2 NEWBERG, *supra*, § 11.41 at 11-91.

Here, the parties negotiated the Proposed Settlement at arm's length with the assistance of the Hon. Coleman Fannin (ret.).  Approximately three years of extensive factual investigation (since *McGettigan v. Ford* was filed in 2002), motion practice, work with experts, and discovery has allowed Class Counsel – who have significant experience in class action and product defect litigation – to assess the strengths and weaknesses of the class's claims against Ford and the benefits of the Proposed Settlement, properly taking into account relevant considerations, including the value of a settlement that brings significant cash benefits to the class.  Class members have reacted well to the Proposed Settlement.  Over 19,000 people have called the toll-free number that provides information regarding the Proposed Settlement and over 3,400 people have requested benefits in writing, while less than .01% of class members have objected to the Proposed Settlement.  Rosenthal Dec. ¶¶ 11-14.   Accordingly, it is appropriate for the Court to presume that the Proposed Settlement is worthy of final approval.

**B.**     **All of the Relevant Criteria Support Final Approval of the Proposed Settlement.**

In deciding whether to grant final approval to a class action settlement, courts consider several factors, including: (1) the amount offered in settlement; (2) the risks inherent in continued litigation; (3) the extent of discovery completed and the stage of the proceedings when settlement was reached; (4) the complexity, expense and likely duration of the litigation absent settlement; (5) the experience and views of Class Counsel; and (6) the reaction of class members. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  The list of factors is not exhaustive and should be tailored to each case.  *Id.*   Applied to this case, all of the relevant criteria support final approval of the Proposed Settlement.

**1.**     **The Benefits to the Class of the Proposed Settlement Favor Final Approval**

Ford is obligated to reimburse class members for the "actual amounts paid by them . . . to have the all-composite intake manifold replaced as a result of fatigue cracks" that occurred during the first seven years of a class vehicle's life.  Settlement Agreement ¶ 28(b).  Ford will

pay its dealers to reimburse class members.  Current and former owners of class vehicles are eligible for reimbursement, so long as they paid to replace the manifold.  *Id.* ¶ 28(a), (b).  The covered repair costs include replacement of the intake manifold, as well as any associated engine damage attributable to a manifold failure.  *Id.* ¶ 28(b). Ford is also obligated to replace manifolds that fail in the future, within the 7-year warranty period.  *Id.* ¶ 28(a).

Significantly, the Proposed Settlement shifts the burden of paying all administrative expenses, attorneys' fees and expenses onto Ford, thus avoiding any reduction from class members' recoveries.  This is more favorable for class members than the typical case, where the class recovery is reduced by paying administrative costs and the fees and expenses of Class Counsel.

### 2.    The Risks Inherent in Continued Litigation Favor Final Approval

To assess the fairness, adequacy and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation.  MCL 4th § 21.62 at 410, ("Some factors that may bear on a review of settlement . . . [include] the advantages of the Proposed Settlement versus the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members.").

This factor supports final approval here, where the Proposed Settlement affords class member prompt and complete relief, while avoiding significant legal and factual hurdles that otherwise may have prevented them from obtaining any recovery from Ford at all.  Ford has foregone an array of legal defenses in acquiescing to the Proposed Settlement by waiving those defenses for all class members included in the class definition.  Ford's defenses were significant and include, but are not limited to the following:  Ford claimed that its decision to implement an owner notification program only for commercial vehicles was reasonable because they are driven differently.  It argued that commercial vehicles had higher daily mileage accumulation and greater idling time that caused the manifold to fail; it had an expert to support these claims.  Ford further argued that Plaintiffs had to prove that any damage the class suffered from the plastic

manifolds was actually caused by Ford's nondisclosures; and to do so, Plaintiffs would have to prove that Ford's non-disclosures regarding the propensity of the intake manifold to fail prematurely had caused those class members to purchase their vehicles.  It had experts who supported these arguments as well.  Ford also had a statute of limitations defense: it contended that anyone who had a manifold failure was on notice of a "defect" and therefore should have discovered he or she had a cause of action under the CLRA.

As a giant, multinational company capable of defending years of litigation, Ford undoubtedly would have continued with its zealous defense of the class's claims had continued litigation, that is – trial and appeal , proved necessary.

So there were significant risks in this case.  Indeed, Ford had won summary judgment in an earlier manifold case – *Bauske* – for the same alleged defect.  Plaintiffs also knew that Ford is highly combative, that this case would take years to litigate and an enormous expenditure of resources, and that, at the end of the day, class members could well end up with nothing.

While Class Counsel believe that the class's claims are meritorious, they are also experienced and realistic, and understand that the outcome of trial, and of any appeals that would inevitably follow a successful trial, are inherently uncertain.  These risks must be considered in assessing the fairness of the Proposed Settlement, which guarantees against a result that would leave the class without any recovery from Ford, or with less than what class plaintiffs achieved in the Proposed Settlement.  Because the Proposed Settlement provides immediate and substantial relief, without the attendant risks of continued litigation, it warrants this Court's approval.

### 3. That Substantial Discovery and Investigation Were Completed Prior to Settlement Favors Final Approval

Courts also consider the extent of discovery completed and the stage of the proceedings in determining whether a class action settlement is fair, adequate, and reasonable.  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-617 (N.D. Cal. 1979); see also MCL 4th § 21.62 at 410 ("Some factors that may bear on a review of settlement . . . [include] the maturity of the

underlying substantive issues, as measured by the information and experience gained through adjudicating individual actions, the development of scientific knowledge, and other factors that bear on the probably outcome of a trial on the merits." ).

The Proposed Settlement was reached after approximately three years of investigation and litigation.  Before the inception of the litigation, class plaintiffs undertook an extensive legal and factual investigation into the design, manufacture, and performance of Ford's all-plastic intake manifolds, and throughout the litigation conducted intensive formal and informal discovery.  Class plaintiffs' investigation and discovery included:

- Reviewing tens of thousands of documents produced by Ford, including documents produced in prior litigation (*Bauske*);

- Conducting 18 depositions of Ford employees;

- Retaining and working extensively with Plaintiffs' automotive coolant design and plastics engineering experts, Clemente Mesa and Dr. Anand Kasbekar, respectively, to develop their testimony for depositions and trial regarding the relationship between replacement rates and failure rates, among other things. These experts also inspected and analyzed intake manifolds and reviewed Ford documents;

- Retaining and working with Plaintiffs' experts Clifford E. Kupperberg and Richard Greenspan, to develop a damages analysis, and preparing their testimony for depositions and trial.

- Retaining and working with Plaintiffs' expert Thomas Feaheny, a former Senior Vice-President at Ford, and with Bill Brady, a "vehicle artificer" who inspected the class representatives' cars and provided testimony regarding consumer expectations regarding vehicle durability.

*See* Declaration of Michael F. Ram in Support of (1) Motion of the Plaintiff Class for Final Approval of the Proposed Class Action Settlement and (2) Motion of the Plaintiff Class for Reasonable Attorneys' Fees and Expenses ("Ram Dec.") Dec. ¶¶2-12; and Declaration of

1    Richard T. Dorman in Support of (1) Motion of the Plaintiff Class for Final Approval of the

2    Proposed Class Action Settlement and (2) Motion of the Plaintiff Class for Reasonable

3    Attorneys' Fees and Expenses ("Dorman Dec.") ¶ 7.

4         This case was fully and aggressively litigated for over 2 years and settled but one court

5    day before trial.  By the time the parties reached the Proposed Settlement, they had more than

6    adequate information to assess the strengths and weaknesses of their respective cases.  And Class

7    Counsel in particular had sufficient grasp of the legal and factual issues in this case to make a

8    thorough appraisal of the adequacy of the Proposed Settlement to provide meaningful relief to

9    the class.  *See generally* Ram Dec. ¶ 2-12,17; Dorman Dec. ¶ 7, 14.  This was not a settlement

10   hastily cobbled together before meaningful discovery occurred.  Indeed, substantial discovery

11   and trial preparation led to this beneficial Proposed Settlement.

12              **4.      The Complexity, Expense, and Likely Duration**

13        Another factor for the Court to consider in assessing the fairness of the Proposed

14   Settlement is the complexity, expense and likely duration of the litigation had a settlement not

15   been reached.  *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.3d

16   1173 (9th Cir. 1977).  In applying this factor, the Court must weigh the benefits of the Proposed

17   Settlement against the expense and delay involved in achieving an equivalent or more favorable

18   result at trial.  *Young v. Katz,* 447 F.2d 431, 434 (5th Cir. 1971).

19        As discussed above, the Proposed Settlement guarantees a substantial recovery for the

20   class while obviating the need for the uncertain outcome of trial and expensive appeals.  Many of

21   the key legal issues are complex and present legal questions of first impression, for example

22   whether the Consumers Legal Remedies Act, Cal Civ. Code sec. 1750, et seq., applies to Ford's

23   alleged conduct in this case and the damages available.  Even if the class prevailed against Ford

24   at trial, Ford would appeal any adverse determination against it.  Even if the class won on all

25   such issues on appeal, any class recovery would nonetheless be substantially delayed – perhaps

26   for years.

27        That this is a class action amplifies the economies of time, effort and expense achieved in

28

the Proposed Settlement.  The alternative to a class action, individual litigation, would tax

private and judicial resources over a period of years, and, given the relatively modest amount of

damages each class member has incurred, be uneconomical even for those with the finances,

sophistication, and tenacity to bring a small claims suit, and/or secure individual legal

representation.  The Proposed Settlement, on the other hand, provides to all class members,

regardless of their means, substantial relief in a prompt and efficient manner.  Were the Court to

deny final settlement approval, almost two million car owners would be left without a remedy as

a practical matter, courts across the county would have to address the issues presented here in a

piecemeal, costly and time-consuming manner, and the plastic intake manifolds on class

members' cars would continue to fail.

> **5.    Class Members' Reaction Favors Final Approval**
>
> **a.    The Vast Majority of The Class Favors the Proposed
> Settlement**

A court may appropriately infer that a class action settlement is fair, adequate, and

reasonable when few class members object to it.  *Marshall*, 550 F. 2d 1178.  Indeed, a court can

approve a class action settlement as fair, adequate, and reasonable over the objections of a

significant percentage of class members.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d at 191-

96 (upholding trial court's grant of final approval over class member objections); *see also*

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (a settlement can be fair,

notwithstanding opposition from a large segment of the class"); *In re Wash. Pub. Power Supply*

*Syst. Sec. Litig.*, 720 F. Supp. 1379 (Dist. Ariz. 1981) ("a settlement is not to be deemed unfair or

unreasonable simply because a large number of class members oppose it").  Here, since the

Court granted preliminary approval on June 22, 2005, notice of the Proposed Settlement has

been widely disseminated.  All reasonably identifiable class members were mailed individual

notice of the preliminary settlement approval and of their rights to comment on or opt out of the

Proposed Settlement.  Rosenthal Dec. ¶ 9.  In addition, through settlement notice provider

Rosenthal & Company, the parties have set up a toll-free number and website to provide

information to class members.  Finally, a summary notice  appeared in *Parade Magazine* and *USA Weekend*.

The members of the class here number almost 2 million.  Yet the percentage of class members who have objected to the Proposed Settlement or opted out of the class is less than .06%.  In light of the relative paucity of objections and opt-outs, the class's response to the Proposed Settlement has been decisively positive, and the Proposed Settlement should be approved.

When a significant majority of class members have not objected to or opted out of the settlement, courts have interpreted that response as evidence that the Proposed Settlement warrants final approval.  Thus, for example, in *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3rd Cir. 1990), the Third Circuit found that objections of only 29 class members of a settlement class of 281 – that is, over 10% – "strongly favors settlement." *Id*. at 118-19.  The Northern District of California in *Boyd v. Bechtel Corp.*, 485 Supp. 610, 624 (N.D. Cal. 1979), found that objections from 16% of a class constituted a "persuasive" showing that a settlement was adequate.

There is perhaps no better show of class member support for the Proposed Settlement than the fact that so many class member shave so quickly expressed their desire to participate in it. Over 19,000 people have called the toll-free number and over 3,000 have already requested benefits.  *See* Rosenthal Dec. ¶¶ 11-12.  Class members have also been writing to the Settlement Administrator and Class Counsel to tell them how pleased they are with the settlement.   Judy Locascio wrote, "What a joy to receive the notice about the Class Action regarding the manifolds on Fords and Mercurys."   In an email dated August 23, 2005, one class member wrote:

> Thank you for your efforts regarding this travesty perpetrated on the public by the Demon of Detroit. Why couldn't they have done this at the beginning instead of dragging it out like the have always done in the past and will probably continue to do in the future? Although the settlement amount is only a fraction of what I poured into that car trying to correct the damage caused by the manifold failure, I'm going to take the money offered as better than a discount certificate on a new Xxxx Motor Company of my choice. (I can't even bring myself to write their name out anymore, I'm so disgusted with them as a company.) Please pass on our

collective gratitude to all the Chamberlan folks for standing up to the evil ones, and particularly for getting the settlement applied nationwide. It's nice to be vindicated when someone mistreats you as a consumer as badly as these guys have done, over and over again. Best Regards, Jim Bennett, Grand Marquis Victim.

### b. The Majority of Objectors Concern the Seven-Year Warranty Period

The primary objection to the Proposed Settlement is to the period of the retroactive extended warranty covering the plastic intake manifold.  Objectors believe it should have been longer than 7 years.  Class Counsel understand certain class members' unhappiness regarding the length of the warranty, especially if they are among those whose manifolds failed after seven years.  However, this Court has already expressed its opinion that extending a 7-year warranty to consumers, in the same way that Ford provided such relief to fleet purchasers, could provide fair relief to the class.  The Hon. Coleman Fannin (ret.), who helped the parties negotiate a Proposed Settlement, agreed.  Class Counsel do not believe that greater relief could have been achieved for the class through settlement, and a better result may not have been achieved at trial.  Ram Dec. ¶¶ 16-17.

### c. Many of the Objections are Based on Erroneous Information Regarding Settlement Benefits

Numerous objectors made objections based on erroneous interpretations of the settlement benefits.   For example, Harry Gresham, Harold Homan, and Dennis Johnson all objected that class members will not be reimbursed for damage other than replacement of the manifold itself, when in fact, Ford will reimburse class members for damage attributable to the manifold failure.

### d. Non-Class Members Have No Standing to Object

At least 29 people who do not own class vehicles and thus are not class members, have objected to the Proposed Settlement.  *See* Rosenthal Dec., Ex. F.  These objectors own vehicles that have been excluded from the class definition because Ford has already provided extended warranties to them (i.e. 1996 Ford Thunderbirds, Mustangs and Mercury Cougars).  Objectors who are not class members lack standing to object to the Proposed Settlement.  *See Mayfield v.*

*Barr*, 985 F.2d 1090, 1092-93 (D.C. Cir. 1993).

### 6.    The Experience and Views of Counsel Favor Final Approval

Class Counsel support the Proposed Settlement as fair, reasonable, and adequate, and in the best interest of the class as a whole.  Indeed, Class Counsel believe this Proposed Settlement to be an excellent result.  *See generally* Ram Dec.¶ 17; Dorman Dec. ¶ 14.  That qualified and well-informed counsel endorse a settlement as fair, reasonable, and adequate is entitled to significant weight.  *See Ellis* v. *Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal 1980); *Boyd*, 485 F. Supp. at 616-617.

### C.    Class Counsel Seek Reasonable Fees

One final matter for the Court to consider in granting final approval to the Proposed Settlement is the issue of attorneys' fees and costs.  Class Counsel fully disclosed to the class their intent to request $4.5 million in attorneys' fees, plus expenses, and the manner in which such fees and expenses were to be paid.  *See* Rosenthal Dec., Ex. A.  As set forth in the motion of the plaintiff class for reasonable attorneys' fees and expenses, the amount of Class Counsel's fee and expenses request is appropriate and reasonable, and is to be paid by Ford on top of, and not out of, the class members' recoveries.  Elizabeth Cabraser, fellow class action attorney, and partner at Lieff, Cabraser, Heimann & Bernstein, indicates that she believes that the attorneys' fees that Class Counsel have requested are reasonable and justified in this case.  *See generally* Declaration of Elizabeth J. Cabraser Regarding Reasonable Attorneys' Fees.

### D.    Conclusion: The Proposed Settlement is Fair, Adequate, and Reasonable

By all relevant measures, the Proposed Settlement is fair, adequate, and reasonable, and is deserving of final approval.  The Proposed Settlement provides hard-won, substantial and prompt relief to the class as a whole, and is particularly impressive when viewed in light of the risks, delays, and costs of continued litigation.

## IV.    IT IS APPROPRIATE FOR THE COURT TO ENTER JUDGMENT HERE ON BEHALF OF A NATIONWIDE CLASS

On September 8, 2004, this Court granted certification of a California-only litigation

---

class.  During the course of the parties' settlement negotiations, however, it became apparent that class plaintiffs' interest in extending the benefits of the Proposed Settlement to affected car owners nationwide, and Ford's interest in protection against future litigation, could both be met by an expansion of the class for settlement purposes.  Enlarging a class for settlement purposes is common, and is proper where, as here, Class Counsel and the class representatives have satisfied their fiduciary responsibilities to all class members, and all class members have been provided notice of their right to opt out of the settlement class if they so choose.  MCL 4th § 21.611 at 407.

The standards for certifying a class for trial and certifying a class for settlement are similar.  *AmChem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).  Under each type of class certification, a court is to assess whether the prerequisites of Rules 23(a) and 23(b) are met.  The Court has already addressed most of the issues concerning class certification that are raised in this request for certification when it granted certification of a litigation-oriented class over Ford's objections.  The Court's previous decision to certify a litigation-oriented class weighs in favor of certifying this settlement-oriented class.

### A. ALL OF THE CRITERIA FOR CLASS CERTIFICATION ARE SATISFIED.

#### 1. An Ascertainable Class Exists Which is So Numerous That Joinder of All Members is Impracticable.

Federal Rule of Civil Procedure 23(a)(1) requires that the individual joinder of all plaintiffs be impracticable for class certification to be appropriate.  *Hanlon v. Chrysler Corporation*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "[A]s few as 40 class members should raise a presumption that joinder is impracticable."  The class consists of almost 2 million car owners nationwide.  The numerosity requirement is readily satisfied.

Notwithstanding its large size, the class is not too numerous to manage effectively.  As the United States Supreme Court held, where, as here, the Court is "[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried,

would present intractable management problems, for the proposal is that there be no trial." *AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Consumer classes are typically large, and even litigation classes of several million members are not uncommon.

### 2.    Common Issues of Law and Fact Permeate the Litigation, and Predominate over Any Individual Issues.

Rule 23(a)(2) allows a class action to be maintained if "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Rule 23(a)(3) requires that "the claims or defenses of the representative parties [must be] . . . typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  In this case, the Court has already concluded (over Ford's opposition) that common issues exist with respect to the California class members.  *See Chamberlan v. Ford*¸ 223 F.R.D. 524, 526 (N.D. Cal. 2004).  Specifically, the Court has concluded that "the claims of all members of the class 'stem from the same source,'" namely the allegation that Ford knew that there was a risk that the composite intake manifolds might crack.  *See id.*  There is no reason to conclude that the claims of the vehicle owners in other states present categorically different factual questions than the claims of the California class members.

### 3.    The Claims of the Named Plaintiffs are Typical of the Claims of the Class.

The typicality prerequisite of Rule 23(a) is fulfilled if the claims or defenses of the representative parties are typical of the claims or defenses of the class.  This Court has already found that the named plaintiffs satisfy the typicality requirement because along with the other members of the class, they "all have claims arising from the [same] fraudulent scheme." *See Chamberlan*, 223 F.R.D. at 526.

### 4.    The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class.

Rule 23(a)(4) requires that the named plaintiff and proposed Class Counsel be able to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy:  (1) do the named plaintiffs and their counsel have

1  any conflicts of interest with other class members and (2) will the named plaintiffs and their

2  counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.  In

3  this case, there are no significant conflicts of interest between the named plaintiffs and the absent

4  class members from the standpoint of assessing the fairness of the Proposed Settlement.  *See*

5  *Chamberlan¸* 223 F.R.D. at 526 ("Here, there is no evidence that Plaintiffs or their counsel have

6  any conflicts of interest with other class members.").  The record shows that Plaintiffs and Class

7  Counsel have vigorously prosecuted this action on behalf of the class.  Class Counsel have

8  opposed two motions to dismiss, a motion for summary judgment, a motion for judgment on the

9  pleadings, filed voluminous pre-trial motions and memoranda, and completed all pre-trial

10  preparations necessary for a month-long trial of this case.  They are well qualified to serve as

11  Class Counsel.  *See id.* ("the record in this case to date demonstrates that the named Plaintiffs

12  and their counsel will prosecute this action vigorously on behalf of the class").

13          **5.**      **A Class Action is Superior to a Multiplicity of Litigation.**

14        In addition to meeting the requirements of Rule 23(a), an action must satisfy one of  the

15  requirements of Rule 23(b) to be certified for class treatment for settlement purposes.  "The

16  superiority inquiry under Rule 23(b)(3) requires determination of whether the objections of the

17  particular class action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at

18  1023; *see also Warfarin*, 391 F.3d 516 (3d Cir. 2004); *AmChem*, 117 S. Ct. at 2245.  Ford

19  opposed certification for litigation purposes of the California portion of this Proposed Settlement

20  class, unsuccessfully moved to decertify that class shortly before trial, and likely would have

21  appealed the Court's class certification order following any adverse judgment.  Nevertheless, the

22  Court on several occasions rejected Ford's class certification arguments and ordered a class trial

23  to proceed under Rule 23(b)(3).  Furthermore, in denying Ford's petition for review of the class

24  certification order, the Ninth Circuit held that,

25        Although the district court was succinct, it provided detailed, substantive
      examples of the common issues: (1) whether the design of the plastic

26        intake manifold was defective; (2) whether Ford was aware of alleged
      design defects; (3) whether Ford had a duty to disclose its knowledge; (4)

27

28

1

2

> whether it failed to do so; (5) whether the facts that Ford allegedly failed
> to disclose were material; and (6) whether the alleged failure to disclose
> violated the CLRA. The common issues here are plain enough that no
> further explanation is required to justify the district court's decision.

3

4   *Chamberlan v. Ford,* 402 F.3d 952, 962 (9th Cir. 2005). Those rulings counsel this Court to

5   likewise find the requirements of Rule 23(b) met in the context of the Proposed Settlement class.

6          The only difference between the California litigation class previously certified and the

7   proposed nationwide Settlement class is that the Proposed Settlement class encompasses claims

8   of owners in various states. Thus, the only new issue that needs to be addressed is the impact on

9   potential certification of an expansion of the California litigation class into a nationwide

10  Settlement class.

11         Under well-established law, settlement of a nationwide class action is not defeated by the

12  presence of variations in state law, regardless of whether variations in state law may preclude

13  certification of a class action in the context of litigation. *See Hanlon*, 150 F.3d at 1019, 1022-23

14  (certifying nationwide Settlement class despite state law variations); *Warfarin Sodium Litig.*, 391

15  F.3d at 529-30 ("[W]hen dealing with variations in state laws, the same concerns with regards to

16  case manageability that arise with litigation classes are not present with settlement classes, and

17  thus those variations are irrelevant to certification of a settlement class"); *cf. In re*

18  *Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) (reversing certification of class for

19  purposes of litigation, not a class solely for purposes of settlement). These decisions are

20  consistent with the U.S. Supreme Court's recognition in *AmChem Prods., Inc. v. Windsor*, 521

21  U.S. 591 (1997), that, while a Proposed Settlement class must meet all the requirements of Rule

22  23, the court need not assess whether the manageability requirement of Rule 23(b)(3) is met

23  because the parties do not proposed to litigate the case as a class action. *See Amchem*, 521 U.S.

24  at 620 ("Confronted with a request for settlement-only class certification, a district court need

25  not inquire whether the case, if tried, would present intractable management problems . . . for the

26  proposal is that there be no trial"). Accordingly, recognizing that the parties here propose a

27

28
_____

nationwide class settlement – not a nationwide class trial – this Court need only inquire whether the Proposed Settlement class is sufficiently cohesive with respect to the relevant factual and legal issues as to make a classwide settlement process fair.  *See Amchem*, 521 U.S. at 623; *Warfarin*, 391 F.3d at 528.

## V.   THE COURT-ORDERED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND AND HAS BEEN FULLY IMPLEMENTED.

To protect the rights of absent class members, the parties must provide the class with the best notice practicable of a potential class action settlement.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best notice practicable" with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to all class members who can be identified through reasonable efforts); *Malawian v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.)  "Rule 23 . . . requires that individual notice in [opt-out] actions be given to all class members 'who can be identified through reasonable efforts' with others given the 'best notice practicable under the circumstances' . . . Due process does not require actual notice to parties who cannot be reasonably identified."  MCL 4th § 21.311 at 382 & n. 882.

The MCL 4th recognizes that reliance on publication or broadcast media may be required to reach some class members where, as here, (and in most consumer cases), there is no inclusive list or central registry of class members who are used car owners, such that many class members cannot be individually identified:

> When the names and addresses of most class members are known, notice by mail (generally first class mail) is usually required.  Publication in newspapers or journals may be advisable as a supplement; it is necessary if class members are not identifiable after reasonable effort.  Publications that are likely to be read by class members should be selected . . . .  The determination of what efforts to identify and notify are reasonable under the circumstances of the case rests in the discretion of the judge before whom the class action is pending . . . .  The problem

of notice may be even more critical with classes composed of individual purchasers of goods or services, since sales records may be lacking or be incomplete or unreliable.  Creativity is often needed in devising an effective means of notifying class members.  MCL 4th § 21.311 at 384-85.

The MCL 4th, § 21.312 at 387 further prescribes the features that Settlement notice should contain:

- • describe the essential terms of the Proposed Settlement;

- • provide information regarding attorneys' fees;

- • indicate the time and the place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement.

- • explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations; and

- • prominently display Class Counsels contact information and the procedure for making inquiries.

As the MCL 4th concludes: "Even though a settlement is proposed, the original claims, relief sought, and defenses should be outlined; such information is necessary for class members to make an informed decision.  The notice should describe clearly the options open to the class members and the deadlines for taking action." *Id*.

Here, the mailed Notice and Publication Notice satisfy all of the relevant criteria.  This Court approved the notice plan and forms of notice in connection with the preliminary approval hearing (Preliminary Approval Order at ¶¶ 8-18), and the Court-approved notice program has been fully implemented.  Following preliminary settlement approval, the parties undertook an extensive notice campaign implemented by Rosenthal & Company.  The "long form" notice – which identifies the settlement consideration, describes the class, explains the relief the Proposed Settlement provides, informs class members that Class Counsel will seek attorneys' fees and expenses in addition to the relief that the class will receive, and advises class members of their

1  rights to opt out of, comment upon or object to the Proposed Settlement – has been mailed

2  directly to 1,662,966 potential class members.  Rosenthal Dec. ¶ 9.

3       A summary "short form" Notice was published in *USA Weekend* and *Parade Magazine*,

4  two national newspaper supplements, which have a combined circulation of approximately

5  58,300,000 and are in nearly every market of every state in the United States.

6       The "long form" notice and the "short form" notice for publication both prominently

7  feature a toll-free number and a website for prospective class members to obtain more

8  information about the Proposed Settlement.  At *www.FordManifoldSettlement.com,* class

9  members can download copies of the long-form notice, review frequently asked questions, locate

10  the Vehicle Identification Numbers of class vehicles that could not be identified by model and

11  year only, and find out more about when the Proposed Settlement will become effective.  The

12  toll-free number provides similar information and has already received 19,199 calls.  *Id.* ¶ 11.

13       All inquiries posed to Class Counsel and the claims administrator have been addressed.

14  Copies of the Settlement Agreement, which is lengthy and could not practicably be incorporated

15  into the published form of notice, were made available upon request to class members, as MCL

16  4th § 21.312 recommends.

17  **VI.    CONCLUSION**

18       The Proposed Settlement is an excellent result for the class.  It provides prompt and

19  substantial compensation for class members with plastic manifolds that have already failed,

20  provides future replacement of plastic manifolds that will fail in the future, and obtains that relief

21  from a defendant with potentially dispositive legal and factual defenses to liability.  The

22  Proposed Settlement was achieved through careful factual investigation and work-up, three years

23  of hard-fought, adversarial litigation, and creative lawyering.  It bears all the hallmarks of a fair,

24  adequate, and reasonable settlement.  For all of the foregoing reasons, Plaintiffs respectfully

25  request that this Court grant final approval to the Proposed Settlement, and enter a final order

26  and

27

28

1   / / /

2   / / /

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 03 2628CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE PLAINTIFF
CLASS FOR FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT

judgment accordingly.

Respectfully submitted,

Dated: September 27, 2005          LEVY, RAM & OLSON LLP


By:      */s/ Michael F. Ram*
         Michael F. Ram

         CUNNINGHAM, BOUNDS,
            CROWDER, BROWN & BREEDLOVE, LLC

         Richard T. Dorman, Esq.

F:\Docs\988-01\Final Approval\Final Approval.MPA.2.wpd